**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**Case No.:  20-cv-22471-GAYLES/Otazo-Reyes**

NORTH AMERICAN SUGAR INDUSTRIES
INC.,

                    Plaintiff,

v.

XINJIANG GOLDWIND SCIENCE & TECHNOLOGY
CO., LTD., GOLDWIND INTERNATIONAL
HOLDINGS (HK) LTD., DSV AIR & SEA INC.,
BBC CHARTERING USA, LLC, and
BBC CHARTERING SINGAPORE PTE LTD.,

                    Defendants.

_____/

**BBC CHARTERING DEFENDANTS' MOTION TO DISMISS
THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION
AND MEMORANDUM OF LAW**

**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, FL 33131
Tel.: 305-374-5600
Fax: 305-349-4656

*Attorneys for Defendants
BBC Chartering USA, LLC and
BBC Chartering Singapore Pte Ltd.*

August 31, 2020

54436669;1

**Table of Contents**

Page

Preliminary Statement................................................................................................1

Jurisdictional Allegations and Facts as to BBC USA .......................................................2

Jurisdictional Allegations and Facts as to BBC Singapore............................................5

ARGUMENT

I.     Legal Standards: Personal Jurisdiction ............................................................7

II.    The Court Lacks *General* Personal Jurisdiction
       Over *Either BBC Defendant* ........................................................................9

III.   The Court Lacks *Specific* Personal Jurisdiction Over *BBC USA*......................................11

IV.    The Court Lacks *Specific* Personal Jurisdiction Over *BBC Singapore*...........................14

V.     The Court Lacks Personal Jurisdiction Over
       Either BBC Defendant Under Rule 4(k)(2) ..................................................17

Conclusion ....................................................................................................19

i

# Table of Authorities

Page

**Cases**

*Asahi Metal Indus. Co., Ltd. v. Superior Court,*
    480 U.S. 102 (1987)....................................................................................................8

*Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.,*
    197 F.3d 1070 (11th Cir. 1999) ..............................................................................8

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985)............................................................................................14, 16

*Carmouche v. Tamborlee Mgmt., Inc.,*
    789 F.3d 1201 (11th Cir. 2015) ..............................................................8, 9, 10, 11

*Citicorp Ins. Brokers (Marine), Ltd. v. Charman,*
    635 So.2d 79 (Fla. 1st DCA 1994) ......................................................................12

*Consolidated Development Corp. v. Sherritt, Inc.,*
    216 F.3d 1286 (11th Cir. 2000) ..........................................................................16

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014)..........................................................................................9, 10, 11

*Hanson v. Denckla,*
    357 U.S. 235 (1958)..............................................................................................16

*Hinkle v. Continental Motors, Inc.,*
    268 F. Supp. 3d 1312 (M.D. Fla. 2017)..........................................................12, 16

*Keeton v. Hustler Magazine, Inc.,*
    465 U.S. 770 (1984)..............................................................................................11

*Melgarejo v. Pycsa Panama, S.A.,*
    537 Fed. App'x 852 (11th Cir. 2013) ..................................................................12

*Oldfield v. Pueblo De Bahia Lora, S. A.,*
    558 F.3d 1210 (11th Cir. 2009) ..................................................................... 7, *passim*

*Perkins v. Benguet Consol. Min. Co.,*
    342 U.S. 437 (1952).......................................................................................... 10-11

*Peruyero v. Airbus S.A.S.,*
    83 F. Supp. 3d 1283 (S.D. Fla. 2014) ................................................................7, 8

*PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*,
    598 F.3d 802 (11th Cir. 2000) ...................................................................17

*Snow v. DirecTV, Inc.*,
    450 F.3d 1314 (11th Cir. 2006) .....................................................................7

*Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*,
    447 F.3d 1357 (11th Cir. 2006) ...................................................................12

*United Techs. Corp. v. Mazer*,
    556 F.3d 1260 (11th Cir. 2009) ..............................................................7, 17

*Waite v. All Acquisition Corp.*,
    901 F.3d 1307 (11th Cir. 2018) ...................................................................10

*Walden v. Fiore*,
    571 U.S. 277 (2014)......................................................................................15

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) .......................................................................................8

## Statutes and Rules

Cuban Liberty and Democratic Solidarity Act (LIBERTAD) Act,
    22 U.S.C. § 6021 *et seq*....................................................................................1

        § 6082(f)(1)......................................................................................17

Federal Rule of Civil Procedure 4(k)(2) ........................................17, 18, 19

Florida Statutes:

        § 48.193...............................................................................................7
        § 48.193(1)(a) ...........................................................................11, 12
        § 48.193(2)...................................................................................9, 10

Defendants BBC Chartering USA, LLC ("BBC USA") and BBC Chartering Singapore Pte Ltd. ("BBC Singapore") (each a "BBC Defendant" and jointly "BBC Defendants") move, under Federal Rule of Civil Procedure 12(b)(2), to dismiss the claims alleged against them in the complaint (ECF No. 1) ("Compl.") filed by North American Sugar Industries Inc. ("Plaintiff") on the ground that the Court lacks personal jurisdiction over either BBC Defendant.

## Preliminary Statement

The nature of this action as alleged in the complaint is set forth in the introduction and factual background of the separate motion to dismiss that the BBC Defendants, together with two other sets of defendants ("Goldwind" and "DSV"), are filing with the Court today. We therefore only briefly summarize here the nature of the action, focusing on the allegations and facts relevant to the issue of whether the Court may exercise personal jurisdiction over either BBC Defendant. In addition to the allegations in the complaint relevant to the issue of personal jurisdiction as to the BBC Defendants, we submit herewith the declarations of Per Petersen, President of BBC USA, and Lars Schoennmann, Managing Director of BBC Singapore.

Plaintiff alleges that the BBC Defendants, as well as the other defendants, "trafficked" in "Confiscated Property" – that is, property owned by Plaintiff at the time the Cuban government confiscated it in 1959 and 1960 – in violation of the Cuban Liberty and Democratic Solidarity Act (LIBERTAD) Act, 22 U.S.C. § 6021 *et seq*. (the "Act"). The U.S. Foreign Claims Settlement Commission ("FCSC") certified all of the Confiscated Property (consisting of a large variety of assets including farmland, livestock, crops, factories, equipment, railroads, etc.) as having a value of over $97 million as of 1959-1960 (Compl. Ex. 1). Plaintiff alleges that defendants trafficked in the Confiscated Property by their alleged involvement in the shipment on two vessels of equipment from China to Cuba (with a stop in Florida) and its unloading at a

Cuban port known as Puerto Carupano, whose value (including "Docks, Warehouses and other installations") was certified by the FCSC as having a value of $2,228,000 (Compl. Ex. 1 at 14).

### Jurisdictional Allegations and Facts as to BBC USA

BBC USA is incorporated in and has its principal place of business in Texas (Compl. ¶ 23; Petersen Decl. ¶ 4). BBC USA does not have an office or any employees in Florida (Petersen Decl. ¶ 5). It is not registered to do business in Florida.[1]

BBC USA's business is to act as agent for operators of ships in connection with the operators' chartering of ships to merchants (or other charterers) for the carriage of goods by sea (*id.* ¶ 6). BBC USA *did not* act as the agent for the vessel operators and was not otherwise involved in the charters of either of the two ships involved in this case, the BBC Moonstone and the BBC Jade (as discussed below).

Plaintiff alleges that BBC USA is owned by a German company, BBC Chartering & Logistic GmbH & Co. KG (referred to in the complaint "BBC Chartering" but referred to here as "BBC Logistic" to avoid confusion with the BBC Defendants); that BBC Logistic was the operator of the Jade (Compl. ¶ 156); that another German affiliate of the BBC Defendants, BBC Chartering Carriers GmbH & Co. KG ( "BBC Carriers"), was the operator of the Moonstone (Compl. ¶ 108); and that the two BBC Defendants and their two German affiliates, BBC Logistic and BBC Carriers, are "part of a network of companies known as the "Briese Group" (Compl. ¶ 23). Neither BBC Logistic, BBC Carriers nor the Briese Group is named as a defendant.

---

[1]  A search in the Florida Department of State, Division of Corporations' official website for any entity beginning "BBC Chartering" produces no such entity.  *See* http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResults/EntityName/BBC%20Chartering/Page1?searchNameOrder=BBCCHARTERING (last visited Aug. 27, 2020).

54436669;1

Plaintiff does not allege any facts to suggest that the separate corporate status of either BBC Defendant should be disregarded.[2]

BBC USA asserts that it did not act as agent for the charters of the two ships' voyages involved in this case, and that BBC Singapore played that role (Petersen Decl. ¶ 8). BBC Singapore confirms that *it* acted as agent for those charters (Schoennmann Decl. ¶ 7). The complaint alleges no *facts* to the contrary, but only supposition. Several of the allegations lump together BBC USA and BBC Singapore and therefore fail to allege conduct *by BBC USA* (*e.g.*, Compl. ¶¶ 115, 158, 160, 202, 203, 229, 230). Other allegations are made "upon information and belief" (*e.g., id.* ¶¶ 111, 153, 157).

In yet other instances, Plaintiff alleges that the BBC Defendants "would have" done certain things (*e.g.*, Compl. ¶ 112 ["both BBC USA and BBC Singapore *would have* provided logistical support to the shipping vessels entering or departing their respective regions"] [emphasis added]; ¶ 158 [same]). BBC USA's President asserts that these suppositions are incorrect, and that "BBC USA did *not* provide support of any kind, including logistical support, for the vessels in connection with the charters for or the delivery of cargo to the Port" (Petersen Decl. ¶ 9).

Plaintiff alleges that BBC USA was involved in about 121 shipments, as shipper or consignee, "for goods unloaded *at U.S. ports* within the last three years" (that is, from June 2017 to June 2020, when the complaint was filed) (Compl. ¶ 23 [emphasis added]). Only four of those

---

2   Although not relevant to the analysis on this motion, Plaintiff is incorrect that BBC Logistic owns BBC USA or was the operator of the Jade. For several years, BBC USA has been owned by a different non-party German corporation in the Briese Group; and *BBC Carriers* was the operator of both vessels involved in this case (Schoennmann Decl. ¶¶ 7-9, 11, 13, and exhibits referred to therein) (*see also* "Jurisdictional Allegations and Facts as to BBC Singapore," below). In any event, BBC USA's owner and the operator of each vessel is a non-party German corporation.

shipments (about 3%) are alleged to have been unloaded in *Florida* ports (*id*.). The Petersen declaration provides additional data concerning BBC USA's involvement in deliveries to or from Florida in comparison to its involvement in deliveries to or from all U.S. ports in 2017 to 2019 (Petersen Decl. ¶ 11). Those figures further show, as the complaint itself alleges, that BBC USA's involvement in shipments in and out of Florida have represented a small percentage of those in and out of all U.S. Ports (between 4% and 9% for 2017-2019), and the percentages would be even smaller when comparing Florida-related shipments to all shipments in U.S. and *non*-U.S. ports (*id*. ¶ 12).

Plaintiff makes one other allegation in an effort to "rope in" BBC USA. It alleges that the BBC Moonstone carried equipment – in addition to and entirely unrelated to the equipment delivered to Cuba – that was loaded on the vessel before the Cuba-bound equipment was loaded in Tianjin, China; that remained on the vessel when the Cuba-bound equipment was unloaded at Puerto Carupano; and that ultimately was delivered at Port Arthur, Texas "to BBC USA on behalf of [its] parent company BBC Chartering [BBC Logistic]" (Compl. ¶ 140). That unrelated equipment was not unloaded in Cuba and made no use of the Port there.

Finally, Plaintiff repeatedly makes the incendiary allegation – evidently seeking to tie the BBC Defendants (and the other defendants) to these two voyages *and Florida* – that all defendants, including the BBC Defendants, deliberately hid and conspired to hide from U.S. authorities that Puerto Carupano in Cuba was the ultimate destination of the cargoes (*e.g.*, Compl. ¶¶ 6, 150, 182, 241). That allegation, at least as to the BBC Defendants, is false and easily disproved by BBC Singapore's shipping documents, submitted with the Schoennmann Declaration and described there and in the section below concerning BBC Singapore.

- 4 -

The conclusory and speculative allegations in the complaint concerning BBC USA, combined with the *facts* in the declaration of BBC USA's President (Mr. Petersen), make clear that the Court may not exercise personal jurisdiction over BBC USA in this case (Points II and III below).

### Jurisdictional Allegations and Facts as to BBC Singapore

BBC Singapore is incorporated in and has its principal place of business in Singapore (Compl. ¶ 23; Schoennmann Decl. ¶ 4). It, like BBC USA, does not have an office or any employees in Florida (*id.* ¶ 5), and is not registered to do business in Florida (*see* page 2 n.1 above).

BBC Singapore (and not BBC USA, as the complaint wrongly suggests on information and belief) acted as agent for BBC Carriers in connection with the charter of the BBC Moonstone and the BBC Jade that carried equipment to and unloaded it in Puerto Carupano, Cuba (Schoennmann Decl. ¶ 7).

In its role as agent, BBC Singapore entered into the agreement for the charter of two vessel voyages (the "Charter Agreement") between BBC Carriers, as owner or owner's representative, and a Danish company, DSV Air & Sea A/S ("DSV Denmark"), as or on behalf of the charterer or merchant (*id.* ¶ 7 and Ex. A).[3]

The Charter Agreement expressly stated that the goods were to be loaded in China and delivered to and unloaded in Cuba, with a stop in Miami (*id.* ¶ 10 and Ex. A, p. 3 of 7 ["Tianjin, Lingang terminal via Miami, US to Carupano, Cuba"]). The reason for the stop in Miami, as

---

[3]   BBC Singapore's agreement was with DSV Denmark, not with the Delaware corporation, DSV Air & Sea Inc., that is named as a defendant in this case (Compl. ¶ 22). We redacted from the Chartering Agreement (Schoennmann Decl. Ex. A) commercially sensitive pricing information and bank account numbers, which are not relevant to this motion.

DSV Denmark informed BBC Singapore, was that the goods contained components deemed to be manufactured in the U.S., were therefore the subject of a U.S. export license, and would have to be cleared by U.S. customs officials there (*id.* ¶ 15). Neither BBC Singapore nor any of its affiliates requested or arranged (except for navigational purposes) for the ships to stop at Florida; that occurred only due to the U.S. origin of components of the goods being shipped (*id.* ¶ 20).

BBC Singapore, in its role as agent for the shipowners' representative in the charter of the two ships, issued "master bills of lading" for the shipped goods (*id.* ¶¶ 11-14 and Ex. B and C). It also received the clearances of the goods issued by U.S. customs officials in Miami, each of which included the export license covering the goods (*id.* ¶¶ 16-19 and Ex's D and E). *All* of these documents state prominently that the ultimate destination of the goods was Puerto Carupano, Cuba (*id.* ¶¶ 9-19 and Ex's A through E). These documents utterly refute the complaint's allegations that the BBC Defendants hid or conspired to hide from U.S. authorities that the ultimate destination of the goods was Cuba.

Plaintiff makes essentially no allegations as to BBC Singapore relevant to personal jurisdiction (Compl. ¶ 24). It merely alleges that it's incorporated and headquartered in Singapore and provides services to its affiliates "for the East Asia and Southeast Asia geographic regions" (*id.*). Indeed, over the past three years, only about 12% of the approximately 1,450 shipments in which BBC Singapore acted as agents for vessel operators involved loading or unloading in U.S. Ports (Schoennmann Decl. ¶ 22). That BBC Singapore provided such services for the two ships that carried equipment from China to Cuba, with an incidental – and fully disclosed – stop in Miami solely for the purpose of clearing the goods through U.S. customs, falls far short of the kinds of purposeful and sustained contact with Florida, or the U.S., that

54436669;1

would suffice for the Court to assert personal jurisdiction over it, as discussed below (in Points III and IV).

## ARGUMENT

### I.   Legal Standards: Personal Jurisdiction

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Conclusory allegations are insufficient. *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006). When a plaintiff establishes a *prima facie* case of personal jurisdiction, if the defendant challenges jurisdiction "by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *United Techs.*, 556 F.3d at 1274 (internal quotation marks omitted). In any case, "the plaintiff bears the *ultimate burden* of establishing that personal jurisdiction is present." *Oldfield v. Pueblo De Bahia Lora, S. A.*, 558 F.3d 1210, 1217 (11th Cir. 2009) (emphasis added).

A court's analysis of whether it may exercise personal jurisdiction over a nonresident defendant under Florida law involves two steps. *First*, the court must determine whether its exercise of personal jurisdiction is appropriate under Florida's long-arm statute, § 48.193 Fla. Stat.; and *second*, if the long-arm statute is satisfied, the court must determine whether the exercise of personal jurisdiction would violate the Due Process Clause. *United Techs.*, 556 F.3d at 1274*; see also Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1290 (S.D. Fla. 2014) (Cooke, J.) (same) (applying § 47.16 Fla. Stat., the predecessor of § 48.193 Fla. Stat.).

The Florida long-arm statute, § 48.193 Fla. Stat., provides two bases for personal jurisdiction – specific and general. Subsection (1)(a) "lists acts that subject a defendant to

- 7 -

*specific* personal jurisdiction – that is, jurisdiction over suits **that arise out of or relate to a defendant's contacts with Florida**," and subsection (2) "provides that Florida courts may exercise *general* personal jurisdiction – that is, jurisdiction over any claims against a defendant, **whether or not they involve the defendant's activities in Florida** – if the defendant engages in 'substantial and not isolated activity' in Florida." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203-04 (11th Cir. 2015) (italics in original, bold emphasis added).

"The long-arm statute must be strictly construed; therefore, any doubts about the applicability of the statute must be resolved in favor of the defendant and against a conclusion that jurisdiction exists." *Peruyero*, 83 F. Supp. 3d at 1289.

A court applying the Florida long-arm statute must also ensure that its application does not violate a defendant's due process rights under the U.S. Constitution. A non-resident defendant must have sufficient minimum contacts with the United States to avoid offending notions of fair play and substantial justice. *Oldfield*, 558 F.3d 1220. A defendant must also have (i) "purposefully avail[ed] itself of the privilege of conducting activities within the forum . . ." and (ii) "the defendant's contacts with the forum must relate to the plaintiff's cause of action or have given rise to it." *Id.* (citations omitted). A defendant may only be burdened with litigation "where his conduct and connection with the forum are such that he would reasonably anticipate being haled into court there." *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)); *see Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1074 (11th Cir. 1999) (same). The "fairness test" is especially concerned with the burden placed on a foreign defendant called to defend itself in a foreign legal system. *Oldfield,* 558 F.3d at 1221 (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 114 (1987)).

- 8 -

Applying these standards to the allegations and facts stated above, this Court lacks personal jurisdiction over either BBC Defendant, both because the elements of Florida's long arm statute are not met and because exercising such jurisdiction would violate the BBC Defendants' due process rights.

## II.        The Court Lacks *General* Personal Jurisdiction Over Either BBC Defendant

The Court may not exercise general personal jurisdiction over either BBC Defendant because neither is incorporated or has it principal place of business in Florida. The complaint does not allege, nor can it allege, any exceptional circumstances in this case for departing from well-established Supreme Court precedent that, barring exceptional circumstances, general jurisdiction over a corporation exists only where the corporation is incorporated or has its principal place of business.

Florida's long-arm statute provides for general jurisdiction in Fla. Stat. § 48.193(2), which states: "A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." To exercise general jurisdiction over a defendant, the Court must conclude that doing so comports with due process, because the reach of § 48.193(2) "extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." *Carmouche*, 789 F.3d at 1204.

In *Daimler AG v. Bauman*, 571 U.S. 117 (2014), the Supreme Court held that, with respect to a corporation, "the place of incorporation and principal place of business are [the] paradigm bases for general jurisdiction," because those are the places where it is regarded as being "at home." *Id.* at 137 (internal quotation marks omitted). The Court rejected the plaintiff's

argument that the Court should "approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business,'" *id*. at 137-38, and stated that only in an "exceptional case" would a corporation be deemed to be at home "in a forum other than its formal place of incorporation or principal place of business." *Id*. at 139 n.19.

*Daimler* is binding on this Court's determination of whether either BBC Defendant is subject to general jurisdiction under § 48.193(2). *See Carmouche*, 789 F.3d at 1204 (citing *Daimler* for the proposition that "a corporation's operations in a forum other than its formal place of incorporation or principal place of business will be so substantial and of such a nature as to render the corporation at home in that State only in exceptional cases") (internal quotation marks omitted). As the Eleventh Circuit panel explained in *Carmouche*, even if a foreign corporation engages in extensive business in the forum state, that is insufficient to establish general jurisdiction over it "unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Id*. at 1205. The Eleventh Circuit recently reiterated this principle in *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1318 (11th Cir. 2018) (holding that Union Carbide, which neither was incorporated nor had its principal place of business in Florida, was not subject to the court's general jurisdiction, even though it did "significant business" in Florida and was registered to do business in Florida as a foreign corporation).

The "exceptional" circumstances that might warrant departure from the rule are quite narrow. As the Eleventh Circuit discussed in *Carmouche*, 789 F.3d at 1204, the Supreme Court has identified only one "exceptional" case "in which a court exercised general personal jurisdiction over a foreign corporation without offending due process," *Perkins v. Benguet*

*Consol. Min. Co.*, 342 U.S. 437 (1952). The circumstances in *Perkins* were truly exceptional: during the Japanese occupation of the Philippines in World War II, a Philippine company's President moved to Ohio, where he established "the corporation's principal, if temporary, place of business." *Carmouche*, 789 F.3d at 1205 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 n. 11 (1984)). Thus, "[g]iven the wartime circumstances, Ohio could be considered a surrogate for the place of incorporation or head office." *Id.* (quoting *Daimler*, 571 U.S. at 129 n. 8) (internal quotation marks and citation omitted).

Neither BBC Defendant is incorporated or has its principal place of business in Florida. BBC USA is incorporated in and has its principal place of business in Texas; and BBC Singapore is incorporated in and has its principal place of business in Singapore. Neither entity has any office or employees in Florida, and neither is registered to do business as a foreign corporation in Florida. No exceptional circumstances are alleged, or exist, to suggest that either entity has established a "home" in Florida. The Court therefore may not exercise general personal jurisdiction over BBC USA or BBC Singapore.

## III.    The Court Lacks *Specific* Personal Jurisdiction Over *BBC USA*

Plaintiff alleges in conclusory fashion that the Court has specific personal jurisdiction over all "Defendants" under two of the nine prongs enumerated in § 48.193(1)(a) Fla. Stat.:

> 1.    Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency; and
>
> 2.    Committing a tortious act within this state.

(Compl. ¶ 15.) Neither prong applies to BBC USA for the fundamental reason that BBC USA was not involved in either of the two shipments at issue in this case and, therefore, Plaintiff's claims do not arise from *any* activity by BBC USA anywhere or, *a fortiori*, from any activity of

- 11 -

BBC USA in Florida. Section 48.193(1)(a) introduces the nine enumerated activities on which specific jurisdiction can be based as follows:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for *any cause of action arising from any of the following acts:* . . . . [Emphasis added.]

Each enumerated activity thus requires a close connection between the cause of action and defendant's conduct in Florida. *Hinkle v. Continental Motors, Inc.*, 268 F. Supp. 3d 1312, 1322 (M.D. Fla. 2017) ("Regardless of the enumerated act by which a plaintiff asserts specific jurisdiction, the complaint must allege a cause of action 'arising from' that enumerated act in Florida."). The "arising from" element "requires a 'direct affiliation,' 'nexus,' or 'substantial connection' to exist between the basis for the cause of action and the business activity." *Melgarejo v. Pycsa Panama, S.A.*, 537 Fed. App'x 852, 860 (11th Cir. 2013) (quoting *Citicorp Ins. Brokers (Marine), Ltd. v. Charman*, 635 So.2d 79, 82 (Fla. 1st DCA 1994)).[4]

Plaintiff fails to allege, and there does not exist, a sufficient nexus between its alleged claims – that defendants "trafficked" in the Port, located in Cuba – and any specific activity *by BBC USA*. As set out in the factual section above (at 2-6) and as supported by the Petersen and Schoennmann declarations, BBC USA was not the agent for either shipment involved in this case (BBC Singapore was), and BBC USA had no involvement in those shipments. There is *no* connection, therefore, linking BBC USA, Florida and the causes of action.

---

[4]   Federal courts in Florida construe the Florida long-arm statute in accordance with Florida decisional law. *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1362 (11th Cir. 2006).

Plaintiff's allegations that seek to establish a connection between "trafficking" in the Port in Cuba and BBC USA's activities in Florida fall far short of plausibly alleging such a connection. Such allegations either lump together multiple defendants or the two BBC Defendants; are made on "information and belief"; or are stated speculatively in terms of what BBC USA "would have" done (*see generally* "Jurisdictional Allegations and Facts as to BBC USA," at 2-5 above). And, the Petersen declaration shows that those allegations are factually incorrect, as BBC USA was not involved with either of the shipments and provided no logistical support to them (Petersen Decl. ¶¶ 7-9).

Plaintiff's allegation that BBC USA has been involved in 121 shipments to or from U.S. ports over the past three years, of which four involved a Florida port (Compl. ¶ 23), are irrelevant – apart from showing that BBC USA's contacts with Florida generally are quite small compared to its activities in the U.S. as a whole – because Plaintiff does not allege (and cannot allege) that any of those 121 shipments was in any way related to the two shipments to Cuba that are the subject of this case.

Plaintiff's allegation that *all* Defendants, which would include BBC USA, conspired to hide from U.S. officials that the ultimate destination of the cargo in the two shipments was Cuba, is *both* irrelevant as to BBC USA – again, because BBC USA was not involved in those shipments – *and* utterly refuted by the Schoennmann declaration and is exhibits, including export clearance documents issued by U.S. customs officials, which establish beyond dispute that U.S. officials knew that the cargoes were bound for Cuba.

That Florida's long-arm statute does not apply to BBC USA makes it unnecessary for the Court to analyze whether exercising personal jurisdiction over BBC USA under that statute would violate its due process rights. A due process analysis nevertheless confirms that the Court

may not exercise specific personal jurisdiction over BBC USA. BBC USA's "conduct and connection" with Florida are *not* "such that [it] would reasonably anticipate being haled into court" in Florida. *Oldfield,* 558 F.3d at 1220. BBC USA had *no* contacts with Florida *from which Plaintiff's claims arose* – and this is an essential requirement under the due process analysis just as it is under the Florida long-arm statute. *Oldfield,* 558 F.3d at 1220 ("to permit the exercise of specific jurisdiction, "the defendant's contacts with the forum must relate to the plaintiff's cause of action or have given rise to it") (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), and other cases).

In sum, the Court lacks specific personal jurisdiction over BBC USA both under the Florida long-arm statute and the Due Process Clause.

## IV.   The Court Lacks *Specific* Personal Jurisdiction Over *BBC Singapore*

BBC Singapore, unlike BBC USA, *was* involved in the two voyages that are the subject of this case, but it performed no purposeful activities in Florida, and Plaintiff's claims do not arise from the ships' unrelated stops in the Miami port on their way from China to Cuba.

BBC Singapore, from its home base in Singapore, acted as *agent* for the non-party vessel operator, BBC Carriers, which provided the ships that carried the cargo from China to Cuba (Schoennmann Decl. ¶¶ 7-14 and exhibits referred to therein). All relevant documents to which BBC Singapore (as agent) was as party – including the Charter Agreement (*id*. Ex. A), the bills of lading (*id*. Ex's B and C), and the U.S. customs clearance documents (*id*. Ex's D and E) – expressly stated that the cargoes were to be loaded (or were loaded) in Tianjin, China and were to be delivered to Carupano, Cuba. The Charter Agreement noted that the voyages were to proceed from China to Cuba "via Miami" (*id*. Ex. A, page 3 of 7).

The reason for the stop in the Florida port, as explained to BBC Singapore by DSV Denmark (a non-party), which acted on behalf of the cargoes' owner and consignee, was that the cargoes included components manufactured, at least in part, by an affiliate of a U.S. corporation; the equipment therefore was deemed to be an export of U.S. manufactured goods, which required an export license and clearance by U.S. customs officials in the U.S. (Schoennmann Decl. ¶ 15). This is borne out by the official clearance documents issued by U.S. customs officials in Miami, which included the export license for the cargoes (*id*. ¶¶ 16-19 and Ex's D and E [export license follows the clearance document in each exhibit]).

Thus, BBC Singapore did not request or need for the ships to stop in Florida; that was a requirement of the owners of the cargoes, for their purpose of complying with U.S. export law and regulations (*id*. ¶ 20). The Moonstone left the Miami port on the same day it arrived there (Compl. at 37 Figure 1), and the Jade left that port the day after it arrived there (*id*. at 45 Figure 2). The cargoes did not enter the Miami port or U.S. soil. They stayed on the ships and were merely inspected by U.S. customs officials and were cleared to proceed to Carupano, Cuba (*id*. ¶ 20 and Ex's D and E). *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("physical entry into the State – either by the defendant in person or through an agent, goods, mail, or some other means" is relevant to the "minimum contacts" analysis).

On these facts, the Court cannot exercise specific personal jurisdiction over BBC Singapore, under the Florida long-arm statute or consistent with due process. Plaintiff claims that all defendants (including BBC Singapore) "trafficked" in the Port by commercially using the Port *in Cuba*. Neither the export-clearance of the cargoes in Florida, however, nor anything else that occurred in Florida – and certainly no purposeful act *by BBC Singapore* in Florida – had a sufficient nexus with the use of the Port in Cuba to satisfy the Florida statute's requirement that

- 15 -

the cause of action *arise from* BBC Singapore's activities *in Florida*.  Absent such a nexus, the Court lacks specific personal jurisdiction over BBC Singapore under the long-arm statute.

  The due process analysis leads to the same result. As already stated, BBC Singapore, as agent for the carrier, did not need or request for either shipment to be routed "via Miami" – that was solely a requirement of the shipper based on U.S. export law. The cargoes were merely inspected onboard in the Miami port and were not unloaded in Florida. BBC Singapore therefore did not "purposefully avail itself of the privilege of conducting activities within the forum [Florida]" in connection with these shipments. *Oldfield*, 558 F.3d at 1220; *Burger King*, 471 U.S. at 475 (1985) ("it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws") (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)). Nor did BBC Singapore's inconsequential connection with Florida meet the additional due process requirement that its "contacts with the forum must relate to the plaintiff's cause of action or have given rise to it." *Oldfield*, 558 F.3d 1220. *See also Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000) ("cause of action [that] involves properties in Cuba, which were expropriated by the Cuban government" "did not arise out of any contacts the Canadian defendants have with the United States").

  Plaintiff may argue that its fourth claim, for "civil conspiracy under Florida law" (Compl. ¶¶ 237-45) – which alleges that BBC Singapore and all other defendants conspired to misrepresent the cargoes' ultimate destination in Cuba in order to "traffic" in the Cuban port while avoiding economic sanctions by the U.S. government (*id*. ¶¶ 238-242) – subjects BBC Singapore to specific personal jurisdiction under the long-arm statue. *See Hinkle* 268 F. Supp. 3d at 1324 ("the state's long-arm statute can support personal jurisdiction over any alleged

conspirator where any other co-conspirator commits an act in Florida in furtherance of the conspiracy, even if the defendant over whom personal jurisdiction is sought individually committed no act in, or had no relevant contact with, Florida") (quoting *United Techs.*, 556 F.3d at 1281-82).

That argument would be untenable, however, because the civil conspiracy claim is not viable as a matter of law. The Act expressly bars a plaintiff from pursuing *both* a trafficking claim under Act *and* a claim under the common law. 22 U.S.C. § 6082(f)(1).[5] A court may not exercise long-arm jurisdiction based on an unviable cause of action. *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808 (11th Cir. 2000) ("In Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine whether the allegations of the complaint state a cause of action") (quotations and citation omitted). Not only is the civil conspiracy claim expressly barred by the Act; its sole foundation – that defendants conspired to hide that the cargoes were bound for Cuba (Compl. ¶¶ 238-244) – is easily shown to be false, as discussed above.

The Court therefore lacks specific personal jurisdiction over BBC Singapore.

**IV.    The Court Lacks Personal Jurisdiction Over Either BBC Defendant Under Rule 4(k)(2)**

Plaintiff alleges, in the alternative, that the Court has personal jurisdiction over *all* "Defendants" under Rule 4(k)(2) of the Federal Rules of Civil Procedure "because Defendants are not otherwise subject to jurisdiction in any state's courts; and the exercise of jurisdiction is

---

[5]  This "election of remedies" provision in the Act's civil liability provision is the basis for one of the grounds for dismissal asserted by defendants in their separate joint motion to dismiss being filed today.

consistent with the United States Constitution and laws" (Compl. ¶ 15). That allegation is incorrect as to the BBC Defendants. Rule 4(k)(2) provides:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Both requirements, (A) and (B), must be met. *Oldfield,* 558 F.3d at 1219.

Plaintiff cannot meet the first requirement with respect to BBC USA because BBC USA is incorporated and headquartered in Texas and, therefore, is subject to jurisdiction in Texas' courts of general jurisdiction.

As for BBC Singapore, Plaintiff cannot meet the second requirement, because exercising jurisdiction over it in this case would *not* be "consistent with the United States Constitution and laws. The constitutional due process requirements are summarized in Point I above (at 8) and are discussed in Point IV above (at 15-16) in relation to the lack of specific personal jurisdiction over BBC Singapore. The same principles apply under the second requirement of Rule 4(k).

BBC Singapore has *not* availed itself of the privilege of doing business in Florida, either generally or in relation to the alleged claims in this case. It has no office or employees and has not registered to do business in Florida. Only a small percentage of its overall business worldwide involves shipments to or from U.S. ports (and an even smaller percentage, therefore, involves Florida ports). (Schoennmann Decl. ¶¶ 4-5, 21-22.) These shipments to or from U.S. ports that are *unrelated to the two shipments to Cuba* cannot support personal jurisdiction, as a

- 18 -

connection between defendant's activities in the forum and the cause of action is an essential requirement of due process, as discussed above (at 8, 13-14, 15-16).[6]

Moreover, BBC Singapore's incidental contact with Florida in connection with the shipments at issue did *not* give rise to Plaintiff's claims. *Oldfield,* 558 F.3d at 1222 (finding specific jurisdiction did not exist under Fed. R. Civ. P. 4(k)(2) because plaintiff's claims did not arise out of or relate to the defendant's contacts with Florida). BCC Singapore did not request or need the ships to stop in Florida; those stops were needed by the cargo owners for the purpose of U.S. customs officials clearing the cargoes for export to Cuba, under a previously-issued U.S. export license. BBC Singapore therefore did not "avail itself of the privilege of conducting activities within the forum" in relation to the shipments in question. *Oldfield,* 558 F.3d 1220 (quotations and citations omitted).

As Plaintiff cannot satisfy the requirements of Rule 4(k)(2) as to either BBC Defendant, that rule does not provide a basis for the Court to exercise personal jurisdiction over either.

## Conclusion

For the foregoing reasons, the Court should dismiss the complaint as to both BBC Defendants for lack of personal jurisdiction. Alternatively, the Court should dismiss the complaint as to all defendants for each of the reasons stated in defendants' joint brief in support of their motion to dismiss, which is being filed today.

[*Signature appears on next page.*]

---

[6]   Where service of process has been effected pursuant to Rule 4(k)(2), the applicable forum for the minimum contacts analysis is the United States. *Oldfield*, 558 F.3d at 1220 (citing *Consol. Dev. Corp.*, 216 F.3d at 1291 n.6).

Dated:  August 31, 2020

**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, Florida 33131
Telephone: (305) 374-5600
Facsimile:  (305) 349-4654

By:  */s/ Naim S. Surgeon*
Pedro A. Freyre
Florida Bar No.: 192140
Email:  pedro.freyre@akerman.com
Naim S. Surgeon
Florida Bar No.: 101682
Email:  naim.surgeon@akerman.com

Martin Domb (*app. pro hac vice pending*)
martin.domb@akerman.com
AKERMAN LLP
520 Madison Avenue, 20th Floor
New York, NY 10022
Tel. (212) 880-3800
Fax (212) 880-8965

*Attorneys for Defendants*
*BBC Chartering USA, LLC and*
*BBC Chartering Singapore Pte Ltd.*

54436669;1