UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:20-cv-22471-DPG

NORTH AMERICAN SUGAR
INDUSTRIES, INC.,

        Plaintiff,

v.

XINJIANG GOLDWIND SCIENCE &
TECHNOLOGY CO., LTD.; GOLDWIND
INTERNATIONAL HOLDINGS(HK) LTD.;
DSV AIR & SEA INC.; BBC CHARTERING
USA, LLC; and BBC CHARTERING
SINGAPORE PTE LTD.,

        Defendants.

_____

**DEFENDANT DSV AIR & SEA, INC. MOTION TO DISMISS PLAINTIFF'S
COMPLAINT FOR LACK OF PERSONAL JURISDICTION
<u>AND MEMORANDUM OF LAW</u>**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  BACKGROUND .............................................................................................. 4

    A.  The Parties ............................................................................................ 4

    B.  The Shipments Of Wind Farm Equipment ......................................... 4

        1.  The Jade Shipment ................................................................... 5

        2.  The Moonstone Shipment ........................................................ 5

    C.  DSV US Did Not Engage In Any Activity In Florida Relating To The BBC Moonstone ................................................................................... 6

III.  ARGUMENT ................................................................................................... 7

    A.  Legal Standard For Dismissal Under Rule 12(b)(2) ........................... 7

    B.  This Court Lacks Specific Jurisdiction Over DSV US ....................... 8

        1.  DSV US Has Established Affirmatively That It Is Not Subject to Specific Jurisdiction ................................................................ 8

            a.  Plaintiff's Claims Do Not Arise From Any Business Activity By DSV US In Florida ......................................... 8

            b.  DSV US Did Not Engage In Tortious Activity In Florida ............. 9

                (1)  DSV US Did Not Engage In Tortious Activity In Florida Related To Plaintiff's Title III Claim .................. 10

                (2)  Plaintiff's Conspiracy Claim Adds Nothing To The Jurisdictional Analysis ..................................................... 11

                (3)  Plaintiff Did Not Suffer Any Injury In Florida ............... 12

    C.  Asserting Jurisdiction Over DSV Would Not Comport With Due Process ........ 13

        1.  Plaintiff's Claims Do Not Arise Out Of DSV US's Contacts With Florida. ................................................................................. 13

        2.  DSV US Did Not Purposefully Avail Itself Of The Privilege Of Conducting Business In Florida. .............................................. 14

    D.  Personal Jurisdiction Over DSV Is Not Conferred By Fed. R. Civ. P. 4(k)(2) ................................................................................................. 17

IV.  CONCLUSION ............................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Advantus, Corp. v. Sandpiper of California, Inc.*
   No. 3:18-CV-1368-J-34JRK, 2019 WL 4751725 (M.D. Fla. Sept. 30, 2019) .......................11

*Aronson v. Celebrity Cruises, Inc.*
   30 F. Supp. 3d 1379, 1385-86 (S.D. Fla. 2014)........................................................................7

*Blueskygreenland Env'tl. Sols., LLC v. 21st Century Planet Fund, LLC*
   No. 12-cv-81234, 2014 WL 1341277 (S.D. Fla. Apr. 4, 2014)...............................................16

*Borchers v. Amazon.com, Inc.*
   No. 18-cv-61537, 2019 WL 5196117 (S.D. Fla. Jan. 30, 2019)................................................8

*Burger King Corp. v. Rudzewicz*
   471 U.S. 462 (1985)............................................................................................................14, 17

*Buzz Pop Cocktails Corp. v. Booze Pops, LLC*
   No. 8:19-CV-1840, 2020 WL 2838825 (M.D. Fla. Apr. 22, 2020)..........................................14

*CCTV Outlet, Corp. v. Desert Sec. Sys. L.L.C.*
   No. 17-cv-60928, 2017 WL 5640717 (S.D. Fla. Aug. 7, 2017) ..............................................16

*Citicorp Ins. Brokers (Marine), Ltd. v. Charman*
   635 So. 2d 79 (Fla. 1st DCA 1994) .........................................................................................8

*Daimler AG v. Bauman*
   571 U.S. 117 (2014)................................................................................................................17

*Del Valle v. Trivago GmbH*
   No. 19-cv-22619, 2020 WL 2733729 (S.D. Fla. May 26, 2020).............................................10

*DeRossett v. Se. Toyota Distribs.*
   No. 17-60415, 2017 WL 7344406 (S.D. Fla. Aug. 18, 2017) ...................................................7

*DeZinno v. McClain Printing Co.*
   No. 06-cv-22974, 2007 WL 9709709 (S.D. Fla. Apr. 19, 2007)...............................................9

*Don King Prods., Inc. v. Mosley*
   No. 15-CV-61717, 2016 WL 3950930 (S.D. Fla. Jan. 27, 2016)............................................15

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*FR Tax Grp., LLC v. Kassover*
No. 17-cv-80386, 2017 WL 6346051 (S.D. Fla. Aug. 2, 2017), *aff'd*, 723 F.
App'x 977 (11th Cir. 2018) ..................................................................................................3

*Hinkle v. Cont'l Motors, Inc.*
268 F. Supp. 3d 1312, 1319 (M.D. Fla. 2017).........................................................................7

*Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*
421 F.3d 1162 (11th Cir. 2005) ..............................................................................................9

*Licciardello v. Lovelady*
544 F.3d 1280 (11th Cir. 2008) ............................................................................................14

*Louis Vuitton Malletier, S.A. v. Mosseri*
736 F.3d 1339 (11th Cir. 2013) .....................................................................................13, 16

*Melgarejo v. Pycsa Panama, S.A.*
537 F. App'x 852 (11th Cir. 2013) ........................................................................................7

*Navitar, Inc. v. eScholar, LLC*
No. 11-CV-20266-PAS, 2011 WL 13223668 (S.D. Fla. July 7, 2011)..................................15

*Neelu Aviation, LLC v. Boca Aircraft Maint., LLC*
No. 18-cv-81445, 2019 WL 3532024 (S.D. Fla. Aug. 2, 2019) ...............................................8

*Oldfield v. Pueblo De Bahia Lora, S.A.*
558 F.3d 1210 (11th Cir. 2009) ............................................................................................14

*Peruyero v. Airbus S.A.S.*
83 F. Supp. 3d 1283, 1286 (S.D. Fla. 2014) ...........................................................................7

*PG Creative Inc. v. Affirm Agency, LLC*
No. 18-CV-24299, 2019 WL 5684219 (S.D. Fla. Oct. 31, 2019) (Gayles, J.) .................13, 17

*Platypus Wear, Inc. v. Clarke Modet & Co.*
515 F. Supp. 2d 1288 (S.D. Fla. 2007) .................................................................................12

*Posner v. Essex Ins. Co., Ltd.*
178 F.3d 1209 (11th Cir. 1999) ............................................................................................12

*Robey v. JPMorgan Chase Bank, N.A.*
343 F. Supp. 3d 1304, 1319 (S.D. Fla. 2018) .......................................................................17

*Estate of Scutieri v. Chambers*
386 F. App'x 951 (11th Cir. 2010) ..................................................................................10, 12

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Snow v. DirecTV, Inc.*
    450 F.3d 1314 (11th Cir. 2006) ............................................................12

*Sovereign Offshore Servs., LLC v. Shames*
    No. 17-CV-80172, 2017 WL 7798664 (S.D. Fla. Aug. 3, 2017) ..........................15

*In re Takata Airbag Prod. Liab. Litig.*
    396 F. Supp. 3d 1101, 1146 (S.D. Fla. 2019) .........................................17

*Tancogne v. Aquimpex, S.p.A.*
    No. 07-cv-22553, 2009 WL 10667749 (S.D. Fla. Mar. 6, 2009) .........................9

*Taylor v. Moskow*
    717 F. App'x 836 (11th Cir. 2017) .......................................................3

*U.S. Sec. &. Exch. Comm. v. Carrillo*
    115 F.3d 1540 (11th Cir. 1997) ..........................................................16

*United Techs. Corp. v. Mazer*
    556 F.3d 1260 (11th Cir. 2009) ..........................................................11

*Waite v. All Acquisition Corp.*
    901 F.3d 1307 (11th Cir. 2018), *cert. denied sub nom. Waite v. Union Carbide*
    *Corp.*, 139 S. Ct. 1384 (2019)......................................................13, 14

*Walden v. Fiore*
    571 U.S. 277 (2014).......................................................................8

**Statutes**

22 U.S.C.
    § 6021, *et seq.* ..................................................................... *passim*
    § 6023(13)............................................................................1, 10
    § 6082(a) ...............................................................................1

Fla. Stat.
    § 48.193...................................................................................7
    § 48.193(1)(a) ....................................................................8, 10, 12
    § 48.193(1)(b) ..........................................................................12

**Rules**

Fed. R. Civ. P.
    4(k)(2) ...............................................................................1, 17
    12(b)(2) .................................................................................7

I.      **INTRODUCTION**

In this lawsuit, Plaintiff North American Sugar Industries Inc. ("Plaintiff"), a New Jersey corporation, sued several Defendants, including DSV Air & Sea Inc. ("DSV US"), a Delaware corporation, for activity relating to a port in Cuba.[1]  The Complaint alleges specific jurisdiction over DSV US based on two provisions in the Florida long-arm statute that apply to causes of action arising from (1) defendant's business activity in Florida or (2) commission of tortious acts in Florida.[2]  Requiring DSV US to defend itself in this proceeding would violate Florida's long-arm statute and constitutional due process protections.

The basis of Plaintiff's suit is Title III of the Cuban Liberty and Democratic Solidarity Act (LIBERTAD) Act.  *See* 22 U.S.C. § 6021, *et seq.* (the "Act," or "Title III").  Title III creates a statutory cause of action against entities who "traffic[] . . . knowingly and intentionally" in property confiscated by the Cuban Government.  *Id.* §§ 6023(13), 6082(a).  According to the Complaint, Plaintiff owned a port in Cuba—Puerto Carupano (the "Confiscated Port")—that was confiscated by the Cuban Government in 1960 along with dozens of other assets belonging to Plaintiff (together with the Confiscated Port, the "Confiscated Property").  Plaintiff's suit stems from two shipments of wind farm equipment from China to Cuba by sea in which the equipment was unloaded at the Confiscated Port:  the Jade Shipment and Moonstone Shipment.  Plaintiff alleges that DSV US was involved in only the Moonstone Shipment by acting as a carrier for the shipment.

---

[1]      The other named Defendants are BBC Chartering USA, LLC and BBC Chartering Singapore PTE Ltd, Goldwind International Holdings (HK) Ltd. ("Goldwind International"), and Xinjiang Goldwind Science & Technology Co., Ltd. ("Goldwind Science") (collectively, "Defendants").

[2]      Plaintiff also alleges, in the alternative, personal jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2), which applies only if the defendant is not subject to jurisdiction in any state's courts of general jurisdiction.  DSV US, however, is subject to general personal jurisdiction in Delaware and New Jersey.

According to the Complaint, DSV US trafficked in the Confiscated Port—*located in Cuba*—by allegedly providing transportation services and by causing, participating in, and commercially benefitting from other entities' alleged trafficking.  (Compl. ¶¶ 216–17.)

As established by the Declaration of Ken Witkowski ("Wit. Decl.", attached as Exhibit A), DSV US was not a carrier and did not provide transportation services for the Moonstone Shipment. In fact, DSV US was not party to *any agreement* to ship wind farm equipment from China to Cuba, nor did DSV US even communicate with any other Defendant about the Moonstone Shipment. Plaintiff appears to have mistakenly concluded that DSV US was a carrier for the Moonstone Shipment based on an electronic submission to United States Customs and Border Protection ("USCB") using a code number associated with DSV US.  (Compl. ¶¶ 125–126.)  The shipping documents for the Moonstone Shipment show that DSV US was not and did not act as a carrier; the code number used in the submission identified in the Complaint was a clerical error.  (Wit. Decl. ¶ 8.)  More significantly for personal jurisdictional purposes, DSV US did not engage in *any activity* in Florida related to the Moonstone Shipment.  (*Id.* ¶ 18.)

Personal jurisdiction is not conferred by Florida's long-arm statute.  First, Plaintiff's Title III claim does not *arise from* any business activity by DSV US in Florida.  DSV US has two offices in Florida, but neither office was involved in the Moonstone Shipment in any way.  Second, the Title III claim does not *arise from* DSV US committing a tortious act in Florida.  DSV US did not take any action in Florida related to the Moonstone Shipment, much less engage in any tortious activity in Florida.  For these reasons, the exercise of personal jurisdiction would violate Florida's long arm-statute.

Even if the Florida long-arm statute provided a basis for personal jurisdiction over DSV US, exercising jurisdiction over DSV US would be contrary to constitutional due process.  Plaintiff

has failed to demonstrate that its Title III claim arises out of or relates to DSV US's contacts with the forum and that DSV US purposefully availed itself of the privilege of conducting activities within Florida.  The relatedness requirement fails because DSV US's contacts with the forum state were not a "but-for" cause of the Title III claim.  As to the purposeful availment requirement, DSV US did not engage in intentional conduct aimed at Florida that caused harm in Florida.  In fact, DSV US could not have harmed Plaintiff in Florida because it is a non-resident and does not allege to have any connection to Florida.

Plaintiff apparently wants to establish personal jurisdiction by asserting a civil conspiracy claim, alleging that Defendants engaged in a scheme by which the BBC Moonstone vessel (the "BBC Moonstone") stopped in Miami, Florida and documents were presented indicating incorrectly that the wind farm equipment would be unloaded in Miami rather than Cuba.  The conspiracy claim, however, does not establish personal jurisdiction because DSV US was not part of any agreement to ship wind farm equipment from China to Cuba.  In fact, DSV US did not have *any communications* with any alleged co-conspirator.  As such, there is no personal jurisdiction over DSV US based on the alleged civil conspiracy claim.

The Complaint must be dismissed because DSV US has affirmatively established that it is not subject to specific personal jurisdiction in Florida.[3]

---

[3]   Defendants are filing contemporaneously with this motion a Joint Motion to Dismiss Plaintiff's claims.  Because, as explained in the Defendants' Joint Motion to Dismiss, this court lacks subject matter jurisdiction and the Complaint fails to state a claim for relief, there is no basis to assert personal jurisdiction over DSV US.  *FR Tax Grp., LLC v. Kassover*, No. 17-cv-80386, 2017 WL 6346051, at *4 (S.D. Fla. Aug. 2, 2017), *aff'd*, 723 F. App'x 977 (11th Cir. 2018); *see also Taylor v. Moskow*, 717 F. App'x 836, 839–40 (11th Cir. 2017) ("In Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine whether the allegations of the complaint state a cause of action.") (citation omitted).

## II.     **BACKGROUND**

### A.     **The Parties**

Plaintiff is a New Jersey corporation that, prior to 1960, owned several Cuban subsidiaries in the sugar production industry.  (Compl. ¶¶ 19, 63.)  Plaintiff owns a certified claim to numerous properties and assets confiscated by the Cuban Government in 1960, including the Confiscated Port.  (*Id.* ¶¶ 64–65, 69.)  American Sugar does not allege that it conducted business in Florida, or that it has any connection to the State of Florida.

DSV US is a Delaware corporation with its principal place of business in Clark, New Jersey.  (*Id.* ¶ 22; Wit. Decl. ¶¶ 4–5.)  DSV US provides freight forwarding services, both by air and sea, for international shipments.  (Wit. Decl. ¶ 3.)  DSV US is an affiliate of non-party DSV Ocean Transport A/S, a Danish corporation ("DSV Denmark").[4]  (*Id.* ¶ 5)  In December 2018, DSV US had 35 offices in the United States, including a Miami and Orlando office.  (*Id.* ¶ 6.)

Defendant Goldwind Science is a Chinese Corporation.  (Compl. ¶ 20.)  Its parent company—Defendant Goldwind International—is a Hong Kong corporation.  (*Id.* ¶ 21.)  Both companies manufacture wind farm equipment.  (*Id.* ¶¶ 20–21.)

Defendant BBC Chartering USA, LLC is a Texas corporation.  (*Id.* ¶ 23.)  Defendant BBC Singapore PTE Ltd. is a Singapore corporation.  (*Id.* ¶ 24.)[5]  The BBC Carriers provide transportation services, specializing in the provision of ocean cargo transportation.  (*Id.* ¶¶ 23–24.)

### B.     **The Shipments Of Wind Farm Equipment**

According to the Complaint, Goldwind International entered into an agreement with third parties to supply wind turbines for a wind farm project in Cuba.  (*Id* ¶¶ 88–89.)  Goldwind

---

[4]     The Complaint makes allegations about DSV Denmark, but it was not named as a Defendant.  (*See, e.g.*, Compl. ¶¶ 156, 159.)

[5]     BBC Charting USA, LLC, BBC Singapore PTE Ltd., and non-party BBC Chartering Carriers GmbhH are referred to collectively as the "BBC Carriers."  (Compl. ¶ 23.)

International arranged for the transport of that equipment from China to Cuba.  (*Id.* ¶ 93.)  The wind farm equipment was shipped in at least two voyages; however, the Complaint focuses on two deliveries that occurred on separate vessels:  the BBC Jade and the BBC Moonstone.  (*Id.* ¶¶ 104–83.)[6]

### 1.     The Jade Shipment

The BBC Jade left China on November 15, 2018 and arrived at Puerto Carupano on January 6, 2019.  (Compl. p. 45.)  American Sugar, however, does not allege that DSV US was involved in the BBC Jade shipment.  (*Id.* ¶¶ 154–83.)

### 2.     The Moonstone Shipment

The BBC Moonstone departed China on December 25, 2018 with the wind farm equipment.  (*Id.* ¶ 133.)  On January 30, 2019, the BBC Moonstone stopped at the Miami Seaport to refuel and resupply.  (*Id.* ¶¶ 135, 137.)  The BBC Moonstone arrived at Puerto Carupano on February 4, 2019, where the wind farm equipment was unloaded.  (*Id.* ¶ 139.)

According to the Complaint, Goldwind Science hired and paid DSV US to deliver the wind farm equipment to Puerto Carupano (*id.* ¶ 109), and DSV US then hired and paid BBC Carriers to carry out the delivery, (*id.* ¶ 110.)  Plaintiff alleges that DSV US acted as the carrier that did not operate the vessel (a "NVOCC") (*id.* ¶¶ 95, 108, 117–118) and that BBC Carriers acted as the carrier that operated and chartered the vessel (a "VOCC") (*Id.* ¶¶ 95, 108).

These allegations regarding DSV US's involvement in the Moonstone Shipment are false.  (*See* Wit. Decl. ¶¶ 8–9, 12.)  In fact, DSV US was not hired to act as a carrier or to engage in any other activity related to the Moonstone Shipment.  (Wit. Decl. ¶ 9.)  And DSV US did not act as a

---

[6]     American Sugar alleges that "multiple other shipments" arrived at Puerto Carupano, in which DSV US was not involved.  (Compl. ¶¶ 184–88.)

carrier for the Moonstone Shipment.  (*Id.* ¶ 8.)  Nor did DSV US hire or pay anyone, including BBC Carriers to carry out the Moonstone Shipment.  (*Id.* ¶ 12.)  DSV US was not involved in planning the route for the Moonstone Shipment, deciding that the ship stop in Miami, or selecting the destination port in Cuba.  (*Id.* ¶¶ 13–14.)

DSV US engaged in only limited activities that had any relation to the Moonstone Shipment:  DSV US conferred, outside of Florida, about a compliance issue, DSV US made a call from outside of Florida to the U.S. Department of Commerce (also located outside of Florida) to discuss the export license authorizing the Moonstone Shipment, and DSV US transmitted forms for DSV Denmark pertaining to the Moonstone Shipment from outside of Florida to USCB.  (*Id.* ¶ 16.)

According to the Complaint, several documents relating to the Moonstone Shipment incorrectly list "Miami, Florida" and "Miami Seaport" as the shipment destination and port of unlading, respectively.  (Compl. ¶¶ 116, 120–23, 125, 128–31.)  Specifically, American Sugar points to cargo declarations submitted to USCB (*id.* ¶¶ 116, 120, 125, 128), two house bills of lading (*id.* ¶¶ 121, 129), and two master bills of lading (*id.* ¶¶ 122–23, 130–31.)  None of those documents are attached to the Complaint.  In fact, DSV US did not review, issue, sign, present, or submit to USCB *any* cargo declaration, bill of lading, or any other document stating that Miami or the Miami Seaport was the ultimate destination of the BBC Moonstone, rather than Cuba, or that the wind farm equipment would be unloaded in Miami.  (Wit. Decl. ¶ 23.)  Nor did DSV US direct any other entity to do the same.  (*Id.*)

### C.    DSV US Did Not Engage In Any Activity In Florida Relating To The BBC Moonstone

As to DSV US's Florida activity in relation to the alleged causes of action, American Sugar only alleges "*[o]n information and belief*" that "DSV [US]'s Miami office was involved, at least

in part, in providing" various logistical services related to the Moonstone Shipment.  (Compl. ¶ 113 (emphasis added).)  In fact, DSV US's Miami office (and Orlando office) had no involvement in the Moonstone Shipment.  (Wit. Decl. ¶ 18.)  No DSV US employee, agent, or representative took any action in Florida related to the Moonstone Shipment.  (*Id.*)

## III.   ARGUMENT

### A.   Legal Standard For Dismissal Under Rule 12(b)(2)

"A court must dismiss an action against a defendant over which it has no personal jurisdiction."  *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1286 (S.D. Fla. 2014) (citation omitted).  A plaintiff first must plead sufficient facts to establish a prima facie case for the exercise of specific personal jurisdiction over a foreign defendant.  *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1385-86 (S.D. Fla. 2014); *see also DeRossett v. Se. Toyota Distribs., Inc.*, No. 17-60415, 2017 WL 7344406, at *2 (S.D. Fla. Aug. 18, 2017).  Even if a plaintiff meets its initial burden, if the defendant submits an affidavit challenging jurisdiction, the burden shifts back to the plaintiff "to produce evidence supporting jurisdiction."  *Aronson*, 30 F. Supp. 3d at 1385.

To meet its burden, the complaint must plead sufficient facts that establish both that the defendant is subject to the forum state's long-arm statute, Fla. Stat. § 48.193, and that "the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution."  *Hinkle v. Cont'l Motors, Inc.*, 268 F. Supp. 3d 1312, 1319 (M.D. Fla. 2017).  The "Due Process" question is a separate inquiry that "imposes a more restrictive requirement" than Florida's Long-Arm Statute.  *Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 859-60 (11th Cir. 2013) (quoting *Internet Solutions Corp. v. Marshall*, 39 So.3d 1201, 1207 (Fla. 2010)).

Here, the Complaint does not allege that the Court has general jurisdiction under the Florida long-arm statute over DSV US.  Thus, the issue is whether the Court can exercise specific jurisdiction over DSV US—which is entirely dependent upon whether DSV US's "suit-related

conduct [created] a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

B.   **This Court Lacks Specific Jurisdiction Over DSV US**

1.   **DSV US Has Established Affirmatively That It Is Not Subject to Specific Jurisdiction**

Plaintiff relies on the provisions in Florida's long-arm statute that provide for personal jurisdiction over a nonresident corporation "for any cause of action *arising from*" (1) "[o]perating, conducting, engaging in, or carrying on a business venture in [Florida] or having an office or agency in [Florida]," and (2) "[c]ommitting a tortious act within this state." Fla. Stat. §§ 48.193(1)(a)(1) and (a)(2) (emphasis added).  Neither provision subjects DSV US to this Court's jurisdiction because Plaintiff's claims do not arise from DSV US's business activity or "tortious" actions in Florida.

a.   **Plaintiff's Claims Do Not Arise From Any Business Activity By DSV US In Florida**

To establish specific jurisdiction based on allegations of business activity in Florida, "[t]he business activity must demonstrate a general course of business for pecuniary benefit *connected with* the alleged tort." *Neelu Aviation, LLC v. Boca Aircraft Maint., LLC*, No. 18-cv-81445, 2019 WL 3532024, at *12 (S.D. Fla. Aug. 2, 2019) (emphasis added).  "For this provision to apply, there must be a direct affiliation, nexus, or substantial connection between the basis for the cause of action and the business activity." *Borchers v. Amazon.com, Inc.*, No. 18-cv-61537, 2019 WL 5196117, at *3 (S.D. Fla. Jan. 30, 2019) (citing *Citicorp Ins. Brokers (Marine), Ltd. v. Charman*, 635 So. 2d 79, 82 (Fla. 1st DCA 1994)).

DSV US's business activity in Florida had *no connection* to the Moonstone Shipment. (Wit. Decl. ¶ 18.)  Neither the two DSV US offices located in Florida nor any of DSV US's

employees in Florida played any part in any activity that was in any way related to the Moonstone Shipment. (*Id.*) Because there is no "nexus or connection between the business carried on" by DSV US in Florida and Plaintiff's alleged claims the Court cannot exercise specific jurisdiction. *Tancogne v. Aquimpex, S.p.A.*, No. 07-cv-22553, 2009 WL 10667749, at *5-6 (S.D. Fla. Mar. 6, 2009) (dismissing for lack of personal jurisdiction because plaintiff failed to establish defendant's business activities in Florida were tied to plaintiff's claims).

The only activity by DSV US even tangentially related to the Moonstone Shipment occurred *entirely outside of Florida* and did not involve DSV US's Florida offices or employees. (Wit. Decl. ¶ 16 (DSV US's compliance personnel had discussions outside of Florida concerning the Moonstone Shipment, DSV US had one phone conversation with the U.S. Department of Commerce to discuss the export license for the Moonstone Shipment where the participants on the call were outside of Florida, and DSV US electronically transmitted forms from outside of Florida to USCB).) Even if the electronic transmissions or communications had been directed at Florida (and they were not), they would not rise to the level of "doing business" in Florida. *See Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) ("While [defendant] made telephonic and electronic communications from its California offices into Florida, these communications cannot constitute 'conducting business' in Florida."). DSV US has established that it did not engage in any business activity in Florida connected to Plaintiff's claims.

**b.     DSV US Did Not Engage In Tortious Activity In Florida**

For personal jurisdiction to attach under the tortious activity provision of the Florida long-arm statute Plaintiff must demonstrate that DSV US "committed a substantial aspect of the alleged tort *in Florida* by establishing that the activities in Florida were essential to the success of the tort." *DeZinno v. McClain Printing Co.*, No. 06-cv-22974, 2007 WL 9709709, at *8 (S.D. Fla. Apr. 19,

2007) (internal quotations omitted; emphasis added).  In addition, out-of-state conduct that causes injury *within Florida* can serve as a basis for jurisdiction under § 48.193(1)(a)(2).  *See Estate of Scutieri v. Chambers*, 386 F. App'x 951, 956 (11th Cir. 2010).  Here, DSV US did not commit any aspect of the alleged trafficking in Florida or cause any injury in Florida.

### (1)    DSV US Did Not Engage In Tortious Activity In Florida Related To Plaintiff's Title III Claim

DSV US did not engage in any activity in Florida related to the Moonstone Shipment, much less commit a substantial aspect of the alleged trafficking activity in Florida.  Tracking the language of 22 U.S.C. § 6023(13), the Complaint alleges in conclusory fashion that DSV US knowingly and intentionally (1) used the Confiscated Property; (2) engaged in commercial activity using or otherwise benefiting from the Confiscated Property; and/or (3) caused, directed, participated, or profited from the trafficking by another person.  (Compl. ¶ 215.)  But DSV US did not engage in any such activity, and certainly did not do so in Florida.  (*See* Wit. Decl. ¶ 22.)

The Confiscated Port is located in Cuba, not Florida.  As such, DSV US did not "use" the Confiscated Port in Florida (nor could any other defendant have done so).  *See Del Valle v. Trivago GmbH*, No. 19-cv-22619, 2020 WL 2733729, at *3 (S.D. Fla. May 26, 2020) (dismissing Helms-Burton claim for lack of personal jurisdiction where "Defendants [allegedly] trafficked in . . . confiscated property, which occurred in Cuba.")  In fact, DSV US did not "use" the Confiscated Port at all.  (*See* Wit. Decl. ¶¶ 13, 16, 24.)  Likewise, DSV US did not engage in any commercial activity using or benefitting from the Confiscated Port, and certainly did not do so in Florida.  (*Id.* ¶¶ 16, 18.)  DSV US did not benefit from the Confiscated Port because it was not a carrier for the Moonstone Shipment or a party to the Moonstone Shipment.  (*Id.* ¶¶ 8–12.)  And DSV US certainly did not benefit from the Confiscated Port *in Florida*.  (*Id.* ¶ 18.)  Simply put, because DSV US did

not engage in any activity related to the Moonstone Shipment in Florida it necessarily did not engage in any activity in Florida that was essential to the alleged trafficking.

### (2)    Plaintiff's Conspiracy Claim Adds Nothing To The Jurisdictional Analysis

Lacking any facts that DSV US engaged in any activity in Florida related to the Title III claim, Plaintiff apparently attempts to impute acts of the alleged co-conspirators to DSV US. Plaintiff alleges that "[e]ach of the Defendants agreed to transport the Goldwind Equipment from China to . . . Cuba via the Confiscated Port." (Compl. ¶ 238.) In furtherance of the supposed conspiracy, Defendants allegedly implemented a scheme for the BBC Moonstone to stop in Miami to refuel and resupply and to present false documentation representing that equipment would be unloaded in Miami. (*Id.* ¶ 241.)

Acts of alleged co-conspirators may be imputed to a defendant only where it "was part of a conspiracy either engineered in Florida or pursuant to which a tortious act in furtherance was committed in Florida." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1283 (11th Cir. 2009). As such, the conspiracy allegations cannot support personal jurisdiction over DSV US unless it "was involved in a Florida-based agreement to [traffic in the confiscated port]—i.e., involved in a meeting of the minds with at least one other [alleged] co-conspirator—before the time of the [alleged trafficking]." *Id.* at 1282 (emphasis in original). DSV US, however, was party to *no agreement* related to the Moonstone Shipment. (Wit. Decl. ¶¶ 8–13, 24); *see Mazer*, 556 F.3d 1260, 1277 (finding factual denials of jurisdictional allegations sufficient to shift burden to plaintiff); *Advantus, Corp. v. Sandpiper of California, Inc.*, No. 3:18-CV-1368-J-34JRK, 2019 WL 4751725, at *28 (M.D. Fla. Sept. 30, 2019) (holding plaintiff "failed to carry its burden of establishing . . . personal jurisdiction over [defendant] as to the alleged conspiracy claim" where defendant "has come forward with evidence rebutting" allegations of conspiracy"). Indeed, DSV

11

US had no communications with any alleged co-conspirator related to the Moonstone Shipment. (Wit. Decl. ¶ 10.)  Because DSV US was not part of an agreement to engage in the alleged trafficking activity, Plaintiff's conspiracy claim cannot serve as a basis for asserting personal jurisdiction over DSV US. *See Platypus Wear, Inc. v. Clarke Modet & Co.*, 515 F. Supp. 2d 1288, 1296 (S.D. Fla. 2007) (finding evidence of defendant's involvement in conspiracy insufficient to establish personal jurisdiction under § 48.193(1)(b)); *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (same).[7]

### (3)     Plaintiff Did Not Suffer Any Injury In Florida

While out-of-state conduct can satisfy § 48.193(1)(a)(2), Plaintiff "must still plead facts demonstrating a cognizable injury in Florida." *Estate of Scutieri*, 386 F. App'x at 956.  Plaintiff is a New Jersey corporation with its principal place of business in New York, and does not allege that it has any connection to Florida.  (Compl. ¶ 19.)  While DSV US disputes that Plaintiff has alleged *any injury* traceable to any activity by DSV US, (*see* Defs.' Joint Mot. to Dismiss at Section I ), Plaintiff certainly has not suffered any injury *in Florida*.  *See Estate of Scutieri*, 386 Fed. Appx. at 956 (holding that long-arm statute was not satisfied where plaintiff did not suffer injury in Florida); *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1220 (11th Cir. 1999) (the statute does not provide jurisdiction over claims arising from "an allegation of injury to the business interest of

---

[7]      Even if DSV US had been party to an agreement to ship wind farm equipment from China to Cuba (and it was not), the conspiracy claim still would not provide a basis for exercising personal jurisdiction over DSV US.  Because "Florida courts do not recognize civil conspiracy as an independent tort," the court must determine whether the alleged underlying tort "arises from" acts in Florida. *Estate of Scutieri*, 386 F. App'x at 955.  Plaintiff alleges in conclusory fashion that "[t]he stopover . . . in Miami [including presenting false documents representing that the wind farm equipment would be unloaded in Miami] was an essential aspect of Defendants' use of the Confiscated Port . . . ." (Compl . ¶¶ 241 – 42.)  The Complaint is devoid of any allegations to show that the stop to refuel *in Miami* (*id.* ¶ 104) was essential to the alleged trafficking activity *in Cuba*.

[even] a Florida plaintiff where that interest is located entirely outside of Florida.").  DSV US's

out-of-state conduct does not provide a basis for jurisdiction under Florida's long-arm statute.

### C.      Asserting Jurisdiction Over DSV Would Not Comport With Due Process

Even if Plaintiff had satisfied the Florida long-arm statue, it fails the second step of the

jurisdictional analysis—determining whether the exercise of specific jurisdiction comports with

the due process requirements of the Fourteenth Amendment to the Unites States Constitution.  Due

process requires courts to consider, first, "whether the plaintiffs have established that their claims

arise out of or relate to at least one of the defendant's contacts with the forum" and second,

"whether the plaintiffs have demonstrated that the defendant purposefully availed itself of the

privilege of conducting activities within the forum state." *Waite v. All Acquisition Corp.*, 901 F.3d

1307, 1313 (11th Cir. 2018) (internal quotation marks omitted), *cert. denied sub nom. Waite v.*

*Union Carbide Corp.*, 139 S. Ct. 1384 (2019).  Plaintiff cannot meet its burden to establish either

prong.  *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) ("The

plaintiff bears the burden of establishing the first two prongs.")

### 1.      Plaintiff's Claims Do Not Arise Out Of DSV US's Contacts With Florida

"To establish relatedness, plaintiffs must at a minimum demonstrate the defendant had

some contact with the forum state and that the contact was a but-for cause of the alleged tort.  That

is, the alleged tort must arise out of contacts that the defendant himself creates with the forum."

*PG Creative Inc. v. Affirm Agency, LLC*, No. 18-CV-24299, 2019 WL 5684219, at *4 (S.D. Fla.

Oct. 31, 2019) (Gayles, J.) (internal quotations and citations omitted).  In addition, "the causal

nexus between the tortious conduct and the purposeful contact must be such that the out-of-state

resident will have 'fair warning that a particular activity will subject [it] to the jurisdiction of a

foreign sovereign.'" *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222 (11th Cir. 2009) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (alteration in original)).

Here, the activity by DSV US in Florida does not meet the "but-for" test.  The only activity by DSV US in Florida is that it has branch offices in Miami and Orlando and that DSV US is the shipper for a certain number of unrelated shipments each year that are unloaded at Florida ports. (Compl. ¶ 22.)  The Moonstone Shipment would have occurred regardless of whether DSV US had Florida offices.  (Wit. Decl. ¶ 18.)  Because DSV US's contacts with Florida "have nothing to do with the torts [DSV US] allegedly committed" Plaintiff cannot "establish[] that [DSV US's] contacts were the but-for cause of the torts [Plaintiff] allege[s]."  *Waite*, 901 F.3d at 1315.

### 2.     DSV US Did Not Purposefully Avail Itself Of The Privilege Of Conducting Business In Florida

As for the second prong of the due process inquiry—i.e., purposeful availment—in cases involving intentional torts courts apply the *Calder* "effects test," which requires that a defendant has (1) committed an intentional act, (2) aimed at the forum state, (3) causing harm that the defendant should have anticipated would be suffered in the forum state.  *Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008).  DSV US is alleged to have committed an intentional act of "trafficking" in the confiscated port, but Plaintiff cannot satisfy the second and third prongs of the effects test.

To satisfy the second prong, a defendant must have intentionally and purposefully directed "tortious conduct" at a resident of the forum.  *Buzz Pop Cocktails Corp. v. Booze Pops, LLC*, No. 8:19-CV-1840, 2020 WL 2838825, at *7 (M.D. Fla. Apr. 22, 2020).  DSV US did not engage in any conduct relating to the Moonstone Shipment that was *aimed at* Florida, whether intentional or otherwise.  The only conduct by DSV US related in any way to the Moonstone Shipment occurred outside of Florida and was not directed into Florida.  (Wit. Decl. ¶ 18.)  This is not sufficient.  *See*

*Navitar, Inc. v. eScholar, LLC*, No. 11-CV-20266-PAS, 2011 WL 13223668, at *3 (S.D. Fla. July 7, 2011) (holding defendant's contact with Florida were not sufficient to satisfy due process where provided "[a]ffidavit makes it clear that Defendant's business activities relating to [plaintiff's claim] are not directed at Florida."); *see also Sovereign Offshore Servs., LLC v. Shames*, No. 17-CV-80172, 2017 WL 7798664, at *4 (S.D. Fla. Aug. 3, 2017) (holding that even "Defendant's awareness that his blog posts would be accessible in Florida, by virtue of the nature of the world-wide web, and [plaintiff's] physical location in Florida are insufficient to establish that Defendant has minimum contacts with Florida.")

Moreover, DSV US's limited acts related to the Moonstone Shipment were not tortious. DSV US transmitted forms to USCB relating to the Moonstone Shipment, and those forms did not misidentify the ultimate destination as Miami or state that the wind farm equipment would be unloaded in Miami.  (Wit Decl. ¶¶ 16, 23.)  There is no tortious conduct or wrongdoing by submitting forms to USCB.  And of course, there is no wrongful or tortious conduct in conferring on a compliance issue relating to the shipment or discussing with the U.S. Department of Commerce the license it issued for the BBC Moonstone Shipment.  Absent any tortious conduct directed at Florida, DSV US did not purposefully avail itself of the privilege of conducting business in Florida.  *See Don King Prods., Inc. v. Mosley*, No. 15-CV-61717, 2016 WL 3950930, at *5 (S.D. Fla. Jan. 27, 2016) (holding plaintiff failed to satisfy "effects test" defendant's national advertising campaign was "not inherently tortious . . . and there is no evidence that the promotional materials were purposefully directed at Florida or its citizens.")

Plaintiff also cannot satisfy the third prong of the effects test—that DSV US should have anticipated that it would cause harm to Plaintiff in Florida.  To satisfy this requirement the defendant must have known "that it was likely committing [a tort] specifically against the plaintiff

in the forum state and continued to do so anyway." *CCTV Outlet, Corp. v. Desert Sec. Sys. L.L.C.*, No. 17-cv-60928, 2017 WL 5640717, at *3 (S.D. Fla. Aug. 7, 2017).  As discussed in Section III.B.1.b.(3) above, if any harm occurred to Plaintiff, it was not suffered in Florida.  And the Complaint does not allege that DSV US was aware of the existence of American Sugar, much less that DSV US took any action that it should have known would harm American Sugar in Florida.[8]

Plaintiff's conspiracy allegations do not change the analysis.  Minimum contacts can be based on a coconspirator's presence in Florida "only if the conspiracy is directed towards the forum, or substantial steps in furtherance of the conspiracy are taken in the forum" and there is evidence "of injury related to the conspiracy that occurred in the State of Florida." *Blueskygreenland Env'tl. Sols., LLC v. 21st Century Planet Fund, LLC*, No. 12-cv-81234, 2014 WL 1341277, at *6 (S.D. Fla. Apr. 4, 2014) (finding elements lacking because, *inter alia*, plaintiff "is a Texas corporation complaining of lost revenues from sales in the territory of India").  As discussed in Section III.B.1.b.(2), DSV US was not party to "a 'meeting of the minds' between the [alleged] co-conspirators."  *Id.*

Even if DSV US had been involved in an agreement to have the BBC Moonstone stop in Miami, Plaintiff has failed to allege that the supposed conspiracy was directed at Florida or substantial steps in furtherance of the conspiracy were taken in Florida.  Plaintiff's conclusory

---

[8]      Plaintiff also could not satisfy the traditional minimum contacts test for purposeful availment.   Under the traditional purposeful availment analysis, the court assesses the nonresident's contacts with the forum state and asks whether those contacts "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum."  *Louis Vuitton*, 736 F.3d at 1357 (citing *U.S. Sec. &. Exch. Comm. v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997)).  Plaintiff cannot satisfy the first prong because DSV US's contacts with Florida are not related to the alleged trafficking activity.  (Wit. Decl. ¶ 18.)

allegation that "[t]he stopover of the BBC Moonstone in Miami was an essential aspect of the Defendants' use of the Confiscated Port" (Compl. ¶ 242.), is "not entitled to [an] assumption of truth[]." *PG Creative*, 2019 WL 5684219, at *6 (Gayles, J.) (rejecting conclusory allegations in applying the effects test).  Moreover, allegedly presenting false documentation that wind farm equipment would be unloaded in Miami (which DSV US did not do) would have served no purpose because the wind farm equipment was shipped from China to Cuba pursuant to a license issued by the U.S. Department of Commerce.  (Wit. Decl. ¶¶ 16, 23.)  As such, the stop in Miami was nothing more than a "fortuitous[] or attenuated contact[]," which cannot support specific jurisdiction. *Burger King*, 471 U.S. at 475; *see also Robey v. JPMorgan Chase Bank, N.A.*, 343 F. Supp. 3d 1304, 1319 (S.D. Fla. 2018) (applying rule).[9]

### D.      Personal Jurisdiction Over DSV Is Not Conferred By Fed. R. Civ. P. 4(k)(2)

Plaintiff alleges, in the alternative, that personal jurisdiction is conferred on DSV US under Fed. R. Civ. P. 4(k)(2), which provides that serving a summons or filing a waiver of service establishes personal jurisdiction for federal claims under certain circumstances.  (Compl. ¶ 15.) However, "Rule 4(k)(2) is applicable only if 'the defendant is not subject to jurisdiction in any state's courts of general jurisdiction.'"  *In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1146 (S.D. Fla. 2019) (quoting Fed. R. Civ. P. 4(k)(2)).  DSV US is a Delaware corporation with its principal place of business in New Jersey (Compl. ¶ 22), and is therefore subject to general personal jurisdiction in Delaware and New Jersey.  *See Daimler AG v. Bauman*, 571 U.S. 117, 118

---

[9]      Because Plaintiff cannot meet its burden to satisfy either the relatedness or purposeful availment prongs of the due process analysis, "it would offend traditional notions of fair play and substantial justice to subject [DSV US] to personal jurisdiction in Florida."  *PG Creative*, 2019 WL 5684219, at *7 (Gayles, J.).

(2014) ("The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business.").

IV. <u>**CONCLUSION**</u>

For all the reasons state above, Plaintiff's Complaint should be dismissed with prejudice for lack of personal jurisdiction.

Dated:   August 31, 2020                               Respectfully submitted,

                                        */s/ Robert M. Brochin*
                                        Robert M. Brochin
                                        Florida Bar No. 319661
                                        bobby.brochin@morganlewis.com
                                        Matthew M. Papkin
                                        Florida Bar No. 106565
                                        matthew.papkin@morganlewis.com
                                        Sarah J. Cohen
                                        Florida Bar No. 1010683
                                        sarah.cohen@morganlewis.com
                                        MORGAN, LEWIS & BOCKIUS LLP
                                        200 South Biscayne Boulevard, Suite 5300
                                        Miami, FL 33131-2339
                                        Telephone: 305.415.3000
                                        Facsimile: 305.415.3001

                                        Carl A. Valenstein (admitted *pro hac vice*)
                                        MORGAN, LEWIS & BOCKIUS LLP
                                        One Federal Street
                                        Boston, MA 02110-1726
                                        Telephone: 617.341.7700
                                        Facsimile: 617.341.7701

                                        John Vassos (admitted *pro hac vice*)
                                        MORGAN, LEWIS & BOCKIUS LLP
                                        101 Park Ave.
                                        New York, NY 10178-0060
                                        Telephone: 212.309.6000
                                        Facsimile: 212.309.6001

                                        *Counsel for Defendant DSV AIR & SEA, INC.*

18

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 31, 2020, I electronically filed the foregoing with the Clerk of the Court through the CM/ECF system, which will send a notice of electronic filing to counsel for all parties of record.

*/s/Robert M. Brochin*
Robert M. Brochin
