# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:20-cv-22471-DPG

NORTH AMERICAN SUGAR INDUSTRIES INC.,

                Plaintiff,

v.

XINJIANG GOLDWIND SCIENCE & TECHNOLOGY
CO., LTD., GOLDWIND INTERNATIONAL
HOLDINGS (HK) LTD., DSV AIR & SEA INC.,
BBC CHARTERING USA, LLC, and
BBC CHARTERING SINGAPORE PTE LTD.,

                Defendants.

**PLAINTIFF NORTH AMERICAN SUGAR INDUSTRIES INC.'S
MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY
AND SUPPORTING MEMORANDUM OF LAW**

Andrea E. Neuman (*pro hac vice*)
Rahim Moloo (*pro hac vice*)
Casey Kyung-Se Lee (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
Telephone:  (212) 351-3883
Facsimile:  (212) 351-5303
aneuman@gibsondunn.com
rmoloo@gibsondunn.com
clee@gibsondunn.com

David S. Mandel
FBN 38040
MANDEL & MANDEL LLP
169 East Flagler Street, Suite 1224
Miami, FL 33131
Telephone:  (305) 374-7771
dsm@mandel.law

Miguel A. Estrada (*pro hac vice*)
Audi K. Syarief (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036-5306
Telephone:  (202) 955-8257
Facsimile:  (202) 530-9616
mestrada@gibsondunn.com
asyarief@gibsondunn.com

Plaintiff North American Sugar Industries Inc. ("American Sugar") respectfully moves for leave to conduct jurisdictional discovery to respond to the motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) (the "Rule 12(b)(2) Motions") filed by Defendants Goldwind International Holdings (HK) Ltd. ("Goldwind International"), DSV Air & Sea Inc. ("DSV"), BBC Chartering USA, LLC ("BBC USA"), and BBC Chartering Singapore PTE Ltd. ("BBC Singapore") (collectively, "Defendants").[1] Dkt. Nos. 48, 52–53.  For the reasons set forth below, and assuming the ability to conduct remote depositions, American Sugar requests sixty (60) days to conduct discovery on issues of personal jurisdiction (including third-party discovery as appropriate), and an additional twenty-one (21) days from the close of jurisdictional discovery to file a consolidated response to Defendants' Rule 12(b)(2) Motions.[2]

## PRELIMINARY STATEMENT

American Sugar's well-pleaded complaint details Defendants' violations of the Helms-Burton Act through their involvement in two shipments of equipment from China to American Sugar's confiscated Cuban shipping port, with planned and purposeful stops in Miami, Florida, immediately before arriving in Cuba.  One Defendant now admits that those stops in Florida were *necessary* to gain clearance from U.S. Customs beforehand and ensure that the shipments did not violate *additional* federal laws.  Defendants nonetheless challenge the Court's exercise of personal jurisdiction by baldly disputing allegations in the complaint and making conclusory denials of involvement in the requisite Florida stops.

---

[1]  For purposes of this motion, the term "Defendants" does not include Defendant Xinjiang Goldwind Science & Technology Co., Ltd., which has not yet filed a response to the complaint.

[2]  Pursuant to this Court's order, Dkt. No. 58, American Sugar will file a consolidated response no longer than fifty (50) pages to Defendants' Rule 12(b)(2) Motions to Dismiss.

But Defendants' denials flatly conflict with records they filed with the U.S. government and with publicly available information. DSV, for example, claims that customs information it submitted to the U.S. government—which establishes DSV's involvement in the at-issue shipments, and is described in the complaint—was the result of a "clerical error," and should have been submitted instead on behalf of a foreign affiliate. Goldwind International fails to acknowledge its own repeated public statements (also cited in American Sugar's complaint) announcing its execution of a supply contract for the equipment transported on the two voyages. Similarly, BBC USA nowhere addresses the contents of its parent group's website advising that BBC USA would have been the point of contact for the two shipping vessels once they entered the Gulf of Mexico with the equipment.

Further, Defendants make caveated admissions of *some* involvement in the shipments, but then state in a conclusory fashion that such involvement is immaterial. DSV, for instance, admits taking steps to address licensing and compliance issues with the BBC Moonstone shipment, but supposedly only "outside of Florida." BBC Singapore, in turn, admits that it was the agent for the vessel operator of both shipments, but nevertheless claims that its contact with Florida was merely "incidental." Indeed, per Defendants, no one had responsibility for the stops in Florida they admit the vessels were legally required to make.

American Sugar has no obligation to accept Defendants' convenient yet untested denials and claims at face value. To the contrary, jurisdictional discovery is "highly favored" in this Circuit, *S.A.S.B. Corp. v. Concordia Pharm., Inc.*, 2016 WL 10953760, at *2 (S.D. Fla. Aug. 26, 2016) (collecting cases), and courts have recognized that such discovery is appropriate where a defendant's challenges to personal jurisdiction raise disputes about facts that would support a plaintiff's jurisdictional allegations, or present a risk that a defendant is withholding information

about its contacts with the forum.  *See Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd*, 722 F. App'x 870, 878 (11th Cir. 2018); *UnitedHealthcare of Fla., Inc. v. Am. Renal Assocs. Holdings, Inc.*, 2016 WL 8794534, at *1 (S.D. Fla. Dec. 5, 2016).  Defendants' arguments and supporting declarations readily meet these thresholds for jurisdictional discovery.  Those submissions deny certain of American Sugar's alleged jurisdictional facts outright, and raise serious doubts over Defendants' purported lack of involvement in the shipments at issue.  The Court should therefore permit American Sugar to conduct jurisdictional discovery in this case.

## **BACKGROUND**

### A.      **American Sugar's Allegations in Support of Personal Jurisdiction**

American Sugar filed this action on June 15, 2020 against Defendants for "trafficking" in its confiscated property in Cuba—including its confiscated shipping port (the "Confiscated Port" or "Puerto Carupano") in violation of the Helms-Burton Act.[3]  Dkt. No. 1. ("Compl.").  The Act defines "trafficking" broadly to capture not only those who "use[]" or "engage[] in a commercial activity using or otherwise benefiting from" the confiscated property, but also those who "cause[], direct[], participate[] in, or profit[] from" such use or engagement, knowingly and intentionally.  22 U.S.C. § 6023(13)(A).  Here, as American Sugar alleges in its complaint, Defendants illegally trafficked in confiscated property by participating in two shipments of wind farm equipment that intentionally stopped in Florida before proceeding directly to the Confiscated Port to complete delivery in Cuba.  Compl. ¶¶ 134–38, 169–73; *see also* Dkt. No. 48 at 5–6.

---

[3]  Title III of the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996 (codified at 22 U.S.C. §§ 6081–85).

Specifically, Goldwind International, a foreign wind farm equipment manufacturer, caused its parent company, Xinjiang Goldwind Science & Technology Co., Ltd. ("Goldwind Science"), to ship wind farm equipment from China to a state-owned Cuban entity, Empresa Importadora-Exportadora de Objetivos Electro-Energéticos ("Energoimport").  Compl. ¶¶ 88–89, 106, 149, 202.  The equipment was loaded onto two shipping vessels, the BBC Moonstone and the BBC Jade, both of which belong to the "Briese Group," a network of companies that includes BBC USA and BBC Singapore.  *Id.* ¶¶ 23, 104, 111–13, 115, 154.

Before arriving at the Confiscated Port, the BBC Moonstone and the BBC Jade each stopped in Florida not only to refuel and resupply, *id.* ¶¶ 134–39, 169–74, but also to comply with U.S. laws *other than* the Helms-Burton Act.  As Defendant BBC Singapore admits, the equipment onboard the BBC Moonstone and BBC Jade was "deemed to be an export of U.S. manufactured goods, which required an export license and clearance by U.S. customs officials in the U.S."  *See* Dkt. No. 50-1 ¶ 16.  Accordingly, before the equipment could be delivered to Cuba, both ships *had to stop in Miami* to obtain authorization under U.S. laws governing sanctions on Cuba, which provide for certain licenses to export "items from the United States to . . . Cuba." 31 C.F.R. § 515.533.  By contrast, had the two vessels traveled from China to Cuba without a stopover in Florida, the shipments would have been ineligible for such authorization under U.S. sanctions, since they would have lacked the requisite shipment designation "from the United States."

In addition, DSV, BBC USA, and BBC Singapore provided transportation and/or logistical services supporting the shipments, the two vessels, and their stops in Florida and Cuba. Compl. ¶¶ 108–15, 156–60.  And after delivering equipment to the Confiscated Port, the BBC Moonstone proceeded to deliver cargo to BBC USA in Port Arthur, Texas.  *Id.* ¶ 140.

**B.      Defendants Argue Lack of Personal Jurisdiction by Disputing Allegations in the Complaint and Denying Involvement in the Requisite Florida Stops**

Defendants filed their respective Rule 12(b)(2) Motions on August 31, 2020.  Dkt. Nos. 48, 52, 53.  Without exception, each of those motions argues that this Court lacks personal jurisdiction over Defendants by disputing factual allegations in the complaint, while relying on a self-serving declaration from a corporate officer that attests to either no or limited involvement in the shipments' stopovers in Florida before proceeding to the Confiscated Port.[4]  Dkt. No. 48 at 2–7; Dkt. No. 52 at 2, 5; Dkt. No. 53 at 5.

Notably, BBC Singapore, the only Defendant to submit documentary evidence regarding the two shipments, is also the only Defendant to admit that the intermediate stops were necessary.  In BBC Singapore's words, the Florida stopovers were "*required* because the cargo, which consisted in part of U.S.-manufactured goods, needed to clear U.S. customs in the U.S." Schoennmann Decl. ¶ 20 (emphasis added).  And the documents BBC Singapore attaches in support show that the BBC Jade and the BBC Moonstone stopped in Miami for the express purpose of obtaining necessary clearance from U.S. Customs to complete the shipments to the Confiscated Port.  *See* Schoennmann Decl., Exhs. E–F ("Clearance is Granted to Foreign Port Named in Item 12," *i.e.*, "Puerto Carupano, Cuba"), Dkt. Nos. 50-5, 50-6.

## LEGAL STANDARDS

Plaintiffs have "a qualified right to conduct jurisdictional discovery," *Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd*, 722 F. App'x 870, 878 (11th Cir. 2018), which

---

[4]  Defendants submitted declarations from the following individuals:  (1) Zhu Hui, Chief Financial Officer of Goldwind International, Dkt. No. 53-1 ("Hui Decl."); (2) Kenneth Witkowski, Director of Quality & Compliance for DSV, Dkt. No. 52-1 ("Witkowski Decl."); (3) Per Petersen, President of BBC USA, Dkt. No. 49 ("Petersen Decl."); and (4) Lars Schoennmann, Managing Director of BBC Singapore, Dkt. No. 50 ("Schoennmann Decl.").

is "highly favored" before resolving a motion to dismiss for lack of personal jurisdiction, *S.A.S.B. Corp. v. Concordia Pharm., Inc.*, 2016 WL 10953760, at *2 (S.D. Fla. Aug. 26, 2016) (collecting cases).  Accordingly, a federal court's "power to order jurisdictional discovery" "'is not entirely discretionary.'"  *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 790 (11th Cir. 2014) (quoting *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 (11th Cir. 1982)).  "[R]esolution of a pretrial motion that turns on findings of fact—for example, a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2)—may require some limited discovery before a meaningful ruling can be made."  *Id.* (quoting *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997)).

Jurisdictional discovery "is appropriate when there is a dispute about the 'facts that would support [the plaintiff's] allegations of jurisdiction.'"  *Aviation One of Fla.*, 722 F. App'x at 878 (quoting *Majd-Pour v. Georgiana Cmty. Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984)).  "A genuine dispute exists when the Court 'cannot resolve the [jurisdictional] issue without additional evidence.'"  *Deane v. Royal Caribbean Cruises, Ltd. et al.*, No. 19-cv-23127 (J. Gayles), Paperless Order, Dkt. No. 33 (quoting *Evans v. Wurkin Stiffs, Inc.*, No. 15-cv-61934, 2016 WL 8793339, at *5 (S.D. Fla. Mar. 21, 2016)) (citing *Eaton*, 692 F.2d at 729).  In identifying such disputes, a plaintiff should "specify what information could or should be discovered through jurisdictional discovery that would affect the Court's jurisdictional analysis."  *Id.* (quotation marks omitted) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.7 (11th Cir. 1999)).

## ARGUMENT

### I.    This Court Should Grant Jurisdictional Discovery to Vet Defendants' Denials of Involvement in the Requisite Florida Stops

In response to American Sugar's allegations regarding the two stops in Miami, Florida, Defendants marshal declarations from their respective personnel that soft-pedal or deny outright

their involvement in those stopovers.  As explained below, these assertions reveal genuine disputes over "facts that would support [American Sugar's] allegations of jurisdiction," *Aviation One of Fla.*, 722 F. App'x at 878, and warrant discovery—particularly where Defendants' statements conflict with *Defendants'* filings with the U.S. government and with *Defendants'* public statements.

A. **DSV's Denials Conflict with Its Prior Submissions to U.S. Customs and Consist of Conclusory Attempts to Downplay Its Involvement in the Florida Stopover**

The Court should permit American Sugar to take discovery from DSV so that it may obtain evidence regarding DSV's involvement in the Florida stops and resolve the discrepancy between DSV's statements to the Court and records DSV filed with U.S. Customs and Border Protection ("U.S. Customs").  DSV attests that it "was not a carrier and did not provide transportation services" for the shipment of wind farm equipment onboard the BBC Moonstone to the Confiscated Port.  Dkt. No. 52 at 2; Witkowski Decl. ¶¶ 8–23.  But this denial contradicts DSV's submissions to U.S. Customs in connection with that shipment.  *See* Declaration of John Auerbach ("Auerbach Decl."), Exhs. A-1, A-2.  Those submissions list "DSVF" as the code for the relevant "Carrier."  DSVF is also the prefix used for the two bill of lading numbers listed in the U.S. Customs submissions (DSVFHPR0023755 and DSVFHPR0023752).  DSV admits that "DSVF" is its unique, official Standard Carrier Alpha Code,[5] and that it did in fact use this code

---

[5]  Carrier companies that have registered with the National Motor Freight Traffic Association must use their unique Standard Carrier Alpha Code in their Cargo Declarations.  *See* 19 C.F.R. § 4.7a(c)(2)(iii).

in its submissions to U.S. Customs for the BBC Moonstone shipment.  *See* Dkt. No. 52 at 2;

Witkowski Decl. ¶ 8.[6]

DSV, however, claims that its use of "DSVF" was a "clerical error," and that its

submissions to U.S. Customs should have identified its affiliate, DSV Ocean Transport A/S, as

the carrier for the BBC Moonstone shipment.  Witkowski Decl. ¶ 8.  Although DSV specifies

two bills of lading numbers purportedly evincing this "clerical error," *see id.*, DSV did not attach

those bills of lading—or for that matter, any underlying documents supporting its attached

declaration—to its Rule 12(b)(2) Motion.  That failure to provide supporting documentation

warrants jurisdictional discovery, since "[a] plaintiff is not required to rely exclusively on a

defendant's affidavit for resolution of a jurisdictional issue."  *Ash v. Royal Caribbean Cruises

Ltd.*, 2013 WL 12122147, at *1 (S.D. Fla. June 11, 2013) (citing *Blanco v. Carigulf Lines*, 632

F.2d 656, 658 (5th Cir. 1980)) (granting jurisdictional discovery).

DSV's assertions also conflict with information provided by another Defendant, BBC

Singapore.  The transportation documents BBC Singapore attached to its filings make no

mention of DSV Ocean Transport A/S, which DSV claims was the actual carrier for the BBC

Moonstone shipment.  Instead, they record the participation of two other DSV affiliates, DSV

Air & Sea A/S and DSV Air & Sea Co. Ltd. (Tianjin branch).  *See* Schoennmann Decl., Exhs.

A–C (chartering agreement and master bills of lading), Dkt. Nos. 50-2, 50-3, 50-4.  Absent

jurisdictional discovery, American Sugar will be unable to present additional evidence on

whether and to what extent DSV and/or its affiliates were involved in the BBC Moonstone

shipment.  "Clearly, there is no way for [American Sugar] to have personal knowledge of the

---

[6]  *See also* DSV, Fact Sheet, DSV Global Transport and Logistics, https://www.us.dsv.com/
about-DSV/press/fact-sheet (last visited Sept. 29, 2020) (identifying "DSVF" as DSV's
"NVOCC SCAC Code"), *cited in* Compl. ¶ 117.

inner workings of [the DSV group's] various business organizations," *Exhibit Icons, LLC v. XP Companies, LLC*, 2008 WL 616104, at *2 (S.D. Fla. Mar. 3, 2008).  Of course, regardless of whether one or more corporate affiliates of DSV *also* participated in the shipment to the Confiscated Port, DSV's bare claim that its own filings with the U.S. government were somehow mistaken cannot defeat jurisdiction, and warrants further inquiry.  Whether DSV participated directly or directed and/or caused one or more of these affiliates to arrange for the Miami stop is a factual determination that is material to the personal jurisdiction analysis.

    Further, despite broadly disclaiming involvement in many aspects of the BBC Moonstone shipment—again, without providing any supporting documentation, Witkowski Decl. ¶¶ 8–24— DSV nevertheless concedes that it participated in and supported the BBC Moonstone shipment through Miami and Cuba:  its compliance personnel discussed a "limited compliance issue" regarding the BBC Moonstone shipment; called the Commerce Department to discuss the export license issued for the BBC Moonstone shipment; and electronically submitted the above-described forms for the shipments to U.S. Customs.  Witkowski Decl. ¶ 16.  DSV styles these activities as "limited" and outside of Florida, *id.* ¶ 17, despite the fact that its marketing materials describe a comprehensive suite of U.S. Customs-related services and "Customs Agents" in Miami and Orlando.[7]  In any event, DSV's self-serving labels (which American Sugar disputes) coyly leave unanswered whether DSV's activities were directed at Florida, where the BBC

---

[7]  *See* DSV Air & Sea Inc., *US Customs Brokerage and Compliance Presentation*, 2019, available at https://www.us.dsv.com/customs-brokerage/customs-brokerage (last visited Sept. 29, 2020).  While not a subject of this action, a Goldwind Science shipment of wind farm equipment to South Africa was supported by a DSV corporate affiliate that fully took care of "customs clearance, port charges and supervision."  DSV, Latest News, *Playing our role in generating wind power*, Sept. 10, 2019, https://www.za.dsv.com/About-DSV/press/News/2019/09/playing-our-role-in-generating-wind-power (last visited Sept. 29, 2020).

Moonstone docked, and crew presented an export license to U.S. Customs officials.  DSV's silence on the matter provides additional support for permitting jurisdictional discovery in this case.  *See Ash*, 2013 WL 12122147, at *1; *Exhibit Icons, LLC*, 2008 WL 616104, at *2.

For these reasons, the Court should grant American Sugar leave to seek jurisdictional discovery from DSV.  Such discovery will reveal the extent of DSV's participation in the requisite Florida stops, and DSV's other relevant contacts with Florida; in addition, it will permit American Sugar to obtain the evidentiary basis, if any, for (among other things) DSV's assertions that:  its submissions to U.S. Customs for the BBC Moonstone shipment was a "clerical error"; another affiliate was the actual carrier for that shipment; and its involvement in the BBC Moonstone's requisite stop in Miami, Florida was "limited" or occurred solely outside Florida.

**B.    Goldwind International's Denials of Involvement Are Irreconcilable with the Company's Prior Public Statements**

Jurisdictional discovery from Goldwind International is warranted because its prior public statements squarely belie its professed lack of involvement in the two shipments.  *See* Dkt. No. 53 at 2–4.  Goldwind International claims that it "is not a party to any contract with . . . Energoimport[], including but not limited to any contract regarding . . . the Herradura Wind Farm Project," Hui Decl. ¶ 5; or to any contracts with common carriers, including BBC USA, BBC Singapore, or DSV, regarding the Herradura Wind Farm Project, *id.* ¶¶ 6–7.  But Goldwind International's prior public statements flatly contradict these representations to the Court.  In 2013, Goldwind International reported "sign[ing] a 51MW wind turbine supply contract with Energoimport[,]" in which it would provide customized wind turbines for "[t]he La Herradura

11

project."[8]  Then in its 2017 quarterly report (referenced in the complaint), Goldwind International again reported signing a "commercial contract for the 51MW La Herradura Phase I wind farm project with Cuba Energy Import Company (Energoimport)."[9]  *See* Compl. ¶ 91.  The news of Goldwind International's supply contract was widely reported in the press.[10]  And Goldwind International's above-described publications identify Goldwind International as the party to the agreement, and nowhere suggests that some other corporate affiliate was the actual signatory.  Moreover, as a wholly owned subsidiary of Goldwind Science, Goldwind International had no reason to announce the activities of its parent.

Here, however, Goldwind International fails to acknowledge its prior public statements regarding its supply deal with Energoimport.  Instead, Goldwind International cagily asserts it is not *currently* a party to any contracts with Energoimport or any of the other Defendants (or their affiliates)—without addressing whether Goldwind International has *ever* contracted with such entities regarding the relevant shipments through Florida.  *See* Hui Decl. ¶¶ 5–7.

In short, the only evidence submitted by Goldwind International in support of its Rule 12(b)(2) Motion is a declaration conveniently asserting its lack of involvement in the Florida stops.  *See id.*  American Sugar should be afforded the opportunity to test these blanket

---

[8]  Goldwind International, *Goldwind Wins 51MW Wind Turbine Order in Cuba*, Dec. 18, 2013, available at http://www.goldwindinternational.com/content/details_16_298.html?_sm_au_ =iVVKNjJT4S4QP54MFcVTvKQkcK8MG (last visited Sept. 29, 2020).

[9]  Goldwind International, GWI Quarterly Q2 2017, Volumes 8, 10, available at http://www.goldwindinternational.com/upload/contents/2017/07/20170711143813_72618.pdf (last visited Sept. 29, 2020).

[10]  *See, e.g.*, Stephen Nielsen & Feifei Shen, *Goldwind Supplies 51 Megawatts of Wind Turbines for Cuba Project*, Bloomberg, Dec. 18, 2013, available at https://www.bloomberg.com/ news/articles/2013-12-18/goldwind-supplies-51-megawatts-of-wind-turbines-for-cuba-project (last visited Sept. 29, 2020); Mao Pengfei, *Goldwind wins 51MW deal in Cuba*, Wind Power Monthly, Dec. 19, 2013, available at https://www.windpowermonthly.com/article/1225321/ goldwind-wins-51mw-deal-cuba (last visited Sept. 29, 2020).

statements through discovery.  *See Ash*, 2013 WL 12122147, at *1; *Perricone v. Carnival Corporation*, No. 15-cv-20309 (J. Gayles), Endorsed Order Staying Case, Dkt. No. 32 (S.D. Fla. Sept. 9, 2016) (allowing jurisdictional discovery where a defendant filed an affidavit containing boilerplate statements that they lacked contacts with Florida); *id.*, Dkt. No. 24 at 3 (plaintiff's request for jurisdictional discovery, quoting defendant's affidavit); *see also Blanco*, 632 F.2d at 658.  Given Goldwind International's prior statements, which announce its commercial deal with Energoimport to (among other things) supply wind farm equipment, one would expect Goldwind International to have caused or otherwise been involved in arranging for the delivery of the relevant equipment to Energoimport—including any stops in the United States necessary to comply with U.S. sanctions laws.  Discovery here should therefore reveal the precise role Goldwind International played in the requisite Florida stops and any other relevant contacts with Florida.

> **C.    BBC USA's Blanket Denial of Involvement Is at Odds with Its Publicly-Disclosed Role for Shipments Such as Those in this Case**

BBC USA's blanket denial of involvement in the at-issue shipments likewise merits examination through jurisdictional discovery.  BBC USA claims that it "did not act as agent for the charters of the two ships' voyages involved in this case," Dkt. No. 48 at 3, and goes on to assert that it—

- "has not conducted, and currently does not conduct, any business or operations in or from the State of Florida, or from anywhere else, that involve the shipment of goods to or from Puerto Carupano . . . ," Petersen Decl. ¶ 7;

- "played no role, as agents for the vessel operators or otherwise, in connection with the charters of the BBC Moonstone or the BBC Jade, which involved shipments of equipment from China to Cuba and that are the subject of the complaint in this action," *id.* ¶ 8; and

- "did not provide support of any kind, including logistical support, for the vessels in connection with the charters for or the delivery of cargo to [Puerto Carupano]," *id.* ¶ 9.

But publicly available information regarding BBC USA's operations casts doubt on these statements. BBC USA is located in the Houston area, is a part of the Briese Group, and is the Briese Group's key regional office and agent in the United States.[11] According to BBC Chartering's website, when any Briese Group ship reaches the Gulf of Mexico or the Caribbean Sea, BBC USA becomes the point of contact for that particular ship.[12] Consequently, even if BBC USA did not initially charter the relevant shipments to the Confiscated Port, it nonetheless would have supported them (directly or indirectly) once they fell within BBC USA's regional ambit.[13]

In addition, BBC USA does not dispute that it arranged for certain equipment to be delivered to it in Port Arthur, Texas and that this equipment was on board the BBC Moonstone when it stopped at, and benefited from, ports in Florida and Cuba (the stops immediately preceding the Texas delivery). Dkt. No. 48 at 4. But BBC USA is completely silent as to any additional Florida contacts related to this Texas shipment or otherwise. Indeed, evidence

---

[11] *See* BBC Chartering: Houston, https://www.bbc-chartering.com/informations/contact/north-america/houston.html (last visited Sept. 29, 2020) (identifying BBC USA as "agents" located in Houston).

[12] *See* BBC Chartering – Worldwide Sailings, Sept. 29, 2020, https://www.bbc-chartering.com/fileadmin/user_upload/Downloads/Worldwide_Positions.pdf (last visited Sept. 29, 2020) (listing ships in the "US Gulf," for which the "Houston office" should be contacted).

[13] In addition, BBC Singapore and BBC USA assert that non-party BBC Chartering Carriers GmbH was the "operator" of both the BBC Moonstone and BBC Jade, and claim that American Sugar incorrectly identified non-party BBC Chartering & Logistic GmbH & Co. KG ("BBC Logistic") as the operator of the BBC Jade. Yet, submissions to the U.S. Customs regarding the relevant BBC Jade shipments identify the "Carrier" as " BBCH," the official Standard Carrier Alpha Code for BBC Logistic. *See* Auerbach Decl., Exhs. A-3, A-4.

14

provided by BBC Singapore suggests that this Texas-bound equipment was involved in the U.S. Customs clearance process in Miami, which itself was necessary to ensure that the shipment of wind farm equipment to the Confiscated Port did not violate additional federal laws.  *See* Schoennmann Decl., Exh. E (Clearance Statement issued by U.S. Customs stating that BBC Moonstone was carrying cargo destined for "Port Arthur, TX via Port Carupano"), Dkt. No. 50-6.[14]

       As with Goldwind International, the only evidence submitted by BBC USA in support of its Rule 12(b)(2) Motion is a single declaration containing blanket statements denying its involvement in the Florida stop.  American Sugar should be afforded the chance to test these statements and seek evidence of BBC USA's relevant contacts with Florida.  *See Ash*, 2013 WL 12122147, at *1; *Perricone*, No. 15-cv-20309 (J. Gayles), Endorsed Order Staying Case, Dkt. No. 32.  Jurisdictional discovery will help show (among other things): (1) the degree of BBC USA's involvement in the Florida stop of the shipments of wind farm equipment to Cuba and/or the shipment of equipment to Texas by way of Florida and Cuba; and (2) BBC USA's other relevant contacts with Florida.  In particular, such discovery should reveal whether and to what extent BBC USA was in contact with the masters of the BBC Jade and the BBC Moonstone, the Florida port agents, and any other Florida entities or persons that were involved in the shipments at issue in this case.  *See* Schoennmann Decl., Exhs. D–E (Clearance Statements stating the ship master and port agent of the BBC Moonstone and BBC Jade), Dkt. Nos. 50-5, 50-6.

---

[14]  BBC Singapore appears to have attached only the first two pages of the Clearance Statement.

**D.     American Sugar Should Be Permitted to Probe BBC Singapore's Admitted Involvement in the Shipments at Issue and Its Assertion That the Florida Stopovers Were "Incidental"**

Critically, BBC Singapore's declaration largely *supports* the Court's exercise of personal jurisdiction.  Consistent with American Sugar's allegations, Compl. ¶¶ 115, 160, BBC Singapore admits that it "acted as agent" for its affiliate BBC Chartering Carriers GmbH & Co. KG ("BBC Carriers") in connection with chartering the BBC Moonstone and BBC Jade:  it signed the relevant chartering agreement on BBC Carriers' behalf, issued master bills of lading for the shipped goods, and obtained clearances for those goods from U.S. Customs officials in Miami, Florida.  Dkt. No. 48 at 5–6.

Moreover, BBC Singapore admits that the Miami stops were deliberately aimed at ensuring completion of the shipment to the Confiscated Port in compliance with additional federal laws:  Those stops were "*required* because the cargo, which consisted in part of U.S.-manufactured goods, needed to clear U.S. customs in the U.S.," Schoennmann Decl. ¶ 20 (emphasis added).  In addition, the relevant chartering agreement, which BBC Singapore signed (thereby agreeing to execute a shipment stopping in Miami), clearly states that the shipments will proceed from "Tianjin, Lingang terminal via Miami, US to Carupano, Cuba."  Schoennmann Decl., Exh. A, Dkt. No. 50-2.  The Miami stops are further integrated into the terms of the chartering agreement.  *Id.* at 7 (while in Miami, a 24-hour grace period is provided to account for "[t]ime lost due to swell/tide/congestion").  There is also a provision addressing the export license that was ultimately presented in Miami.  *Id.* at 8 ("DSV (Merchants) warrant and guarantee that all licenses/permits are in order and approved by the US Department of Commerce and, if required, by the Office of Foreign Asset Control, and that the cargo is non-sanctioned.").

BBC Singapore, however, nevertheless insists that these facts do not suffice for the Court to exercise personal jurisdiction over it.  In light of this denial, discovery is warranted for at least two reasons.  *First*, BBC Singapore's declaration contradicts its Rule 12(b)(2) Motion by stating that it was BBC Carriers (not BBC Singapore) that issued the master bills of lading.  *Compare* Schoennmann Decl. ¶¶ 11, 13, *with* Dkt. No. 48 at 6.  American Sugar should be afforded the opportunity to conduct discovery on this point, and not be limited to what BBC Singapore elects to disclose.

*Second*, despite its admissions, BBC Singapore characterizes the Miami, Florida stops as "incidental," *id.* at 19, because "[n]either BBC Carriers nor BBC Singapore requested or required that the ships stop in Florida on their way to Cuba," Schoennmann Decl. ¶ 20.  If so, then American Sugar should be permitted to conduct discovery on the factual basis for BBC Singapore's claim that the Miami stops were merely "incidental."  Such discovery is important, since it is simply implausible that BBC Singapore (or any Defendant, for that matter) would have planned and/or executed a shipment to the Confiscated Port without taking what it considered to be a necessary step to ensure compliance with applicable U.S. trade laws (*i.e.*, stopping in Miami).  American Sugar thus has a reasonable basis for seeking jurisdictional discovery, which would aid the Court in resolving this dispute.

And while BBC Singapore admits to signing chartering agreements, issuing bills of lading, and receiving clearance statements, nowhere in its declaration does BBC Singapore aver that these activities comprise the full extent of its contacts with Florida.  Jurisdictional discovery should reveal the degree of BBC Singapore's involvement in the Florida stops.  In particular, such discovery could shed light on:  (1) the extent to which BBC Singapore actively tracked and managed the ships as they docked in Miami; (2) whether it communicated with BBC USA as

part of this process; and (3) the nature of any contact with the masters of the BBC Jade and the BBC Moonstone, the Florida port agents, and/or any other Florida entities or persons that were engaged, *see* Schoennmann Decl., Exhs. D–E (Clearance Statements), Dkt. Nos. 50-5, 50-6.

*     *     *

"A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." *UnitedHealthcare of Fla., Inc. v. Am. Renal Assocs. Holdings, Inc.*, 2016 WL 8794534, at *1 (S.D. Fla. Dec. 5, 2016).  As explained above, Defendants' efforts to deny or downplay their involvement in the at-issue shipments or the intermediate stops in Florida raise not only material disputes over jurisdictional facts, but also serious questions as to whether Defendants are withholding information regarding their respective in-forum contacts.  Jurisdictional discovery is therefore warranted.

## II.     American Sugar's Motion for Jurisdictional Discovery Is Timely

American Sugar has fulfilled its obligation to file a timely motion for jurisdictional discovery.  *See Mother Doe I v. Sheikh Mohammed Bin Rashid Al Maktoum*, 632 F. Supp. 2d 1130, 1146 (S.D. Fla. 2007) ("The decision to allow jurisdictional discovery is very much a product of the timing and nature of any jurisdictional discovery request.").  American Sugar has not "waited a substantial amount of time to seek discovery or failed to file a formal motion to take discovery." *Elardi v. I.S. Makinen Oy*, 2019 WL 6003210, at *3 (S.D. Fla. Nov. 14, 2019).  Consistent with cases in this Circuit that finding jurisdictional discovery motions were timely, American Sugar has filed this motion approximately three-and-a-half months after filing the complaint, just 29 days after Defendants filed their Rule 12(b)(2) Motions, and before the disposition of those motions.  *See id.* (finding plaintiff's motion for jurisdictional discovery timely where, among other things, it was filed before a ruling on a motion to dismiss, and four

18

months after the complaint was filed); *Birkenfeld v. Lauder*, No. 19-cv-21871, Order, Dkt. No. 68 at 4 ("Plaintiff's Motion [for jurisdictional discovery] is timely, having been filed just 35 days after [the] Motion to Dismiss for Lack of Jurisdiction was filed."); *McCullough v. Royal Caribbean Cruises, Ltd.*, No. 16-cv-20194 (J. Gayles), Order, Dkt. No. 189 (granting jurisdictional discovery motion filed 35 days after the motion to dismiss was filed, and over four months after filing the second amended complaint).

<u>**CONCLUSION**</u>

WHEREFORE, for the foregoing reasons, American Sugar respectfully requests that this Court allow American Sugar a period of sixty (60) days within which to conduct discovery on issues of personal jurisdiction raised by Defendants (including third-party discovery as appropriate), and an additional twenty-one (21) days from the close of the aforementioned discovery to file its consolidated response to each of Defendants' Rule 12(b)(2) Motions.

<u>**LOCAL RULE 7.1(a)(3) CERTIFICATION**</u>

Pursuant to Local Rule 7.1(a)(3), the undersigned counsel hereby certifies that he conferred with counsel for Defendants regarding this request in a good faith effort to resolve the issues raised in the motion, but the parties were unable to do so.

Dated:  September 29, 2020

Respectfully submitted,

Miguel A. Estrada (*pro hac vice*)
Audi K. Syarief (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036-5306
Telephone:  (202) 955-8257
Facsimile:  (202) 530-9616
mestrada@gibsondunn.com
asyarief@gibsondunn.com

Andrea E. Neuman (*pro hac vice*)
Rahim Moloo (*pro hac vice*)
Casey Kyung-Se Lee (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
Telephone:  (212) 351-3883
Facsimile:  (212) 351-5303
aneuman@gibsondunn.com
rmoloo@gibsondunn.com
clee@gibsondunn.com

_David S. Mandel_
David S. Mandel
FBN 38040
MANDEL & MANDEL LLP
169 East Flagler Street, Suite 1224
Miami, FL 33131
Telephone:  (305) 374-7771
dsm@mandel.law

*Counsel for Plaintiff North American Sugar
Industries Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 29, 2020, the foregoing document was electronically

filed with the Clerk of Court using the CM/ECF system, which will send notification of such

filing to all counsel of record.

_David S. Mandel_