UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 20-cv-22471-DPG

NORTH AMERICAN SUGAR INDUSTRIES,
INC.,

    Plaintiff,

v.

XINJIANG GOLDWIND SCIENCE &
TECHNOLOGY CO., LTD., GOLDWIND
INTERNATIONAL HOLDINGS (HK) LTD.,
DSV AIR & SEA INC., BBC CHARTERING
USA, LLC and BBC CHARTERING
SINGAPORE PTE LTD.,

    Defendants.

_____/

**DEFENDANT GOLDWIND INTERNATIONAL
HOLDINGS (HK) LTD.'S OPPOSITION TO PLAINTIFF'S MOTIONS
FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY AND TO STAY THE
BRIEFING SCHEDULE FOR DEFENDANTS' PERSONAL JURISDICTION MOTIONS**

The jurisdictional discovery that Plaintiff North American Sugar Industries Inc. ("Plaintiff") requests will not uncover facts that could impact this Court's personal jurisdiction analysis as to Defendant Goldwind International Holdings (HK) Ltd. ("Goldwind International"). As such, Goldwind International submits the following opposition to Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery (the "Motion," ECF No. 59) and Motion to Stay Briefing Schedule for Defendants' Rule 12(b)(2) Motions to Dismiss (ECF No. 60).

**INTRODUCTION**

Plaintiff anchors its request for discovery on Goldwind International's involvement with the "Florida stops" and "other relevant contacts with Florida" on the contents of a handful of press statements and a single quarterly report. Motion, at pp. 11-13. According to Plaintiff,

these scant materials reference Goldwind International as the alleged contracting party with Energoimport (the Cuban joint venture developing the subject wind farm) and, given those circumstances, "***one would expect*** Goldwind International to have caused or otherwise been involved in arranging for the delivery of the relevant equipment to Energoimport." *Id.* at p. 13 (emphasis added). Plaintiff's aspirations as to what jurisdictional discovery could show, however, are insufficient to overcome the allegations of its own Complaint, the law, and the evidence already in the record.

***First***, no additional facts regarding the "Florida stops" are needed to aid the Court in its two-pronged inquiry on personal jurisdiction. The Complaint on its face alleges that after refueling in Miami, the vessels "immediately" proceeded to Cuba without unloading any cargo in Florida. *See* Motion, at 2; Compl. (ECF No. 1), ¶¶ 137, 172. Regardless of whether Goldwind International had any role in the "Florida stops" (which it did not), they are in any event too attenuated to Plaintiff's causes of action, which allege an injury sustained ***outside of Florida***, to support personal jurisdiction here. Therefore, discovery on these brief stops pertaining to activity that occurred outside of Florida simply cannot uncover facts demonstrating that the long-arm statute is satisfied, *Farrell v. Royal Caribbean Cruises, Ltd.*, 917 F. Supp. 2d 1248, 1254 (S.D. Fla. 2013), or that exercising personal jurisdiction over Goldwind International would comport with due process and traditional notions of fair play and substantial justice, *Deane v. Royal Caribbean Cruises, Ltd. et al.*, No. 19-cv-23127 Paperless Order, Dkt. No. 33 (S.D. Fla. Sept. 9, 2016) (J. Gayles). ***Second***, Plaintiff's own pleading and the record evidence filed in connection with another Defendant's jurisdictional motion to dismiss reflects that Goldwind International was not the shipper for the voyage that contained the windfarm equipment. ***Third***, Plaintiff's request for discovery on Goldwind International's "other relevant contacts with

2

Florida" is improper because Plaintiff does not allege general jurisdiction in Florida, and the effort is tantamount to an impermissible fishing expedition. *See Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 792 (11th Cir. 2017). For these reasons, the Motion should be denied as to Goldwind International.[1]

## BACKGROUND

On June 15, 2020, Plaintiff filed this action under Title III of the Cuban Liberty and Democratic Solidarity (*LIBERTAD*) Act of 1996 (22 U.S.C. §§ 6081–85) (the "Act"), alleging that Goldwind International, along with the other Defendants, trafficked in a port confiscated from Plaintiff (Puerto Carupano) by the Cuban government. *See generally* Compl. (ECF No. 1). Specifically, Plaintiff claims that the Defendants violated the Act by "coordinat[ing] at least two separate voyages that delivered and unloaded equipment [from China] . . . , by way of Florida, for use in the Herradura Wind Farm Project." *Id.* ¶¶ 103, 198–203. The first voyage was completed by the vessel BBC Jade; the second voyage was completed by the vessel BBC Moonstone. Plaintiff further (and erroneously) alleges that Goldwind International manufactured the equipment that was shipped to Puerto Carupano during *one* of those two voyages, aboard the vessel BBC Moonstone. *See id.* ¶¶ 116-32; 143. Each voyage included a "mere[] . . . refueling stop," *id.* ¶ 6, in Miami, Florida – where no cargo was sold or unloaded – that enabled the vessels to "immediately proceed" on to Cuba after refueling. *Id.* ¶¶ 136, 137, 172. These stops were apparently made to comply with U.S. export law. *See* Lars Schoennmann's Decl. (ECF No. 50-1) ¶¶15-18; *see id.* (ECF No. 50-6 at 4). The Complaint's allegations and the evidence in the

---

[1]     Indeed, as argued in in Defendants' Motion to Stay Discovery and Proceedings Pending Resolution of Defendants' Joint Motion to Dismiss (ECF No. 62), this action should be stayed altogether until the Court resolves Defendants' case-dispositive, joint motion to dismiss the Complaint pursuant to Rules 12(b)(1) and (6).

record confirm that Goldwind International was *not* the shipper for the voyage that contained the windfarm equipment:

| Fact | Record Cite |
|---|---|
| House Bill of Lading DSVFHPR0023752 pertaining to BBC Moonstone lists LM (China) Investment Co. Ltd. as the shipper. | John Auerbach Decl. in Support of Pl. N. Am. Sugar Industries Inc.'s Mot. for Leave to Conduct Jurisdictional Discovery, (ECF 59-1) at 6-8 Ex. A-1 [hereinafter "Auerbach Declaration] |
| House Bill of Lading DSVFHPR0023755 pertaining to BBC Moonstone lists Xinjiang Goldwind Science ("Goldwind Science") as the shipper. | *Id.* at 10-12 Ex. A-2 |
| Goldwind International is not a party to any contract with the entity that the Plaintiff in this lawsuit identifies as Energoimports, including but not limited to any contract regarding a wind farm in Cuba that the Plaintiff in this lawsuit identifies as the Herradura Wind Farm Project. | ZHU Hui Decl. in Support of Goldwind Int'l Holdings (HK) Ltd.'s Mot. to Dismiss for Lack of Personal Jurisdiction (ECF 53-1) ¶ 5 [hereinafter "Hui Declaration"] |
| Goldwind International is not a party to any contracts with "Vessel Operating Common Carriers," . . . BBC Chartering USA, LLC or BBC Chartering Singapore PTE LTD., regarding the Herradura Wind Farm Project. | *Id.* ¶ 6 |
| Goldwind International is not a party to any contracts with "Non-Vessel Operating Common Carriers," . . . DSV Air & Sea Inc., regarding the Herradura Wind Farm Project. | *Id.* ¶ 7 |
| Goldwind Science . . . shipp[ed] certain wind farm equipment to the Confiscated Port, by way of Florida, for use in the project. | Compl. (ECF 1) ¶ 92 |
| Goldwind Science hired and paid DSV, an NVOCC, to deliver the Goldwind Equipment to the Confiscated Port. | *Id.* ¶ 109 |
| Export License D112455 for BBC Moonstone, United States Department of Commerce Bureau of Industry and Security Washington, D.C. 20230 (listing as the purchaser "Goldwind, No. 107 Shanghai | Lars Schoennmann's Decl. in support of Defendants BBC Charter USA, LLC and BBC Singapore Pte Ltd. Mot. to Dismiss for Lack of Personal Jurisdiction (ECF 50-6) at 1-5 [hereinafter Schoennmann Declaration] |

4

| | |
|---|---|
| Road Econ and Tech Dev Zone Urumqi 830026, China")[2] | |
| Combined Transport Bill of Lading DSVFHPR0023755 pertaining to BBC Moonstone lists Goldwind Science as the shipper. | DSV's Combined Transport Bill of Lading (ECF 64-1) Ex. A. |
| Combined Transport Bill of Lading DSVFHPR0023752 pertaining to BBC Moonstone lists LM (China) Investment Co. Ltd. as the shipper. | DSV's Combined Transport Bill of Lading (ECF 64-2) Ex. B. |

Plaintiff has acknowledged from the outset of this action that Goldwind International is a Hong Kong entity. *Id.* ¶ 21. Plaintiff further alleges that BBC Chartering, not Goldwind International, presented to the U.S. authorities the shipping documents that were central to routing BBC Moonstone through Miami. *Id*. ¶¶ 113-16. Plaintiff additionally claims that BBC Chartering, in coordination with Goldwind Science (a separate Defendant that has not been served), Energoimport, and other relevant shippers, carriers, and consignees allegedly determined BBC Moonstone's shipping route. *Id*.

On August 31, 2020, Goldwind International moved to dismiss the Complaint for lack personal jurisdiction. (ECF 53). In sum, Goldwind International argues that even if the long-arm statute is satisfied based on Plaintiff's theories of specific personal jurisdiction[3] (which it is not), haling Goldwind International into this Court for the purported refueling stops in Miami would offend due process and traditional notions of fair play and substantial justice. Goldwind International also attached a declaration to the Motion confirming that it was not a party to the underlying contracts pertaining to the windfarm project, was not a party to a contract with any of the entities that are alleged to have been involved in the shipping of the equipment, and does not

---

[2] The summons issued for Goldwind Science has the address No. 107 Shanghai Road Econ and Tech Dev Zone Urumqi 830026, China. (ECF 11) at 1.

[3] Plaintiff alleges Goldwind International allegedly engaged in business and committed a tort in Florida. (ECF 1) ¶¶ 15 and 16.

5

have contacts with Florida or the U.S. that are related to this action. *See* Hui Decl. in Support of Goldwind Int'l's Mot. to Dismiss for Lack of Personal Jurisdiction (the "Hui Declaration," ECF 53-1).

Against this backdrop, nothing in the Motion supports Plaintiff's entitlement to jurisdictional discovery.

## LEGAL STANDARD

A party is not entitled to jurisdictional discovery simply upon request. To receive jurisdictional discovery, a party must demonstrate that there is "a genuine dispute concerning jurisdictional facts ***necessary to decide*** the question of personal jurisdiction." *In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1156 (S.D. Fla. 2019) (holding that plaintiffs were not entitled to jurisdictional discovery because the allegations in plaintiffs' complaint neither satisfied the long-arm statute nor due process) (emphasis added) (citation omitted). A genuine dispute does not exist simply because the parties offer contradicting evidence on a fact that is not material to determine the Court's jurisdiction over a defendant. *See Bernardele v. Bonorino*, 608 F. Supp. 2d 1313, 1318, 1321 (S.D. Fla. 2009) (granting defendants' motion to dismiss and denying plaintiff's request for jurisdictional discovery despite competing declarations offered by the parties because the conflict did not present a material issue to the jurisdictional question). Instead, a genuine dispute exists when the Court "cannot resolve the [jurisdictional] issue without additional evidence." *Evans v. Wurkin Stiffs, Inc.*, No. 15-61934-CIV, 2016 WL 8793339, at *5 (S.D. Fla. Mar. 21, 2016) (denying motion for jurisdictional discovery where plaintiff sought information that would not "resolve a disputed jurisdictional fact needed to establish that exercising jurisdiction would comport with traditional notions of fair play and substantial justice.") (internal quotations omitted).

Courts routinely deny general requests for jurisdictional discovery that do not connect the discovery sought to the plaintiff's arguments as to how personal jurisdiction over a defendant exists. *See Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 792 (11th Cir. 2017) (affirming denial of plaintiff's generic request for jurisdictional discovery regarding foreign defendant); *Instabook Corp. v. Instantpublisher.com*, 469 F. Supp. 2d 1120, 1127 (M.D. Fla. 2006) (denying request for jurisdictional discovery when requesting party "had only generally requested jurisdiction discovery, without explaining how such discovery would bolster its contentions").

Overall, the "qualified right" to jurisdictional discovery "is not an unconditional right that permits a plaintiff to seek facts that would ultimately not support a showing of personal jurisdiction." *In re Takata*, 396 F. Supp. 3d 1101, 1156–58. Indeed, district courts should not "reserve ruling on [a pending] motion to dismiss in order to allow the plaintiff to look for what the plaintiff should have had—but did not—before coming through the courthouse doors." *Yepez v. Regent Seven Seas Cruises*, No. 10-23920-CIV, 2011 WL 3439943, at *2 (S.D. Fla. Aug. 5, 2011) (denying motion for jurisdictional discovery and noting that facts regarding whether a defendant "is not registered to do business in Florida, . . .does not do business in Florida, . . . does not have any registered agents for service of process in the United States, . . . [was] not owned or controlled by citizens of Florida, and . . . ha[d] not committed a tort or breached a contract in Florida . . . ***are the types of facts plaintiffs are expected to investigate prior to filing suit***.") (emphasis added).

## **ARGUMENT**

The Court already has the facts that it needs to determine whether it has jurisdiction over Goldwind International. Plaintiff nonetheless asserts that "[d]iscovery here should . . . [1] reveal the precise role Goldwind International played in the requisite Florida stops and [2] any other

7

relevant contacts with Florida." Motion, at p. 13. Plaintiff should not be granted leave to conduct this discovery because the Complaint facially demonstrates that it is unnecessary to the specific-jurisdiction analysis, as Plaintiff's alleged injury occurred outside of Florida, and the record already shows that there is no genuine dispute that Goldwind International did not ship the wind farm equipment on board the vessels that made the refueling stops.

I. **The "Florida Stops" Cannot Support Personal Jurisdiction Over Goldwind International, and the Record Confirms that Goldwind International Did Not Ship the Subject Equipment**

As Goldwind International set out in its Rule 12(b)(2) motion to dismiss, determining jurisdiction over a nonresident defendant is a two-pronged inquiry. First, the Court is to assess whether the long-arm statute is satisfied and, second, if it is satisfied, whether exercising jurisdiction over the defendant comports with due process and traditional notions of fair play and substantial justice. *Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990) (holding that Florida court did not have personal jurisdiction over an out of state entertainer in a libel action stemming from an interview that appeared in magazines sold in Florida). Courts deny jurisdictional discovery when the record does not confirm that the proposed jurisdictional discovery relates to this inquiry.

Regarding the first prong, in *Farrell v. Royal Caribbean Cruises, Ltd.*, the Court held that jurisdictional discovery would not impact its analysis regarding the application of "the long-arm statute [because] there is no dispute that the tort took place outside of Florida territorial waters . . . [and] any discovery on the [defendant's business activity in Florida] will be inconsequential." 917 F. Supp. 2d 1248, 1254 (S.D. Fla. 2013); *see also RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 790–91 (11th Cir. 2014) (affirming denial of jurisdictional discovery because the alleged conversion occurred outside of Florida); *United Techs. Corp. v. Mazer*, 556

F.3d 1260, 1282 (11th Cir. 2009) (affirming denial of jurisdictional discovery because the alleged conspiracy occurred outside of and was not otherwise directed at Florida); *Del Valle v. Trivago GmbH*, No. 19-22619-CIV, 2020 WL 2733729 at *3 (S.D. Fla. May 26, 2020) (denying jurisdictional discovery where alleged trafficking under the Act occurred in Cuba, not Florida).

As to the second prong, in *Deane v. Royal Caribbean Cruises, Ltd. et al.*, this Court denied a plaintiff's motion for jurisdictional discovery in a personal injury action against foreign entities where she sustained injuries during an excursion taken on a cruise stop outside of Florida. No. 19-cv-23127 (J. Gayles), Paperless Order, Dkt. No. 33. Specifically, the Court noted that the plaintiff "fail[ed] to establish a genuine factual dispute that must be resolved" upon the foreign entities' argument that even if all of the plaintiff's allegations were true, exercising personal jurisdiction over them would offend due process. *Id.* The Court further noted that the plaintiff "fail[ed] to specify what information could or should [have] be[en] discovered through jurisdictional discovery that would affect the Court's jurisdictional analysis." *Id.* (citing *Posner v. Essex Insur. Co.*, 178 F.3d 1209, 1214 n.7 (11th Cir. 1999) (internal quotations omitted); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980) (holding that due process required that an Oklahoma court did not have personal jurisdiction over defendant in a products liability suit stemming from an accident in Oklahoma involving New York residents passing through Oklahoma); *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1221 (11th Cir. 2009) (hold that exercising jurisdiction over nonresident defendant violated due process).

Here, Plaintiff's request for undefined types of jurisdictional discovery would not inform either prong of the Court's jurisdictional analysis and thus should be denied.

A.  Discovery on Goldwind International's alleged involvement with
the "Florida stops" is facially unnecessary to determine jurisdiction

Plaintiff's Motion ignores that the alleged "Florida stops" are altogether insufficient to invoke the Court's specific personal jurisdiction over Goldwind International, regardless of its alleged involvement with them.  The alleged tort occurred outside of Florida, and a tort must be directed at the forum (which Plaintiff, itself not a Florida entity, does not allege) to satisfy the long-arm statute.  *Mazer*, 556 F.3d at 1282 (declining personal jurisdiction over defendant where plaintiff "alleged nothing that clearly connected [the defendant] to a conspiracy made or carried out in Florida.").[4]  In *Del Valle*, which also asserted claims under the Act, the Court denied jurisdictional discovery because alleged trafficking in property in Cuba is not tortious activity in or directed to Florida, and thus specific personal jurisdiction was lacking.  2020 WL 2733729 at *3.  The same is true here.  Any alleged injury occurred outside of Florida.  *See* Compl. (ECF No. 1) ¶¶ 74, 82, 84, 85, and 112.  Indeed, Plaintiff alleges that "[t]he contract with Energoimport was to supply wind turbines and related equipment to the Herradura Wind Farm Project [in Cuba]," and that Goldwind International "knew or had reason to know that" of the project's "importance in the Cuban economy." *Id.* ¶ 199.  Plaintiff even asserts that the alleged confiscated port is "critical to [Plaintiff's] business operations in Cuba and abroad[,]" *id.* ¶ 67, – not Florida, or the U.S. for that matter.  Additionally, like the Court held in *Farrell*, because the

---

[4]  In any event, the Court must first determine if Plaintiff has stated a claim for conspiracy altogether before it can consider whether the alleged tort of conspiracy can support exercising personal jurisdiction over Defendants.  *Taylor v. Moskow*, 717 F. App'x 836, 839–40 (11th Cir. 2017) ("In Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine whether the allegations of the complaint state a cause of action."). Either way, the stop in Miami was not part of a "conspiracy" concocted to ship equipment to Cuba –the stop in Miami, Florida was cleared by the authorities and the shipping documents state that Cuba was the destination for the equipment.  (ECF) 50-6 1-4.

alleged tort occurred outside of Florida, any discovery on Goldwind International's business activity in the state would be irrelevant.[5]

As for the second prong, even if the long-arm statute could be satisfied, jurisdictional discovery would do nothing to change the Court's analysis regarding due process and traditional notions of fairness and substantial justice. Like the plaintiff in *Deane*, even accepting all of Plaintiff's allegations as true, Plaintiff still "fails to specify what information could or should be discovered through jurisdictional discovery" that would show Goldwind International should have expected to be haled into this Court. No. 19-cv-23127 (J. Gayles), Paperless Order, Dkt. No. 33. A party must have "fair warning that a particular activity may subject [it] to the jurisdiction of a foreign sovereign." *Madara*, 916 F.2d at 1516. The alleged injury occurred outside of Florida and, as the shipping documents show, Goldwind International did not ship the equipment. However, even if it had been involved with the stop, the requirement for minimum contacts "assures that a defendant will not be haled into a jurisdiction as a result of . . . random, fortuitous, or attenuated contacts . . . or because of the unilateral activity of a third person." *Id.* No jurisdictional discovery as to Goldwind International could reasonably change this analysis.

> B. The record reflects that there is no genuine dispute regarding Goldwind's International's involvement with the "Florida stops"

Not only is jurisdictional discovery on the "Florida stops" facially unnecessary, there is no genuine dispute in the record regarding Goldwind International's involvement. Jurisdictional

---

[5] Regardless any such business activity would have to be sufficiently related to the plaintiff's claims and must confer a pecuniary benefit to the defendant for the Court to have jurisdiction over the defendant. *RMS Titanic*, 579 F. App'x at 783. Plaintiff alleges that the "Florida stops" constitute the business activity underlying its claims. However, none of the equipment onboard BBC Moonstone was unloaded in Florida. Compl. (ECF 1) ¶¶ 136, 199. As such, "there is no indication that the receipt of additional information . . . would . . . undermine the conclusion that . . . one [refueling stop] . . . does not amount to a general course of business activity in the state for pecuniary benefit Florida." *RMS Titanic*, 579 F. App'x at 790–91.

discovery is improper when the parties submit competing declarations that are otherwise reconcilable. *Bernardele*, 608 F. Supp. 2d at 1321. Indeed, Goldwind International and Plaintiff's declarations both show that Goldwind International did not ship the equipment. The shipping documents attached to Plaintiff's declaration do not identify Goldwind International as the shipper for the BBC Moonstone, *see* Auerbach Declaration (ECF No. 59-1) at 6-8, and Goldwind International's declaration confirms that it was not a party to any agreement to ship the equipment. *See* Hui Declaration (ECF No. 53-1) ¶¶ 5-7. The record elsewhere reflects the same. *See, e.g.*, Schoennmann Decl. (ECF 50-6) (export license for BBC Moonstone listing "Goldwind" as the purchasing and including Goldwind *Science's* address); (ECF 11) at 1 (Goldwind *Science's* address matching the BBC Moonstone export license); (ECF 64-1) (Ex. A) (Combined Transport Bill of Lading for BBC Moonstone HPR0023755 listing **Goldwind Science** as shipper); (ECF 64-2) (Ex. B) (Combined Transport Bill of Lading for BBC Moonstone HPR0023752 listing **L.M.** as shipper). The Complaint also explicitly alleges that parties other than Goldwind International hired the vessels to ship the equipment, directed the route through Miami, and prepared and submitted the shipping documents to the U.S. authorities. Compl. (ECF 1) ¶¶ 92, 109, and 113-16. Accordingly, there is no material conflict in the evidence and no additional discovery is needed to show that Goldwind International did not ship the equipment. *Bernardele*, 608 F. Supp. 2d at 1321 (denying jurisdictional discovery for nonresident defendants and noting that "[h]ere, the declarations offered by the parties reflect certain contradictions. However, these contradictions must be sufficiently material to warrant jurisdictional discovery or an evidentiary hearing."); *Evans*, 2016 WL 8793339, at *5 ("Because Plaintiffs have not established a genuine factual dispute that must be resolved in order for the

12

Court to decide the question of personal jurisdiction, Plaintiffs' request for jurisdictional discovery shall be denied.").

Plaintiff's reliance on the press releases is a red herring. Plaintiff claims that "Goldwind International fails to acknowledge its own repeated public statements (also cited the Complaint) announcing its execution of a supply contract for the equipment transported on the two voyages." Motion, at p. 3. The Complaint, however, specifically alleges that the Goldwind equipment was on board the BBC Moonstone voyage, not the BBC Jade. Compl., ¶ 143. Moreover, the press releases make no mention of *either* voyage, let alone *both* of them, as Plaintiff now would have the Court believe. Motion, at p. 12 nn. 8-10 (identifying the press releases upon which Plaintiff relies, none of which mentions any voyage).

The Court should not be persuaded by Plaintiff's confused attempt to manufacture a dispute between Goldwind International's press publications and the record evidence. Plaintiff first claims that "Goldwind International . . . caused its parent company . . . to ship wind farm equipment from China to a state-owned Cuban entity[,]" *id.* at p. 5, and then contradictorily claims that "as a wholly owned subsidiary . . . Goldwind International had no reason to announce the activities of its parent." *Id.* at p. 12. Not only is Plaintiff's position inconsistent, it is logically backwards. A subsidiary does not control its parent company, and therefore does not cause the parent company to act. But either way, it does not matter because all of the record evidence confirms that Goldwind International did not sign the contract for the underlying windfarm project that has no connection to Florida or the "Florida stops."

Additionally, the cases upon which Plaintiff relies are distinguishable. Their facts and procedural posture differ from Plaintiff's here in several respects. *See Ash v. Royal Caribbean Cruises Ltd.*, No. 13-20619-CIV, 2013 WL 12122147, at *1 (S.D. Fla. June 11, 2013) (alleging

13

claims of several plaintiffs regarding defendant's multiple contacts with the Florida); *Perricone v. Carnival Corp.*, No. 15-cv-20309 (J. Gayles) (alleging general jurisdiction in Florida); *Blanco v. Carigulf Lines*, 632 F. 2d 656, 658 (5th Cir. 1980) (requiring defendant to answer interrogatories that were specific to jurisdictional factors under maritime law that were established by the U.S. Supreme Court). In reality, Plaintiff impermissibly moves for discovery simply to "test" Goldwind International's declaration. However, seeking to "test" a defendant's declaration is not the standard to obtain jurisdictional discovery. Instead, Plaintiff here must rebut Goldwind International's declaration with evidence and identify what discovery it expects to take that will show that the equipment on board the vessels during the "Florida stops" were manufactured, sold, or unloaded in Florida, or that the alleged trafficking happened in Florida. *Farrell*, 917 F. Supp. 2d at 1254. Plaintiff has not done so, and has failed in its burden to show entitlement to jurisdictional discovery.

## II. Plaintiff's Request for Discovery on Goldwind International's "Other Relevant Florida Contacts" Is Substantively and Procedurally Unjustified

Plaintiff's intent to seek discovery on Goldwind International's alleged "other relevant Florida contacts" is unsupported by Plaintiff's jurisdictional allegations and is otherwise impermissible. Jurisdictional discovery "should not serve as fishing expeditions, and, as such, [is] appropriate only when a party demonstrates that it can supplement its jurisdictional allegations." *Wolf*, 683 F. App'x at 792; *Instabook Corp.*, 469 F. Supp. 2d at 1127. Moreover, district courts should not "reserve ruling on [a pending] motion to dismiss in order to allow the plaintiff to look for what the plaintiff should have had—but did not—before coming through the courthouse doors." *Del Valle*, 2020 WL 2733729; *Yepez*, 2011 WL 3439943, at *2. Plaintiff knew since the day it initiated this action that Goldwind International is not a Florida resident, (ECF 1) ¶ 21, and is just now looking to seek what appears to be basic jurisdictional facts that

14

should have been ascertained before filing the Complaint. This is precisely the type of jurisdictional discovery that is not allowed.

Also, there is no clarity to what Plaintiff is seeking regarding "other relevant contacts." This is a basis for denial within itself. *Hinkle v. Cirrus Design Corp.*, 775 Fed. Appx. 545, 550 (11th Cir. 2019) (affirming denial of jurisdictional discovery where plaintiffs "did not explain . . . what facts or even what type of facts they wish[ed] to discover if given the opportunity."). Plaintiff's alleges specific jurisdiction in Florida based on the "Florida stops" and a tort that occurred outside the jurisdiction. Consequently, Plaintiff does not (and cannot) allege general jurisdiction in this forum over Goldwind International. Therefore, such a broad request does not relate to Plaintiff's actual jurisdictional allegations and is impermissible fishing.

### III.    No Stay of Briefing on the Rule 12(b)(2) Motions Is Warranted

Finally, no stay of briefing on the motions to dismiss for lack of personal jurisdiction (Goldwind International's as well as those of its co-Defendants) to allow for jurisdictional discovery is warranted. Not only has Plaintiff failed to establish its entitlement to any such discovery, but the proper procedure, as argued in Defendants' Motion to Stay Discovery and Proceedings Pending Resolution of Defendants' Joint Motion to Dismiss (ECF No. 62), is to stay ***all*** proceedings pending resolution of that potentially case-dispositive motion. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 (11th Cir. 1997) ("If the district court dismisses a nonmeritorious claim before discovery has begun, unnecessary costs to the litigants and to the court system can be avoided."); *United States v. Med-Care Diabetic & Med. Supplies, Inc.*, No. 10-81634-CIV, 2014 WL 12284078, at *1 (S.D. Fla. June 17, 2014) (granting motion to stay discovery until resolution of motion to dismiss).

## **CONCLUSION**

For the foregoing reasons, the Court should enter an Order denying Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery as to Goldwind International.[6]

Dated: October 13, 2020

> Respectfully submitted,
>
> HOGAN LOVELLS US LLP
> 600 Brickell Avenue
> Suite 2700
> Miami, Florida 33131
> Telephone:   (305) 459-6500
> Facsimile:   (305) 459-6550
>
> By: _/s/ Allen P. Pegg_
>   Allen P. Pegg
>   Fla. Bar No. 597821
>   Allen.pegg@hoganlovells.com
>   Richard C. Lorenzo
>   Fla. Bar No. 071412
>   richard.lorenzo@hoganlovells.com
>   Reginald Cuyler Jr.
>   Fla. Bar No. 114062
>   reginald.cuyler@hoganlovells.com
>
> *Counsel for Goldwind International Holdings (HK) Ltd.*

---

[6] Alternatively, if the Court is inclined to permit any jurisdictional discovery as to Goldwind International (and it should not for the reasons stated herein), it should be limited to targeted, written discovery. *See Steinberg v. A Analyst Ltd.*, No. 04-60898-CIV, 2007 WL 4287665, at *3 (S.D. Fla. Dec. 5, 2007) (allowing only "narrowly tailored and limited . . . written jurisdictional discovery" on personal jurisdictional issues raised in the motion to dismiss that did not "stray" into the merits or other aspects of the motion to dismiss).

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2020, the foregoing was filed with the Clerk of Court using CM/ECF, which will serve a Notice of Electronic Filing on all counsel of record.

By: _/s/ Allen P. Pegg_
　　　Allen P. Pegg