# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 20-cv-22471-DPG

NORTH AMERICAN SUGAR INDUSTRIES INC.,

$\qquad$ Plaintiff,

v.

XINJIANG GOLDWIND SCIENCE & TECHNOLOGY
CO., LTD., GOLDWIND INTERNATIONAL
HOLDINGS (HK) LTD., DSV AIR & SEA INC.,
BBC CHARTERING USA, LLC, and
BBC CHARTERING SINGAPORE PTE LTD.,

$\qquad$ Defendants.

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS THE COMPLAINT

Andrea E. Neuman (*pro hac vice*)
Rahim Moloo (*pro hac vice*)
Casey Kyung-Se Lee (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
Telephone:  (212) 351-3883
Facsimile:  (212) 351-5303
aneuman@gibsondunn.com
rmoloo@gibsondunn.com
clee@gibsondunn.com

David S. Mandel
FBN 38040
MANDEL & MANDEL LLP
169 East Flagler Street, Suite 1224
Miami, FL 33131
Telephone:  (305) 374-7771
dsm@mandel.law

Miguel A. Estrada (*pro hac vice*)
Audi K. Syarief (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036-5306
Telephone:  (202) 955-8257
Facsimile:  (202) 530-9616
mestrada@gibsondunn.com
asyarief@gibsondunn.com

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND ................................................................................................... 4

I.   Statutory Background ................................................................................ 4

    A.   The Cuba Claims Program ............................................................... 5
    B.   The Helms-Burton Act ..................................................................... 6

II.  Factual Background .................................................................................. 7

    A.   Defendants' Trafficking in American Sugar's Confiscated Property ........................... 7
    B.   Relevant Procedural History ............................................................ 9

LEGAL STANDARDS ........................................................................................ 10

ARGUMENT ..................................................................................................... 11

I.   American Sugar Has Article III Standing to Bring Its Claims Against Defendants ............. 11

    A.   American Sugar Has Adequately Pleaded an Injury in Fact ........................................ 12

        1.   American Sugar Has Pleaded a Concrete Injury ....................................... 13
        2.   American Sugar Has Properly Pleaded the Other Elements of
            an Injury in Fact ........................................................... 18

    B.   American Sugar's Injury in Fact Is Fairly Traceable to Defendants'
        Trafficking Activities .................................................................... 19
    C.   A Decision in American Sugar's Favor Will Likely Redress
        American Sugar's Injuries ............................................................... 20

II.  American Sugar Has Stated a Trafficking Claim Under the Helms-Burton Act ................. 21

III. The Helms-Burton Act Does Not Prohibit American Sugar's
    Civil  Conspiracy Claim ............................................................................ 25

IV.  Defendants' Bankruptcy-Related Affirmative Defenses Are Procedurally Improper
    on a Motion to Dismiss and Meritless in Any Event ........................................... 27

    A.   Defendants' Bankruptcy Standing Defense Is Meritless ......................................... 29
    B.   Defendants' Judicial Estoppel Defense Fails .................................................. 33

CONCLUSION ................................................................................................... 35

i

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Allen v. Senior Home Care, Inc.*,
  2015 WL 1097408 (S.D. Fla. Mar. 11, 2015)..........................................................................28

*Allston-Wilson v. Phila. Newspapers, Inc.*,
  2006 WL 1050281 (E.D. Pa. Apr. 20, 2006) ..........................................................................30

*In re Ampace Corp.*,
  279 B.R. 145 (Bankr. D. Del. 2002) ......................................................................................31

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).....................................................11

*Brown v. Brock*,
  169 F. App'x 579 (11th Cir. 2006) .........................................................................................28

*Church v. Accretive Health, Inc.*,
  654 F. App'x 990 (11th Cir. 2016) .........................................................................................13

*CNR Healthcare Network, Inc. v. 86 Lefferts Corp.*,
  874 N.Y.S.2d 174 (2d Dep't 2009)........................................................................................31

*Conn. Nat'l Bank v. Germain*,
  503 U.S. 249, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992).....................................................25

*Corbett v. Transp. Sec. Admin.*,
  930 F.3d 1225 (11th Cir. 2019) .............................................................................................10

*Cueto Iglesias v. Pernod Ricard*,
  No. 20-cv-20157 (S.D. Fla. Aug. 17, 2020), ECF No. 55 ................................................12, 24

*Div. 1181 Amalgamated Transit Union v. B&M Escorts, Inc.*,
  2018 WL 2417842 (E.D.N.Y. May 29, 2018) ........................................................................30

*Forsyth v. NHC Place/Anniston, LLC, Inc.*,
  No. 18-cv-00663, 2018 WL 4909953 (N.D. Ala. Oct. 10, 2018) ...........................................26

*Garcia-Bengochea v. Carnival Corp.*,
  407 F. Supp. 3d 1281 (S.D. Fla. 2019) ..................................................................................27

*Glen v. Am. Airlines*,
  No. 20-cv-482-A, 2020 WL 4464665 (N.D. Tex. Aug. 3, 2020) ......................................14, 15

ii

*Glen v. Club Mediterranee, S.A.*,
  450 F.3d 1251 (11th Cir. 2006) ..........................................................................16

*Gonzalez v. Amazon.com, Inc.*,
  No. 19-cv-23988, 2020 WL 1169125 (S.D. Fla. Mar. 11, 2020) ...........................24

*In re Goodman Bros. Steel Drum Co. Inc.*,
  247 B.R. 604 (Bankr. E.D.N.Y. 2000)..................................................................30

*Grede v. Bank of N.Y. Mellon*,
  598 F.3d 899 (7th Cir. 2010) ...............................................................................30

*Griffin v. Verizon Commc'ns Inc.*,
  746 F. App'x 873 (11th Cir. 2018) .......................................................................28

*Harris v. Orange S.A.*,
  636 F. App'x 476 (11th Cir. 2015) .......................................................................16

*In re Hart Oil & Gas, Inc.*,
  534 B.R. 35 (Bankr. D.N.M. 2015) ......................................................................30

*Havana Docks Corp. v. Carnival Corp.*,
  No. 19-cv-21724, 2020 WL 5517590 (S.D. Fla. Sept. 14, 2020)...................passim

*Havana Docks Corp. v. MSC Cruises SA Co.*,
  No. 19-cv-23588, 2020 WL 5367318 (S.D. Fla. Sept. 8, 2020)......................passim

*Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*,
  No. 19-cv-23591, 2020 WL 5217218 (S.D. Fla. Sept. 1, 2020)......................passim

*Havana Docks Corp. v. Royal Caribbean Cruises, Ltd.*,
  No. 19-cv-23590, 2020 WL 1905219 (S.D. Fla. Apr. 17, 2020)...........................23

*Henderson v. Franklin*,
  782 F. App'x 866 (11th Cir. 2019) .......................................................................33

*Imagine Commc'ns Corp. v. Villegas*,
  2017 WL 2304013 (S.D. Fla. May 19, 2017) ........................................................11

*It's a New 10, LLC v. Harris*,
  2019 WL 451205 (S.D. Fla. Feb. 5, 2019) ............................................................11

*Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*,
  741 F.3d 686 (6th Cir. 2014) ...............................................................................29

*King v. Nat'l Union Fire Ins. Co. of Pittsburg*,
  2018 WL 8929811 (N.D. Ga. July 6, 2018)...........................................................28

*In re Kmart Corp.*,
310 B.R. 107 (Bankr. N.D. Ill. 2004) ...............................................................31, 32

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
337 F.3d 314 (3d Cir. 2003)...................................................................................33

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)..........................................................................................10, 19

*Mahoney v. Bank of Am., N.A.*,
No. 13-cv-2530, 2014 WL 2197068 (S.D. Cal. May 27, 2014) .............................32

*Moody v. Holman*,
887 F.3d 1281 (11th Cir. 2018) .............................................................................10

*Nunnelee v. United States*,
573 F. App'x 886 (11th Cir. 2014) .........................................................................16

*Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S.*,
781 F.3d 1245 (11th Cir. 2015) .............................................................................17

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017) .............................................................................13

*Phx. Petroleum Co. v. United States*,
215 F.3d 1345, 1999 WL 521189 (Fed. Cir. 1999) ...............................................29

*Regions Bank v. The 62' Ocean Sport Fish, Hull I.D. No. XY0011462J203*,
2014 WL 37748 (S.D. Fla. Jan. 6, 2014) ...............................................................29

*In re REPH Acquisition Co.*,
134 B.R. 194 (Bankr. N.D. Tex. 1991)...................................................................30

*Riverside So. Planning Corp. v. CRP/Extell Riverside, L.P.*,
869 N.Y.S.2d 511 (1st Dep't 2008) ......................................................................31

*Robinson v. Tyson Foods, Inc.*,
595 F.3d 1269 (11th Cir. 2010) ........................................................................33, 34

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*,
81 F.3d 355 (3d Cir. 1996)....................................................................................34

*Salcedo v. Hanna*,
936 F.3d 1162 (11th Cir. 2019) .............................................................................17

*S.K.Y. Mgmt. LLC v. Greenshoe, Ltd.*,
No. 06-cv-21722, 2007 WL 9701121 (S.D. Fla. Mar. 11, 2007) ...........................22

*Schreiber v. Ocwen Loan Servicing, LLC*,
  No. 11-cv-211-32, 2011 WL 6055425 (M.D. Fla. Oct. 17, 2011)....................................33, 34

*Siegmund v. Xuelian Bian*,
  2018 WL 1611847 (S.D. Fla. Apr. 2, 2018) ........................................................................26, 27

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007)......................................................................................................................10

*Skinner v. Switzer*,
  562 U.S. 521 (2011)......................................................................................................................11

*Slater v. U.S. Steel Corp.*,
  871 F.3d 1174 (11th Cir. 2017) ..............................................................................................33, 34

*Smith v. Werner Enters., Inc.*,
  65 F. Supp. 3d 1305 (S.D. Ala. 2014).........................................................................................28

*In re Smith*,
  522 F. App'x 760 (11th Cir. 2013) ..............................................................................................14

*Snowden v. Fred's Stores of Tenn., Inc.*,
  419 F. Supp. 2d 1367 (M.D. Ala. 2006) ......................................................................................34

*In re Se. Banking Corp. Sec. and Loan Loss Reserves Litig.*,
  147 F. Supp. 2d 1348 (S.D. Fla. 2001) .......................................................................................29

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)..................................................................................................12, 13, 18, 20

*Stallings v. Hussmann Corp.*,
  447 F.3d 1041 (8th Cir. 2006) ......................................................................................................29

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)........................................................................................................................10

*In re Think3, Inc.*,
  529 B.R. 147 (Bankr. W.D. Tex. 2015)........................................................................................32

*Thole v. U.S. Bank N.A.*,
  140 S. Ct. 1615 (2020)..................................................................................................................17

*In re Transit Grp., Inc.*,
  332 B.R. 45 (Bankr. M.D. Fla. 2005) ..........................................................................................29

*Trichell v. Midland Credit Mgmt.*,
  964 F.3d 990 (11th Cir. 2020) ......................................................................................................13

*United States v. Amodeo*,
    916 F.3d 967 (11th Cir. 2019) .......................................................15

*United States v. Henry*,
    621 F. App'x 968 (11th Cir. 2015) ...............................................14

*In re USN Commc'ns, Inc.*,
    280 B.R. 573 (Bankr. D. Del. 2002) ............................................30

*Ventrassist Pty Ltd. v. Heartware, Inc.*,
    377 F. Supp. 2d 1278 (S.D. Fla. 2005) ........................................27

*VP Props. & Devs., LLLP v. Seneca Specialty Ins. Co.*,
    645 F. App'x 912 (11th Cir. 2016) ...............................................27

*Wallace v. Jim Walter Homes, Inc.*,
    68 F. Supp. 2d 1303 (M.D. Ala. 1999) ........................................26

*Warth v. Seldin*,
    422 U.S. 490 (1975)......................................................................17

*Washington v. Shanahan*,
    No. 17-cv-00528, 2019 WL 320582 (S.D. Ala. Jan. 24, 2019) .........28, 33

*Wilchombe v. TeeVee Toons, Inc.*,
    555 F.3d 949 (11th Cir. 2009) .....................................................11

*Wilding v. DNC Servs. Corp.*,
    941 F.3d 1116 (11th Cir. 2019) ...................................................19

*In re Wilton Armetale, Inc.*,
    968 F.3d 273 (3d Cir. 2020)..........................................................30

**Statutes**

11 U.S.C. § 350...................................................................................34

11 U.S.C. § 1141.................................................................................31

22 U.S.C. § 1643...................................................................................4

22 U.S.C. § 1643b.................................................................................5

22 U.S.C. § 1643f..................................................................................5

22 U.S.C. § 6021...................................................................................5

22 U.S.C. § 6023....................................................................... passim

22 U.S.C. § 6081 ..............................................................................................................17

22 U.S.C. § 6082 ....................................................................................................... passim

22 U.S.C. § 6085 ................................................................................................................7

Ala. Code § 25-1-29 ........................................................................................................26

Pub. L. 88-666, 78 Stat. 1110 (1964) ..............................................................................4

**Other Authorities**

141 Cong. Rec. S15081-02 (Oct. 12, 1995) ...................................................................31

*Black's Law Dictionary* (9th ed. 2009) ....................................................................25, 26

H.R. Rep. No. 104-468 (1996) .......................................................................................25

**Rules**

Fed. R. Civ. P. 8 .........................................................................................................25, 26

Fed. R. Civ. P. 12 .......................................................................................................10, 11

**Regulations**

31 C.F.R. § 515.533 ...........................................................................................................9

Plaintiff North American Sugar Industries Inc. ("American Sugar") respectfully submits this memorandum of law in opposition to the motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by Defendants Goldwind International Holdings (HK) Ltd. ("Goldwind International"); DSV Air & Sea Inc. ("DSV"); BBC Chartering USA, LLC ("BBC USA"); and BBC Chartering Singapore Pte Ltd. ("BBC Singapore") (together, "Defendants"), ECF No. 54 ("Mot.").[1]  For the following reasons, Defendants' motion should be denied.

## PRELIMINARY STATEMENT

American Sugar's well-pleaded Complaint alleges facts establishing Defendants violated the Helms-Burton Act by trafficking in American Sugar's expropriated property.  The Complaint details Defendants' respective involvement in two shipments of wind farm equipment delivered to American Sugar's confiscated port in Cuba as part of an extensive wind farm development project, and Defendants' knowledge of their use of (or benefits from) American Sugar's confiscated property.  To avoid their statutorily prescribed liability, Defendants seek dismissal based on a hodgepodge of consistently rejected Helms-Burton Act arguments as well as defective assertions of affirmative defenses that have no place in a motion to dismiss. Defendants' arguments are baseless, and their motion to dismiss should be denied.

***First***, as this District's courts have repeatedly and unanimously held, plaintiffs such as American Sugar who hold a certified claim to confiscated property have Article III standing to pursue a cause of action under the Helms-Burton Act against defendants who traffic in that property.  *Compare* Mot. 10–16 *with* note 3 *infra*.  In establishing a private right of action under

---

[1]  For purposes of this motion, "Defendants" does not include Xinjiang Goldwind Science & Technology Co., Ltd. ("Goldwind Science"), which has not yet appeared in this action.

the Helms-Burton Act, Congress recognized that victims of expropriation hold a continuing property interest in their confiscated property and suffer continuing injury.  Foreign investors' use of expropriated property injures Helms-Burton plaintiffs because it contributes to the commercial success of *their misappropriated assets* in the hands of the Cuban government while depriving the rightful owners of the benefits of or compensation for the use of their property.  Indeed, every court within this Circuit to consider the issue has concluded that conduct such as Defendants', including specifically the use of a port expropriated by the Cuban government, qualifies as an injury in fact sufficient to support Article III standing.  *See* note 3 *infra*.  Because American Sugar has suffered concrete injury at the hands of Defendants, it has Article III standing to seek redress.

   ***Second***, Defendants make a meritless attempt to front a scope-of-damages argument at the motion to dismiss stage, arguing that American Sugar failed to allege facts establishing that Defendants trafficked in every bit of property listed in its certified claim.  Mot. 29–32.  But the Helms-Burton Act contains no such requirement, which would of course be absurd.  Nothing in the Helms-Burton Act conditions American Sugar's recovery of the full amount of its certified claim on allegations that Defendants trafficked not just in the confiscated port but also, for example, the confiscated warehouses and sugarcane fields—or on allegations that Defendants milked every cow or rode every horse that once formed part of the assets stolen by the Cuban government.  To the contrary, the Act expressly provides that *any* trafficking in confiscated property identified in the certified claim is prohibited, and that the *minimum* amount of damages for which Defendants are liable should they choose to traffic in a plaintiff's confiscated property is the total valuation of the expropriated property as contemporaneously determined and certified by the United States Foreign Claims Settlement Commission and set forth in the final certified

2

claim.  Further, given the certified claim process, the Act mandates a presumption that Defendants' liability is triple the certified claim amount, and places the burden on Defendants to prove by "clear and convincing evidence" that another damages calculation specified in the Act is appropriate.  22 U.S.C. § 6082(a)(2).  Defendants' contrary argument is not only made up out of whole cloth, it would render these statutory provisions a nullity.  It should be rejected.

*Third*, contrary to Defendants' reading, the Helms-Burton Act preserves judicial resources and avoids duplicative lawsuits by prohibiting the bringing of multiple *separate actions*; it does not prohibit a multi-count complaint.  *See* Mot. 32–34.  And Defendants' objection that American Sugar's civil conspiracy claim overlaps with its Helms-Burton Act claims disregards (i) the fact that under Florida law, civil conspiracy is a derivative claim that requires an independent wrong—here, the Helms-Burton Act violations; and (ii) American Sugar's allegations, separate and apart from Defendants' alleged trafficking, that meet the elements of a civil conspiracy claim.

*Finally*, Defendants' bankruptcy-related affirmative defenses are both procedurally improper and substantively meritless.  The factual issues raised by Defendants' asserted affirmative defenses vastly exceed the scope of the Complaint and cannot be resolved on a motion to dismiss.  And even if the Court took judicial notice of Defendants' exhibits themselves, *totaling over 1,800 pages of extrinsic evidence*—it should not—there is no basis for this Court to take judicial notice of Defendants' cherry picking and incorrect interpretations of segments of those documents on a motion to dismiss or otherwise.  These two premature affirmative defenses, not properly raised now, are also meritless.  To be clear, "bankruptcy standing" is an affirmative defense and does not implicate this Court's subject matter jurisdiction.  And Defendants, none of whom are American Sugar's creditors, nevertheless

dubiously claim that American Sugar did not sufficiently reserve its rights under Section 1123(b)(3) of the Bankruptcy Code to pursue any potential Helms-Burton Act claims.  But Defendants disregard the fact that American Sugar's creditors negotiated and agreed to what Defendants acknowledge is a "pre-packaged" Chapter 11 plan providing that American Sugar has the exclusive right to pursue any causes of action after the bankruptcy, including any right it had to "tort" claims such as the Helms-Burton Act claims at issue here.  Further, the Chapter 11 plan prohibits those creditors from challenging American Sugar's pursuit of any cause of action, including any estoppel-based defenses.  Defendants have no basis for seeking a windfall by asserting objections that those creditors voluntarily relinquished.

Nor are Defendants entitled to judicial estoppel because they fail to correctly state, let alone satisfy, their heavy burden of establishing that American Sugar acted with a culpable mental state in a prior bankruptcy proceeding by supposedly failing to detail Helms-Burton Act claims—and if Defendants elect to plead such a defense in their answer, they will not sustain their burden of proof as to that essential element.  At the current stage of these proceedings, it should suffice that the Eleventh Circuit has expressly rejected a bare reliance on cold bankruptcy court filings to make this kind of state-of-mind showing, which Defendants improperly ignore in favor of contradictory, out-of-Circuit case law.

The Court should therefore deny Defendants' motion and permit this action to proceed.

## BACKGROUND

### I.   Statutory Background

American Sugar's claims in this case arise from the interplay of two federal statutes addressing the Cuban government's expropriation of property in Cuba owned by U.S. nationals: Title V of the International Claims Settlement Act of 1949, Pub. L. 88-666, 78 Stat. 1110 (1964) (codified at 22 U.S.C. §§ 1643–1643k (1964)) ("ICSA"), and the Cuban Liberty and Democratic

Solidarity Act of 1996, 22 U.S.C. § 6021, *et seq.* (1996) (the "Helms-Burton Act").  Those laws are described further below.

> A.        **The Cuba Claims Program**

In response to (among other things) Cuba's Communist Revolution and the Castro regime's confiscation of private property belonging to U.S. nationals, Congress in 1964 enacted the ICSA.  That statute established the Cuba Claims Program, which was administered by the United States Foreign Claims Settlement Commission ("FCSC") until the program's closure in 1972.  Compl. ¶¶ 26–27.  Under the program, the FCSC "receive[d] and determine[d] . . . the amount and validity of claims by nationals of the United States against the Government of Cuba . . . for losses resulting from the nationalization, expropriation, intervention, or other taking of . . . property including any rights and interests therein owned wholly or partially, directly or indirectly at the time by" U.S. nationals.  22 U.S.C. § 1643b(a).  In doing so, the FCSC was required to "take into account the basis of valuation most appropriate to the property and equitable to the claimant."  *Id.*  Upon completing its analysis of a claim filed under the Cuban Claims Program, the FCSC made value determinations and issued a certified claim specifying "the amount determined by the [FCSC] to be the loss or damage suffered by the claimant," as well as "the basic information underlying that amount" and "a statement of the evidence relied upon and the reasoning employed in reaching its decision."  *Id.* § 1643f(a).

Importantly, an FCSC-certified claim did not itself entitle the claimant to any relief; the ICSA "does not provide for the payment of claims against the Government of Cuba," and "specifically preclude[d] any authorization for appropriations for payment of [such] claims."  Compl., Exh. 1 ("Certified Claim") at 21 (emphasis in original).  Rather, the ICSA contemplated that the Secretary of State would rely on FCSC-certified claims to negotiate and enter into a

potential monetary settlement with the Cuban government.  Compl. ¶ 34.  That changed several decades later with the enactment of the Helms-Burton Act.

**B.**      **The Helms-Burton Act**

The Cuban government has long permitted for-profit businesses to use and benefit from property it expropriated from United States nationals, including American Sugar.  Compl. ¶¶ 71–74.  To redress this problem and advance the United States' opposition to lawless use of Cuba-expropriated property for which plaintiffs like American Sugar have received no compensation, Congress passed the Helms-Burton Act in 1996.  Relevant here, Title III of the Helms-Burton Act provides a private right of action against any person who "traffics" in property that the Cuban government confiscated from a U.S. national on or after January 1, 1959.  22 U.S.C. § 6082.  The statute defines "traffics" broadly to include (among other conduct) a person who "knowingly"—that is, "with knowledge or having reason to know," 22 U.S.C. § 6023(9)—and "intentionally" "engages in a commercial activity using or otherwise benefiting from confiscated property," or who "causes, directs, participates in, or profits from" such commercial activity by another person.  22 U.S.C. § 6023(13).  Congress was acting well within its legislative authority to fashion a remedy for parties' voluntary participation in these ongoing wrongs.

Contrary to Defendants' assertion that American Sugar seeks "extraordinary" damages, Mot. 1, American Sugar's requested relief is statutorily prescribed.  A person who "traffics" is liable to a plaintiff under Title III of the Helms-Burton Act for treble damages, 22 U.S.C. § 6082(a)(3)(C), interest accruing from "the date of the confiscation of the property involved to the date on which the action is brought," *id.* § 6082(a)(1)(B), and court costs and reasonable attorneys' fees, *id.* § 6082(a)(1)(A)(ii).  Further, the Helms-Burton Act applies a presumption—rebuttable only by "clear and convincing evidence"—that damages (before trebling) equal the amount specified in an FCSC-certified claim.  *Id.* § 6082(a)(2).

6

Title III's private right of action only recently became available to plaintiffs such as American Sugar.  Title III includes a provision authorizing the President to suspend the private right of action. 22 U.S.C. § 6085(c).  As Defendants themselves recognize, *see* Mot. 1, since the Helms-Burton Act's enactment, until now every President has continuously suspended the private right of action.  Compl. ¶¶ 42, 45.  On May 2, 2019, the Trump Administration fully lifted this suspension for the first time ever.  *Id.* ¶ 46.

II.     **Factual Background**

    A.     **Defendants' Trafficking in American Sugar's Confiscated Property**

Before Fidel Castro's rise to power, American Sugar owned and operated a lucrative business in Cuba producing, refining, and transporting raw sugar.  Compl. ¶ 2.  American Sugar owned and maintained a wide array of assets used in its business operations, including land and crops, farm buildings, power-generation systems, a railroad, and large commercial shipping ports, such as Puerto Carupano (the "Confiscated Port").  *Id.* ¶¶ 2, 63–67.  In 1959 and 1960, the regime formed in the aftermath of the Cuban Communist Revolution seized American Sugar's property in Cuba without compensation, effectively terminating American Sugar's business operations in Cuba.  *Id.* ¶¶ 3–4, 68–70.  In 1969, American Sugar submitted a claim to the FCSC, which "certifie[d] that [American Sugar] suffered a loss, as a result of actions of the Government of Cuba," in the amount of $97,373,414.72, plus 6% annual interest on nearly all of that amount from July 20, 1960 "to the date of settlement."  *Id.* ¶¶ 76–79 & Certified Claim at 21.  American Sugar's Certified Claim is publicly accessible and has been widely reported in news reports as recently as 2015.  Compl. ¶ 76 & nn.6–7.

Defendants, which are engaged in the wind power equipment and shipping industries, illegally trafficked in American Sugar's confiscated property by engaging in various commercial activities in support of the Herradura Wind Farm Project (the "Project")—a state-sponsored,

multi-hundred-million-dollar wind power project in Cuba—including their participation in two deliveries of wind farm equipment to the Confiscated Port for use in the Project. *Id.* ¶¶ 85, 134–139, 169–174. Goldwind International, a foreign wind farm equipment manufacturer, entered into a comprehensive commercial agreement with a state-owned Cuban entity, Empresa Importadora-Exportadora de Objetivos Electro-Energéticos ("Energoimport"), to provide wind farm equipment, as well as designs, technical support, and long-term operations and maintenance services, for the Project, which Goldwind International identified as having "great significance in Cuba's new energy strategy." *Id.* ¶ 88 & n.11. It also caused its parent company, Goldwind Science, to ship wind farm equipment from China to Energoimport. *Id.* ¶¶ 88–89, 106, 149, 201–202.

Through a series of mutually beneficial commercial arrangements among Defendants, the equipment was loaded onto and shipped on two vessels, the BBC Moonstone and the BBC Jade, both of which belong to the "Briese Group," a network of companies that includes BBC USA and BBC Singapore. *Id.* ¶¶ 23, 104, 111, 154. Both shipments were destined for and unloaded at the Confiscated Port. *Id.* ¶¶ 92–93, 104–115, 133–143, 154, 168–177.

As of part of their plans for successfully completing the delivery of windfarm equipment on the two ships, and as an integral component of complying with other relevant U.S. laws, Defendants arranged for the BBC Moonstone and the BBC Jade to each stop in Florida before arriving at the Confiscated Port. *Id.* ¶¶ 134–135, 137, 169–170, 172. DSV, BBC USA, and BBC Singapore provided transportation and/or logistical services supporting the shipments, the two vessels, and their stops in Florida and Cuba. *Id.* ¶¶ 108–115, 156–160. Importantly, the stops in Florida were not only to refuel and resupply, *id.*, but (as Defendant BBC Singapore is at pains to point out) also to comply with U.S. laws *other than* the Helms-Burton Act. Dkt. No. 48 at 5–6,

8

15.  BBC Singapore now admits that the equipment onboard the BBC Moonstone and BBC Jade was "deemed to be an export of U.S. manufactured goods, which required an export license and clearance by U.S. customs officials in the U.S.," *see* Dkt. No. 50-1 ¶ 15, and that both ships stopped in Miami for the express purpose of obtaining necessary clearance from U.S. Customs to complete the shipments to the Confiscated Port, Dkt. Nos. 50-5, 50-6.  Indeed, before the equipment could be delivered to Cuba, both ships had to stop in Miami to obtain authorization under U.S. laws governing sanctions on Cuba, which provide for certain licenses to export "items from the United States . . . [to] Cuba."  31 C.F.R. § 515.533.  By contrast, had the two vessels traveled from China to Cuba without a stopover in Florida, the shipments would have been ineligible for such authorization, since they would have lacked the requisite shipment designation "from the United States," and subjected Defendants to potential U.S. sanctions violations.

In addition, after delivering equipment to the Confiscated Port, the BBC Moonstone proceeded to deliver cargo to BBC USA in Port Arthur, Texas.  *Id.* ¶ 140.  Further, Goldwind Science and/or Goldwind International were involved in additional shipments of wind farm equipment to the Confiscated Port on unidentified vessels.  *Id.* ¶¶ 184–188.  These mutually beneficial commercial arrangements and activities by and among the Defendants clearly establish their commercial activities "using or otherwise benefitting from" American Sugar's Confiscated Property, as well as their causing, participating in, or benefitting from the trafficking activities of each other.

### B.    Relevant Procedural History

American Sugar filed the Complaint on June 15, 2020.  Dkt. No. 1.  On August 31, 2020, Defendants jointly filed the instant motion to dismiss, along with an attorney declaration attaching over 1,800 pages of filings in a prior Chapter 11 bankruptcy case, commenced in the

9

U.S. Bankruptcy Court for the District of Delaware on behalf of American Sugar, its parent companies, and 13 of its affiliates.  Dkt. Nos. 54, 54-1.[2]  Separately, Defendants filed three motions to dismiss for lack of personal jurisdiction (the "Rule 12(b)(2) Motions"), Dkt. Nos. 48, 52–53, which are currently the subject of American Sugar's pending motion for leave to conduct jurisdictional discovery, *see* Dkt. No. 59.  On October 14, 2020, the Court partially granted American Sugar's motion for a stay of the briefing schedule for the Rule 12(b)(2) Motions, *see* Dkt. Nos. 60, 66.

## LEGAL STANDARDS

Defendants challenge American Sugar's standing to bring this action under Article III of the United States Constitution based on their claim that American Sugar has not pleaded an injury in fact, and thereby the Court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  Article III "standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims."  *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1232 (11th Cir. 2019); *see also Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  But "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" because, on a motion to dismiss, a court "'presum[es] that general allegations embrace those specific facts that are necessary to support the claim.'"  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted); *see also Moody v. Holman*, 887 F.3d 1281, 1286 (11th Cir. 2018) (on a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may be sufficient to show standing").

---

[2]  For the reasons stated below, the Court should not take judicial notice of these records.  *See infra* Section IV & note 7.

The balance of Defendants' motion, including their purported bankruptcy "standing" argument, is subject to Federal Rule of Civil Procedure 12(b)(6). A court's review on a Rule 12(b)(6) motion to dismiss is "'limited to the four corners of the complaint.'" *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (citation omitted). "A court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims." *Id.* A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The question is "'not whether [the claimant] will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold.'" *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011) (citation omitted). "When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true." *It's a New 10, LLC v. Harris*, No. 18-cv-62741, 2019 WL 451205, at *1 (S.D. Fla. Feb. 5, 2019). The complaint need not plead "detailed factual allegations," but must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "'The [c]ourt does not view each fact in isolation . . . but considers the complaint in its entirety.'" *Imagine Commc'ns Corp. v. Villegas*, No. 17-cv-20401, 2017 WL 2304013, at *2 (S.D. Fla. May 19, 2017) (citation omitted).

## ARGUMENT

### I.   American Sugar Has Article III Standing to Bring Its Claims Against Defendants

Contrary to Defendants' assertions, American Sugar has established Article III standing to pursue its claims. Every court within the Eleventh Circuit to consider the issue—including in

three cases involving the use of a port confiscated by the Cuban government—has rejected Defendants' Article III standing arguments.[3]  Those courts have found that a plaintiff holding an FCSC-certified claim to confiscated property has standing to pursue a cause of action under the Helms-Burton Act against defendants who traffic in that property.  *See* note 3 *supra*.  These well-reasoned decisions are equally applicable to this case.

The "irreducible constitutional minimum" of standing has three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  Here, American Sugar has alleged in its well-pleaded complaint that the Cuban government expropriated the Confiscated Property, *see* Compl. ¶¶ 63–75, that American Sugar holds an FCSC-certified claim for the Confiscated Property, *see id.* ¶¶ 76–81 & Certified Claim, and that Defendants used and/or benefitted from the use of the Confiscated Property without providing any compensation to American Sugar, *see, e.g.*, Compl. ¶¶ 1, 11, 82–188.  As explained below, case law from this Circuit establishes without exception that these allegations fulfill Article III standing requirements.

A.      **American Sugar Has Adequately Pleaded an Injury in Fact**

To establish an injury in fact, a plaintiff must show that it suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not

---

[3]  *See Havana Docks Corp. v. Carnival Corp.*, 2020 WL 5517590, No. 19-cv-21724, at *11 (S.D. Fla. Sept. 14, 2020); *Havana Docks Corp. v. MSC Cruises SA Co.*, No. 19-cv-23588, 2020 WL 5367318, at *3 (S.D. Fla. Sept. 8, 2020); *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, No. 19-cv-23591, 2020 WL 5217218, at *3 (S.D. Fla. Sept. 1, 2020); Order on Mot. to Dismiss, *Cueto Iglesias v. Pernod Ricard,* No. 20-cv-20157 (S.D. Fla. Aug. 17, 2020), ECF No. 55.

conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (citation omitted). Each of these elements is met here.

### 1.    American Sugar Has Pleaded a Concrete Injury

Defendants' primary contention is that American Sugar has not pleaded a "concrete" injury sufficient to find standing. Mot. 10–16. That is incorrect. A "concrete" injury "must actually exist" but need not be "tangible," as "intangible injuries can nevertheless be concrete." *Spokeo*, 136 S. Ct. at 1548–49. "[A] statutorily-constructed right . . . is sufficient where the right is constructed to address a concrete harm." *Carnival Corp.*, 2020 WL 5517590, at *7 (citing *Spokeo*, 136 S. Ct. at 1549); *accord Church v. Accretive Health, Inc.*, 654 F. App'x 990, 995 (11th Cir. 2016); *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1340 (11th Cir. 2017). "Congress is 'well positioned' to make its own judgment about which harms are sufficiently concrete, particularized, and imminent to constitute injuries in fact." *Trichell v. Midland Credit Mgmt.*, 964 F.3d 990, 998 (11th Cir. 2020) (quoting *Spokeo*, 136 S. Ct. at 1549).

Applying these principles, American Sugar has sufficiently alleged a concrete harm. Courts have recognized that Congress enacted the private right of action under the Helms-Burton Act "because the remedies for (1) the wrongful confiscation of property by foreign governments; and (2) the subsequent unjust enrichment and economic exploitation of that property by foreign investors at the expense of the rightful owners, were ineffective." *Carnival Corp.*, 2020 WL 5517590, at *7 (citing 22 U.S.C. § 6081(10)). "Quite simply, the right identified by Congress was a property interest," and a Helms-Burton Act plaintiff such as American Sugar suffers a "real" injury "because it is not receiving the benefit of its interest in" its confiscated property, "and Defendant[s'] subsequent trafficking in the confiscated property . . . undermine[s] [p]laintiff's right to compensation for that expropriation." *Id.*; *accord MSC Cruises SA Co.*, 2020 WL 5367318, at *6; *Norwegian Cruise Line Holdings, Ltd.*, 2020 WL 5217218, at *6;

Order on Mot. to Dismiss at 16, *Cueto Iglesias*, No. 20-cv-20157 (finding that plaintiff suffered the injury of being deprived of "the proceeds obtained by a third party . . . who allegedly intentionally and knowingly trafficked in that confiscated property").

Defendants nevertheless marshal a host of reasons why American Sugar supposedly lacks standing to pursue its claims in this case. None has merit. *First*, Defendants' argument that American Sugar did not suffer any injury in fact because it has not owned the Confiscated Port since 1960, Mot. 13, has already been considered—and rejected—by courts in this Circuit. *See Carnival Corp.*, 2020 WL 5517590, at *7; *MSC Cruises SA Co.*, 2020 WL 5367318, at *6; *Norwegian Cruise Line Holdings, Ltd.*, 2020 WL 5217218, at *6. As explained above, the concrete injury American Sugar suffered is a harm to its "property interest" recognized by Congress to redress concrete injuries, *see Carnival Corp.*, 2020 WL 5517590, at *7; those courts have correctly reasoned that "[w]hile the injury may have its origin in the confiscation" by the Cuban government, the "continued use" of the confiscated property by Defendants does not "make[] Plaintiff's harm less tangible today." *Id.* Defendants' assertion that ownership of property is needed for standing to claim misuse of that property is also wrong on the law. "At its core, Article III standing requires the existence of injury, not ownership." *United States v. Henry*, 621 F. App'x 968, 972 (11th Cir. 2015). A plaintiff may have standing as long as it possesses an *interest* that suffices under the law, and there are numerous instances in which property interests short of ownership suffice to confer standing for a claim related to that property. *See id.*; *In re Smith*, 522 F. App'x 760, 765 (11th Cir. 2013).

Defendants' cited cases do not support a different result. Courts in this Circuit have uniformly declined to follow *Glen v. American Airlines*, No. 20-cv-482-A, 2020 WL 4464665 (N.D. Tex. Aug. 3, 2020), which Defendants invoke to argue that trafficking cannot injure

former owners of expropriated property (Mot. 15–16).  *See Norwegian Cruise Line Holdings, Ltd.*, 2020 WL 5217218, at *7; *Carnival Corp.*, 2020 WL 5517590, at *8; *MSC Cruises SA Co.*, 2020 WL 5367318, at *7.  Those courts have correctly observed that the facts in *Glen* are entirely distinguishable from cases such as this one, since in *Glen*, "the plaintiff *admitted* that neither the Cuban government's confiscation of the properties nor the hotels' operations constituted injuries in fact."  *Carnival Corp.*, 2020 WL 5517590, at *8 (emphasis added); *see also Glen*, 2020 WL 4464665, at *2.  Thus, "[c]ontrary to the conclusion in *Glen* . . . that the plaintiff had no standing because there was no allegation of concrete harm," courts in this Circuit have found "that the allegations of profiting from the use of property that was expropriated without obtaining consent or paying adequate compensation to the original owner is sufficient concrete harm for standing purposes."  *Carnival Corp.*, 2020 WL 5517590, at *8; *accord Norwegian Cruise Line Holdings, Ltd.*, 2020 WL 5217218, at *7; *MSC Cruises SA Co.*, 2020 WL 5367318, at *7.

Similarly, at least one court in this Circuit has already rejected any "misplaced" reliance on *United States v. Amodeo*, 916 F.3d 967 (11th Cir. 2019), to contest standing under the Helms-Burton Act.  *Carnival Corp.*, 2020 WL 5517590, at *7 n.5.  And for good reason: *Amodeo* merely held that a criminal defendant who voluntarily forfeited his assets lacked standing to participate in the forfeiture process after the "forfeiture order extinguished *all of [his] interest*" in the property at issue.  916 F.3d at 972 (emphasis added).  "This case, by contrast, is a civil matter," American Sugar's "property was not voluntarily forfeited but rather unlawfully confiscated," American Sugar's "instant claims are moored in a statutory cause of action," and American Sugar "alleges that Defendant[s] knowingly and intentionally participated in and profited from the unauthorized use of the [Confiscated] Property."  *Carnival Corp.*, 2020 WL

5517590, at *7 n.5.  As an unwilling victim of confiscation, American Sugar is entitled to assert its property interests in the amount certified by the FCSC, and to demand compensation not only from the Cuban government, but also those that Congress has made liable as accessories for participating with that government in the exploitation of the Confiscated Property.

Defendants' reliance on *Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251 (11th Cir. 2006) ("*Club Med*") is also misplaced.  Mot. 13.  *Club Med* stands for the proposition that a plaintiff whose property was confiscated no longer has the "ownership" interest necessary to make out a *trespass claim*; it does not refute that other property interests can be sufficient for Article III standing under a different law such as the federal law at issue here.  450 F.3d at 1255.  In fact, the *Club Med* court noted that once the suspension on private actions under the Helms-Burton Act was lifted, actions would be properly "brought 'on a claim to the confiscated property' against traffickers in the property."  *Id.* (citation omitted).[4]  Defendants' reliance on a case that *expressly distinguishes* between its ruling on a trespass claim and a potential Helms-Burton claim is little short of inexplicable.

*Second*, Defendants' argument that American Sugar lacks standing because Defendants' trafficking did not "change . . . [P]laintiff's position," Mot. 13–15, is equally flawed.  As discussed in detail above, a Helms-Burton Act plaintiff suffers a separate, concrete injury from a defendant's continued wrongful use of property previously expropriated by the Cuban government, including the loss of compensation for use of such property; courts have recognized that such a concrete injury is no "less tangible today."  *Carnival Corp.*, 2020 WL 5517590, at *7.

---

[4]  Similarly, Defendants cite irrelevant cases addressing whether state laws require property ownership as an element.  *See Nunnelee v. United States*, 573 F. App'x 886, 887 (11th Cir. 2014) ("Under Alabama law, there can be no action based on trespass absent a right of possession."); *Harris v. Orange S.A.*, 636 F. App'x 476, 483–84 (11th Cir. 2015) (considering whether "ownership is a necessary element for standing to bring a [Georgia Trade Secrets Act] claim").

16

Further, it has long been established that Congress can define new legal rights that confer legal standing to vindicate a pre-existing injury.  *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 500 (1975); *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S.*, 781 F.3d 1245, 1251 (11th Cir. 2015).  Here, it was well within Congress's powers to decide that those who use stolen property in concert with the thief are just as liable to the victim as the thief.  And in enacting the Helms-Burton Act, Congress expressly sought to remedy not just the expropriation of property, but also "the subsequent exploitation of this property at the expense of the rightful owner," and the lack of "fully effective remedies for . . . unjust enrichment from the use of wrongfully confiscated property by . . . private entities" such as Defendants.  22 U.S.C. § 6081(2), (8); *see also Salcedo v. Hanna*, 936 F.3d 1162, 1170 (11th Cir. 2019) ("We consider the judgment of Congress when assessing standing because Congress is well positioned to identify intangible harms that meet minimum Article III requirements.") (quotation marks omitted).

Indeed, Defendants' reliance on the Supreme Court's recent decision in *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020), only underscores the difference between American Sugar and a plaintiff whose position truly did not change.  Unlike the plaintiffs in *Thole*, who were fixed benefit plan participants that would continue to receive the same fixed benefits regardless of whether they won or lost their lawsuit, *id.* at 1619–20, American Sugar suffered a concrete injury (and thus experienced a change in "position") when Defendants used its Confiscated Property without permission or compensation; Congress reasonably determined that those who use confiscated property in concert with the Cuban government must respond for their conduct in treble damages.  Nothing about that judgment remotely implicates Article III.

*Third*, Defendants' insistence that merely "alleg[ing] the elements of a cause of action created by Congress" cannot itself confer standing, Mot. 11, is simply beside the point.  As

explained above, American Sugar has not alleged "a bare procedural violation, divorced from any concrete harm." *Spokeo*, 136 S. Ct. at 1549. Far from it: Title III of the Helms-Burton Act confers rights that were "constructed to address a concrete harm," *Carnival Corp.*, 2020 WL 5517590, at *7, and thus is a proper basis for the requisite injury in fact. Defendants' standing argument therefore fails.

> **2.** **American Sugar Has Properly Pleaded the Other Elements of an Injury in Fact**

Defendants do not seriously dispute that American Sugar has adequately pleaded the remaining elements of an injury in fact:

Legally Protected Interest. To be sure, "[n]o legally cognizable injury arises unless an interest is protected by statute or otherwise," and "[t]hat interest must consist of obtaining compensation for . . . the violation of a legally protected right." *Carnival Corp.*, 2020 WL 5517590, at *7 (citations omitted). But as courts have recognized, the Helms-Burton Act cause of action meets this prong, since "trafficking in confiscated property *is* an invasion of a legally protected interest" in confiscated property under the Act, "which conveys a *right* to prevent third-party use of the same." *Id.* (first emphasis added). Further, "[t]he remedy for the violation of that right is compensation from third parties for trafficking in" a plaintiff's confiscated property. *Id.*; *accord MSC Cruises SA Co.*, 2020 WL 5367318, at *6; *Norwegian Cruise Line Holdings, Ltd.*, 2020 WL 5217218, at *6.

Particularity. For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548 (citation omitted). This requirement is amply met where, as here, a plaintiff's "injury is entirely personalized to its interest in its Certified Claim to the [Confiscated] Property," and a plaintiff "seeks only to vindicate its own property rights in this action." *Carnival Corp.*, 2020 WL 5517590, at *8; *accord MSC Cruises*

*SA Co.*, 2020 WL 5367318, at *7; *Norwegian Cruise Line Holdings, Ltd.*, 2020 WL 5217218, at *7.

Imminence. This requirement is met where "both the challenged conduct and the attendant injury have already occurred." *Carnival Corp.*, 2020 WL 5517590, at *8 (citation omitted); *accord MSC Cruises SA Co.*, 2020 WL 5367318, at *7; *Norwegian Cruise Line Holdings, Ltd.*, 2020 WL 5217218, at *7. Here, American Sugar has alleged that Defendants' trafficking activities and their injuries have already happened. *See* Compl. ¶¶ 133–141, 168–175, 184–245. Thus, consistent with all four cases in this District that have considered this question and rejected Defendants' standing argument, *see* note 3 *supra*, American Sugar has adequately pleaded an injury in fact.

**B.      American Sugar's Injury in Fact Is Fairly Traceable to Defendants' Trafficking Activities**

American Sugar's alleged injuries are fairly traceable to Defendants' trafficking in the Confiscated Property. Although the traceability element requires "a causal connection between the injury and the conduct complained of," *Lujan*, 504 U.S. at 560, "[p]roximate causation is not a requirement," *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125 (11th Cir. 2019) (citation omitted). Rather, "even harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." *Id.* (citation omitted). That threshold is readily met here. Courts in this Circuit have recognized that a defendant's "conduct of using and profiting from the [Confiscated] Property is fairly traceable to" a plaintiff's claimed injuries under the Helms-Burton Act, since indirect harms from such conduct are still "fairly traceable" to that conduct. *Carnival Corp.*, 2020 WL 5517590, at *10; *accord MSC Cruises SA Co.*, 2020 WL 5367318, at *8; *Norwegian Cruise Line Holdings, Ltd.*, 2020 WL 5217218, at *8.

19

Defendants nevertheless argue that American Sugar's injuries are attributable to the Cuban government's expropriation of the Confiscated Property, and not to Defendants' actions. Mot. 12.  But that argument has also been rejected by every court in this Circuit that has considered it.  *Carnival Corp.*, 2020 WL 5517590, at *10; *accord MSC Cruises SA Co.*, 2020 WL 5367318, at *8; *Norwegian Cruise Line Holdings, Ltd.*, 2020 WL 5217218, at *8.  That is because "Congress has the power to . . . articulate chains of causation that will give rise to a case or controversy where none existed before."  *Spokeo*, 136 S. Ct. at 1549 (citation omitted). Accordingly, "[i]n enacting Title III [of the Helms Burton Act], Congress recognized that there exists a causal link between a claimant's injury from the Cuban Government's expropriation of their property and a subsequent trafficker's unjust enrichment from its use of that confiscated property."  *Carnival Corp.*, 2020 WL 5517590, at *9; *accord MSC Cruises SA Co.*, 2020 WL 5367318, at *8; *Norwegian Cruise Line Holdings, Ltd.*, 2020 WL 5217218, at *8.  Thus, Defendants' "argument that the causal chain ceases with the Cuban Government falls short." *Carnival Corp.*, 2020 WL 5517590, at *10.

### C.     A Decision in American Sugar's Favor Will Likely Redress American Sugar's Injuries

Defendants do not dispute that American Sugar's injuries from Defendants' trafficking activities are "likely to be redressed by a favorable judicial decision."  *Spokeo*, 136 S. Ct. at 1547.  "The Court of Appeals for the Eleventh Circuit has explained that, where the injury alleged is a monetary injury, such an injury can be redressed by an award of compensatory damages."  *Carnival Corp.*, 2020 WL 5517590, at *10.  Consistent with this principle, courts have recognized that monetary damages awarded under Title III "would sufficiently redress the harm" a "[p]laintiff allegedly suffered from the Cuban Government's confiscation of the [Confiscated] Property and [a] [d]efendant's subsequent unjust enrichment from the use of the

20

confiscated property at [a] [p]laintiff's expense."  *Id.*; *accord MSC Cruises SA Co.*, 2020 WL

5367318, at *9; *Norwegian Cruise Line Holdings, Ltd.*, 2020 WL 5217218, at *9.

## II.     American Sugar Has Stated a Trafficking Claim under the Helms-Burton Act

Despite conceding that the Complaint "alleges facts that the Defendants trafficked in the

Confiscated Port," and that the Port is part of the Confiscated Property for which American

Sugar holds a Certified Claim, Defendants nevertheless seek dismissal on the ground that

American Sugar has not alleged trafficking by Defendants in *all* of the Confiscated Property.

Mot. 30.  As with several of Defendants' other arguments, this gambit has already been

considered—and rejected—in an analogous Helms-Burton Act case in this District involving

trafficking in an expropriated port.  *See MSC Cruises SA Co.*, 2020 WL 5367318, at *17.

Further, it is a poorly conceived and premature effort to limit damages on the basis of a meritless

argument, which is not an appropriate basis for a motion to dismiss in any event.

Defendants' attempt to superimpose an additional pleading requirement fails because it

"ignores the explicit language of" Title III of the Helms-Burton Act, which imposes liability for

"trafficking in confiscated property, not in specific property interests."  *Id.* (citing 22 U.S.C.

§ 6023(13)(A)).  That same express language provides that the *minimum* amount of damages for

which a defendant is liable is "*the* amount . . . certified to the claimant by the" FCSC in a

certified claim, 22 U.S.C. § 6082(a)(1)(A)(i) (emphasis added)—not (as Defendants insist) a

portion of that amount attributable to a specific property interest.  In fact, a damages calculation

based on "the value of th[e] property" is only relevant to the extent that it "is . . . *greater*" than

the amount set forth in a FCSC-certified claim.  *Id.* (emphasis added).  Put differently, nothing in

the Helms-Burton Act places the burden on American Sugar to plead (let alone prove) that

Defendants trafficked in every individual piece of property listed in the Certified Claim.

Quite the opposite: the Act adopts a "presumption that the amount for which [Defendants are] liable . . . is the amount that is certified" in American Sugar's Certified Claim, without reference to any specific pieces of expropriated property.  22 U.S.C. § 6082(a)(2).  And *Defendants* bear the burden of rebutting this presumption with "clear and convincing evidence" proving that another measure of damages defined in the Act "is the appropriate amount of liability."  *Id.*  Defendants ask the Court to nullify this statutory presumption—and their evidentiary burden to rebut it—by subjecting American Sugar to a pleading burden completely absent from the Act.  The Court should decline to do so.

In reality, Defendants' argument is a "highly premature" attempt to limit damages at the motion to dismiss stage, which courts reject.  *See S.K.Y. Mgmt. LLC v. Greenshoe, Ltd.*, No. 06-cv-21722, 2007 WL 9701121, at *7 (S.D. Fla. Mar. 11, 2007) (finding that "fact issues [ ] must be resolved" before determining whether a certain category of damages is warranted).  Even if Defendants can muster any legal basis for narrowing potential damages—and they have not offered any—this is "a task better left for later proceedings," *id.*—particularly where, as here, the statute places the onus on Defendants to present "clear and convincing" evidence that American Sugar is not entitled to the amount listed in its Certified Claim.

Next, Defendants contest the sufficiency of American Sugar's allegations regarding whether Defendants *knowingly* used (or benefitted from) *all* of the Confiscated Property.  *See* Mot. 31.  For the reasons just explained, this "all or nothing" argument is a non-starter under the plain terms of the Helms-Burton Act, and its persuasiveness does not improve by trying to shoehorn it into the Act's "knowledge" requirement.  Title III of the Helms-Burton Act requires a defendant to act "knowingly," defined as "with knowledge *or having reason to know*."  22 U.S.C. § 6023(9) (emphasis added).  Consistent with this definition, Defendants had at least

22

"constructive knowledge of Plaintiff's publicly available Certified Claim to the Subject Property since the FCSC completed the Cuban Claims Program." *MSC Cruises SA Co.*, 2020 WL 5367318, at *3. Possession of a Certified Claim "memorialize[s] the *value* of the property interest lost and . . . *put[s] other actors on notice* of the victim's outstanding right to compensation based on the now-extinguished property interest taken." *Havana Docks Corp. v. Royal Caribbean Cruises, Ltd.*, No. 19-cv-23590, 2020 WL 1905219, at *7 (S.D. Fla. Apr. 17, 2020) (second emphasis added). Such notice suffices to meet the knowledge requirement under the Act.

In addition to the notice provided by the Certified Claim itself, the Complaint sufficiently pleads that Defendants knew or had reason to know that they were "using or otherwise benefitting from confiscated property[.]" 22 U.S.C. § 6023(13)(A)(ii). The Complaint alleges the Cuban government's open and notorious use of American Sugar's expropriated property to this day, including the Cuban government's touting the Confiscated Port as one of Cuba's principal shipping ports. Compl. ¶¶ 71–74. It also alleges that American Sugar's Certified Claim was the subject of news reports a few years prior to the at-issue voyages of the BBC Jade and BBC Moonstone. *Id.* ¶ 76 & n.7. Further, the Complaint alleges that Defendants not only arranged and/or were involved in the at-issue shipments of windfarm equipment to Cuba, but also made efforts to conceal the true destination of that equipment by falsely representing in legal documents that the equipment's final destination was not Cuba, but Miami. *Id.* ¶¶ 6, 116–132, 144–153, 161–167, 178–183. And as BBC Singapore has now conceded, *see* Dkt. No. 50-1 ¶ 15, Defendants knew enough about U.S. laws governing deliveries to Cuba to understand that they had to obtain the requisite license, and arrange for the two shipments to stop in Miami beforehand, to avoid violating U.S. sanctions; in light of Defendants' professed familiarity with

23

such laws, any assertion that Defendants were nevertheless unaware that the Helms-Burton Act applied to their shipments rings hollow.  Courts within this District have recognized that pleading facts indicating that a defendant had reason to know that it was using or benefitting from confiscated property, such as news reports or other sources of information, sufficiently pleads the requisite knowledge element of a Helms-Burton Act claim, even in the absence of the certified claim present here.  *See, e.g.*, Order on Mot. to Dismiss at 19–20, *Cueto Iglesias*, No. 20-cv-20157.

Defendants' reliance on *Gonzalez v. Amazon.com, Inc.*, No. 19-cv-23988, 2020 WL 1169125, at *2 (S.D. Fla. Mar. 11, 2020), is misplaced.  *See* Mot. 31–32.  In *Gonzalez*, the plaintiff was not in possession of a certified claim such that the defendants were on notice of the claim, and the only allegations as to defendants' knowledge were unspecified and "conclusory." 2020 WL 1169125, at *2.  Here, by contrast, on top of the Certified Claim, American Sugar has specifically alleged that Defendants were on notice that they were trafficking in the Confiscated Property because: (i) the Cuban government has repeatedly publicized its taking and holding of American Sugar's valuable property (*see* Compl. ¶¶ 72–74); (ii) American Sugar's claim to the property has been the subject of recent news reports (*id.* ¶ 76); and (iii) Defendants falsified documentation in an effort to conceal their scheme and avoid liability (*id.* ¶¶ 145, 153, 179). And, as noted above, Defendants admit to knowing enough about U.S. laws governing deliveries to Cuba to understand that they had to obtain the requisite license, and arrange for the two shipments to stop in Miami beforehand, to avoid violating U.S. sanctions.  In sum, American Sugar has properly alleged the knowledge requirement in its claims against Defendants for violations of the Helms-Burton Act.

III.    **The Helms-Burton Act Does Not Prohibit American Sugar's Civil Conspiracy Claim**

Defendants' contention that American Sugar's civil conspiracy claim must be dismissed finds no basis in the statute.  The plain language of the Helms-Burton Act prohibits duplicative lawsuits, and not, as Defendants misread it (Mot. 32–33), a single lawsuit with multiple claims.  It provides:

> any United States national that brings an action under this section ***may not bring any other civil action or proceeding*** under the common law, Federal law, or the law of any of the several States, the District of Columbia, or any commonwealth, territory, or possession of the United States, that seeks monetary or nonmonetary compensation by reason of the same subject matter . . . .

22 U.S.C. § 6082(f)(1)(A) (emphasis added).  The statute's plain text prohibits the bringing of a separate "civil action or proceeding"—that is, "[t]he regular and orderly progression of a [civil] lawsuit, including all acts and events between the time of commencement and the entry of judgment." *Black's Law Dictionary* 1324 (9th ed. 2009) (defining "proceeding"); *see also id.* at 32 (defining "action" as "[a] civil . . . judicial proceeding"); *id.* at 34 (defining "civil action" as an "action brought to enforce, redress, or protect a private or civil right").  In other words, a plaintiff cannot bring a separate lawsuit.  *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254, 112 S. Ct. 1146, 1149 (1992) ("When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" (citation omitted)).  That interpretation accords with the legislative history, which notes that this provision "is intended to prevent persons from *bringing separate actions* for trafficking against the same defendant or defendants under both [the Helms-Burton Act] and under a common law tort theory."  H.R. Rep. No. 104-468, at 61–62 (1996) (Conf. Rep.), reprinted in 1996 U.S.C.C.A.N. 558, 576–77 (emphasis added).  This election of remedies provision preserves judicial economy by forcing a prospective Helms-Burton Act plaintiff to bring all related claims in a single action before one court.

Defendants incorrectly read the term "civil action or proceeding" to mean "claim" or "cause of action." But those terms have meanings that differ from the language actually used in the statute. *See Black's Law Dictionary* 261 (defining "claim" as "[t]he aggregate of operative facts giving rise to a right enforceable by a court" or "[t]he assertion of an existing right"); *id.* at 251 (defining "cause of action" as "[a] group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person"). Had Congress intended to prohibit other "claims" or "causes of action" arising from "the same subject matter," it could have done so, but tellingly did not.[5]

Defendants' remarkable criticism of American Sugar's civil conspiracy claim as "double-pleading" or "inherently dependent" on the Helms-Burton Act claims, Mot. 34, is in fact an apt description of civil conspiracy claims. Contrary to Defendants' assertion that it is an "independent common-law claim," *id.* at 3, "Florida does *not* recognize an independent cause of action for civil conspiracy." *Siegmund v. Xuelian Bian*, No. 16-cv-62503, 2018 WL 1611847, at *7 (S.D. Fla. Apr. 2, 2018) (emphasis added). "Rather, civil conspiracy is a derivative action that arises out of an independent actionable claim," *id.*, which is why it should come as no

---

[5]  Defendants' analogy to the Alabama Age Discrimination in Employment Act ("AADEA"), Mot. 33, is inapposite. Whatever the Alabama legislature believed, the AADEA contains an entirely different election of remedies provision, and neither this language nor the practices of a different legislative body can cloud what Congress actually said in the Helms-Burton Act. *Compare* Ala. Code § 25-1-29 (a plaintiff "may elect to pursue their remedies" under relevant federal law "or in the alternative bring a civil action" in state court), *with* 22 U.S.C. § 6082(f) (a plaintiff "that brings an action under this section may not bring any other civil action or proceeding"). Defendants also misstate the law regarding the AADEA. Several Alabama federal courts have held that "'the statute expresses an intent to avoid *redundant adjudications of the same dispute in two separate fora* . . . to conserve the judicial resources of Alabama state courts, not to make claims unavailable for simultaneous pursuit in a single forum.'" *Forsyth v. NHC Place/Anniston, LLC, Inc.,* No. 18-cv-00663, 2018 WL 4909953, at *2 (N.D. Ala. Oct. 10, 2018) (emphasis added) (quoting *Wallace v. Jim Walter Homes, Inc.*, 68 F. Supp. 2d 1303, 1304 (M.D. Ala. 1999) and citing cases reaching same conclusion).

surprise to Defendants that American Sugar relies in part on its allegations supporting its Helms-Burton Act claims.  But American Sugar did not (as Defendants assert) stop there: it has separately pleaded facts that Defendants agreed to traffic in the Confiscated Property through numerous steps separate and apart from the trafficking itself.  For example, the Complaint alleges that Defendants schemed to use the port of Miami to refuel and resupply before proceeding to the Confiscated Port and created and signed false documents representing that the equipment would be unloaded in Miami, in order to fraudulently conceal their scheme.  *See* Compl. ¶¶ 116–132, 144–153, 161–167, 178–183, 241, 243; *see also Siegmund*, 2018 WL 1611847, at *7 (stating elements of civil conspiracy claim).  Defendants' attempt to dismiss the conspiracy claim is therefore meritless.

## IV.   Defendants' Bankruptcy-Related Affirmative Defenses Are Procedurally Improper on a Motion to Dismiss and Meritless in Any Event

"[A]n affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification, or other negating matters."  *VP Props. & Devs., LLLP v. Seneca Specialty Ins. Co.*, 645 F. App'x 912, 916 (11th Cir. 2016).  Defendants bear the burden of proof on such defenses, and it is "well settled that 'plaintiffs are not required to negate an affirmative defense in their complaints,'" which is precisely why "courts have repeatedly held that 'the existence of an affirmative defense generally will not support a rule 12(b)(6) motion to dismiss for failure to state a claim.'"  *Ventrassist Pty Ltd. v. Heartware, Inc.*, 377 F. Supp. 2d 1278, 1286 (S.D. Fla. 2005) (citations and brackets omitted).  Only a defense that "clearly appears on the face of the complaint" may be the basis for dismissing that complaint.  *Garcia-Bengochea v. Carnival Corp.*, 407 F. Supp. 3d 1281, 1287 (S.D. Fla. 2019).

Despite this, Defendants attempt to present affirmative defenses of "bankruptcy standing" and judicial estoppel[6] based on their misinterpretation of nearly *2,000 pages* of material from American Sugar's prior bankruptcy proceedings—none of which is referenced in the complaint. Mot. 16–29; *see* Holbert Decl. Exs. BA-1–BA-17.  Their attempt to limit their extensive offering of extrinsic materials to pleadings from another judicial proceeding does not excuse this gambit, as "courts may not take judicial notice of documents in separate judicial proceedings," including, specifically, bankruptcy petitions used to bolster affirmative defenses such as judicial estoppel. *Brown v. Brock*, 169 F. App'x 579, 582 (11th Cir. 2006) (vacating judgment of judicial estoppel because district court wrongly took judicial notice of bankruptcy petition).[7]  Moreover, Defendants go far beyond asking the Court to adopt judicially noticeable facts—asking instead that the Court adopt their own (incorrect) interpretations of the portions of the documents to which they direct the Court's attention.  As the myriad of factual issues that they raise more than confirms, Defendants' affirmative defenses "should be raised in an answer pursuant to Fed. R. Civ. P. 8(c), not in a motion to dismiss."  *Washington v. Shanahan*, No. 17-cv-00528, 2019 WL 320582, at *6 (S.D. Ala. Jan. 24, 2019); *see Allen v. Senior Home Care, Inc.*, No. 14-cv-81408, 2015 WL 1097408, at *2 (S.D. Fla. Mar. 11, 2015) (rejecting judicial estoppel argument because

---

[6]  *See* Fed. R. Civ. P. 8(c)(1) (listing "estoppel" as an "affirmative defense"); *Smith v. Werner Enterprises, Inc.*, 65 F. Supp. 3d 1305, 1308 n.1 (S.D. Ala. 2014) ("Judicial estoppel is an affirmative defense.").

[7]  *See also King v. Nat'l Union Fire Ins. Co. of Pittsburg*, No. 17-cv-4485, 2018 WL 8929811, at *3 (N.D. Ga. July 6, 2018) (declining to take judicial notice of documents attached to the motion to dismiss, including bankruptcy petition, whose "only purpose is to bolster [defendant's] affirmative defense"); *Allen v. Senior Home Care, Inc.*, No. 14-cv-81408, 2015 WL 1097408, at *2 & n.1 (S.D. Fla. Mar. 11, 2015) (declining to take judicial notice of bankruptcy records proffered by defendants at the motion to dismiss stage).  Defendants' reliance on *Griffin v. Verizon Communications Inc.*, 746 F. App'x 873, 876 (11th Cir. 2018), for the opposite proposition, Mot. 7 n.7, is misplaced.  In *Griffin*, the court took judicial notice of materials that the *plaintiff* referenced the first instance, where the *plaintiff's* claims were based on defendants' conduct in the prior actions.

"[s]imply put, the Court cannot make these findings or consider such evidence at the motion to dismiss stage"). That way, if Defendants elect to do so, *and* if the Court were to determine that some provision of law required specific disclosures of the as-then suspended Helms-Burton Act claims in the American Sugar bankruptcy (despite the creditors' express agreement in the bankruptcy plan to preclude precisely the argument that Defendants now make), American Sugar would then be permitted to assert its own fact-based defenses to explain the absence of such specific language. *See, e.g.*, *Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 698 (6th Cir. 2014) ("Failure to disclose a claim in a bankruptcy proceeding . . . may be excused where the debtor lacks a motive to conceal the claim, or where the debtor does not act in bad faith.") (citations omitted); *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1049 (8th Cir. 2006) (judicial estoppel does not apply to good-faith mistakes or "[c]areless or inadvertent disclosure[s]"). Due to their inherent factual nature, courts consistently reject judicial estoppel and bankruptcy standing defenses at the motion to dismiss stage.[8] This Court should do the same here.

But even if the procedural posture of this proceeding did not defeat Defendants' asserted affirmative defenses—which it does—both defenses fail.

### A. Defendants' Bankruptcy Standing Defense Is Meritless

"The purpose of Section 1123 [of the Bankruptcy Code] is not . . . to protect defendants from unexpected lawsuits." *In re Transit Grp., Inc.*, 332 B.R. 45, 57 (Bankr. M.D. Fla. 2005). That is because "[d]enying [bankruptcy] standing to the debtor to pursue such a claim . . . results

---

[8]  *See, e.g.*, *Regions Bank v. The 62' Ocean Sport Fish, Hull I.D. No. XY0011462J203*, No. 13-cv-20966, 2014 WL 37748, at *2 (S.D. Fla. Jan. 6, 2014) (denying motion to dismiss based on equitable estoppel); *In re Se. Banking Corp. Secs. & Loan Loss Reserves Litig.*, 147 F. Supp. 2d 1348, 1353 (S.D. Fla. 2001) (declining to rule on judicial estoppel at motion to dismiss stage).

in a windfall to the claim defendant, who escapes liability for want of a plaintiff." *Phx. Petroleum Co. v. United States*, 215 F.3d 1345, 1999 WL 521189, at *4 (Fed. Cir. July 23, 1999) (unpublished). But Defendants, none of whom are American Sugar's creditors, and who played no role in its Chapter 11 bankruptcy, nevertheless attempt to rely on Section 1123 to argue that American Sugar lacks "bankruptcy standing"—that is, it did not "retain the right . . . to pursue" its Helms-Burton Act claims "subsequent to the confirmation of [its bankruptcy] Plan," *In re Goodman Bros. Steel Drum Co. Inc.*, 247 B.R. 604, 607 (Bankr. E.D.N.Y. 2000). This is an ill-conceived ploy to escape liability by raising objections that American Sugar's own creditors agreed to waive as part of what Defendants admit (Mot. 2) was a "pre-packaged" Chapter 11 plan—*i.e.*, a plan that was already negotiated and agreed to by American Sugar's creditors prior to its Chapter 11 filing. *In re REPH Acquisition Co.*, 134 B.R. 194, 196 n.1 (Bankr. N.D. Tex. 1991). Defendants have no basis to raise objections that American Sugar's own creditors voluntarily relinquished.

As a preliminary matter, contrary to Defendants' assertions, *see* Mot. 3, 25, bankruptcy standing does not implicate this Court's subject matter jurisdiction, *see In re Wilton Armetale, Inc.*, 968 F.3d 273, 280–81 (3d Cir. 2020); *Grede v. Bank of N.Y. Mellon*, 598 F.3d 899, 900 (7th Cir. 2010). Rather, it is a type of "statutory" standing, *In re Wilton Armetale, Inc.*, 968 F.3d at 280–81, which is an affirmative defense, *see Div. 1181 Amalgamated Transit Union v. B&M Escorts, Inc.*, 2018 WL 2417842, at *8 (E.D.N.Y. May 29, 2018). Moreover, as reflected in their own cited cases, absent a plaintiff admission that it lacks standing, any ruling on Defendants' "bankruptcy standing" objection should only be made with the benefit of a fully developed factual record. *See, e.g., In re USN Commc'ns, Inc.*, 280 B.R. 573, 592–93 (Bankr. D. Del. 2002) (ruling following trial); *In re Hart Oil & Gas, Inc.*, 534 B.R. 35, 52 (Bankr. D.N.M. 2015)

30

(ruling on Bankruptcy Court's extensive record); *Allston-Wilson v. Phila. Newspapers, Inc.*, 2006 WL 1050281, at *1 (E.D. Pa. Apr. 20, 2006) (plaintiff admitted that she lacked standing). No such record has been developed here.

In any event, it is Defendants that have no basis to raise objections based on American Sugar's alleged failure to sufficiently retain causes of action pursuant to Section 1123(b)(3). American Sugar's confirmed Chapter 11 plan "acts as a binding contract on all the parties thereto," *In re Ampace Corp.* 279 B.R. at 160 (citing 11 U.S.C. § 1141(a)). That plan, which must be read as a whole and according to its plain meaning,[9] memorializes the agreement and understanding of both American Sugar *and its creditors* from the get-go that, with certain exceptions not relevant here, American Sugar reserved the exclusive right to pursue any and all causes of action—including any rights it had to claims "in . . . tort" such as Helms-Burton Act claims—post-bankruptcy. *See* Holbert Decl. Ex. BA-14 at 5, 39; *see also* 141 Cong. Rec. S15081-02 at S15083 (Oct. 12, 1995) (Helms-Burton "right of action is against the '*tort*' of unauthorized, unlawful 'conversion' of property") (emphasis added).

Moreover, the plan strictly prohibits any person from asserting that American Sugar has *not* reserved any rights it had to litigate any "Causes of Action" (except where the plan expressly provides otherwise), including the estoppel-based defenses that Defendants raise here. Holbert Decl. Ex. BA-14 at 39. Specifically, it states that "[n]**o Entity may rely on the absence of a specific reference** . . . **to any specific Cause of Action**" in the plan or American Sugar's other

---

[9] A confirmed Chapter 11 plan is to be interpreted to "principles of contract construction and interpretation," *In re Kmart Corp.*, 310 B.R. 107, 125 (Bankr. N.D. Ill. 2004); under governing New York law, *see* Holbert Decl. Ex. BA-14 at 64, the plan should be read as a whole, *see CNR Healthcare Network, Inc. v. 86 Lefferts Corp.*, 874 N.Y.S.2d 174, 176–77 (2d Dep't 2009), and "according to [its] plain meaning," *Riverside So. Planning Corp. v. CRP/Extell Riverside, L.P.*, 869 N.Y.S.2d 511, 516 (1st Dep't 2008).

bankruptcy filings "**as any indication that the Debtors or Reorganized Debtors will not pursue any and all available Causes of Action**." *Id.* (emphasis in original). "[T]herefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to any Cause of Action upon, after, or as a consequence of the Confirmation or the occurrence of the Effective Date." *Id.* Further, the Plan makes clear that none of the parties in interest contemplated that any claims would remain with the bankruptcy estate to be administered for the benefit of creditors, as it does not distribute any causes of action to creditors, either directly or derivatively, on account of their claims. *See generally id.* Such a plan suffices to preserve any rights to claims post-bankruptcy. *In re Kmart Corp.*, 310 B.R. 107, 123–24 (Bankr. N.D. Ill. 2004) (reservation of claims "without limitation" and "of any kind whatsoever not otherwise released pursuant to the terms of the Plan" sufficiently "clear in what it purported to reserve"); *In re Think3, Inc.*, 529 B.R. 147, 202–03 (Bankr. W.D. Tex. 2015) (reservation of claims "in contract or in tort" sufficient to preserve at-issue contract claim).

In short, American Sugar's creditors unambiguously agreed to relinquish challenges to American Sugar's pursuit of any rights it had to litigate claims. Defendants' misguided attempt to stand in the shoes of those creditors, who themselves waived the very arguments that Defendants now attempt to put forward, fails based on the face of the very documents they purport to rely on.[10] The Court should therefore reject Defendants' bankruptcy standing arguments.

---

[10] In addition, because American Sugar's trafficking allegations extend as far as July 2019, *see* Compl. ¶¶ 187–188, which post-dates the confirmation of American Sugar's bankruptcy plan in June 2019, American Sugar indisputably has "bankruptcy standing" to claim that Defendants trafficked in its expropriated property following its reorganization. *See Mahoney v. Bank of Am., N.A.*, No. 13-cv-2530, 2014 WL 2197068, at *7 (S.D. Cal. May 27, 2014).

### B.       Defendants' Judicial Estoppel Defense Fails

Likewise, even if the Court were to reach the merits of Defendants' judicial estoppel

defense at this procedural juncture, it would find it to be based at best on misinterpretations and

speculation.  Courts apply a two-prong test to determine whether judicial estoppel precludes a

plaintiff's claim based on alleged nondisclosure in a prior bankruptcy: (1) whether the debtor-

plaintiff took "inconsistent positions under oath" in the two proceedings; and (2) "whether those

inconsistent positions were 'calculated to make a mockery of the judicial system.'"  *Henderson*

*v. Franklin*, 782 F. App'x 866, 871 (11th Cir. 2019) (citation omitted).

Defendants fail to meet their burden of proof on the first prong because American Sugar

did not take any "inconsistent positions under oath."  Defendants merely attempt to interpret

portions of American Sugar's bankruptcy filings to argue there might be such an inconsistency

when in fact there was none.  Moving to the second prong, which requires proof of the debtor-

plaintiff's "culpable mental state," *Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1185–86 (11th Cir.

2017) (en banc), a court may not infer "that a plaintiff intended to make a mockery of the judicial

system simply because he failed to disclose a civil claim," *id.* at 1185.  In so holding, the *Slater*

court expressly disapproved the rationale of out-of-Circuit cases on which Defendants rely, such

as *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 322 (3d

Cir. 2003).  *See* Mot. 17–18, 22–23, 25.  Instead, "to determine whether a plaintiff's inconsistent

statements were calculated to make a mockery of the judicial system, a court should look"

"beyond a plaintiff's omission" "to *all* the facts and circumstances of the particular case."

*Slater*, 871 F.3d at 1186 (emphasis added).  That is why this type of factual finding is wholly

inappropriate on a motion to dismiss.  *See Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1275

(11th Cir. 2010) (a party's intent to take inconsistent positions with respect to judicial estoppel is

a "factual finding by the court"); *Washington*, 2019 WL 320582, at *5 ("The Court may not infer

intent to abuse the judicial system based merely on whether the plaintiff knew of her civil claim when completing her disclosure forms."); *Schreiber v. Ocwen Loan Servicing, LLC*, No. 11-cv-211-32, 2011 WL 6055425, at *2 (M.D. Fla. Oct. 17, 2011) (declining to make factual findings regarding plaintiffs' intent on a motion to dismiss).

Separate from their inability to meet the requirements for judicial estoppel, Defendants have not demonstrated any harm or injustice compelling the application of that doctrine in this case. "[J]udicial estoppel is an 'extraordinary remed[y] to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice.'" *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 365 (3d Cir. 1996) (citation omitted). It "exists to protect the integrity of courts, not the parties' interests, and it is certainly not intended as an offensive weapon available to defeat plaintiffs' claims." *Snowden v. Fred's Stores of Tenn., Inc.*, 419 F. Supp. 2d 1367, 1374–75 (M.D. Ala. 2006). Defendants, however, offer no rationale for applying judicial estoppel in this instance, other than "to [improperly] derail potentially meritorious claims," *Ryan Operations G.P.*, 81 F.3d at 365, and "receive an unjustified windfall," *Slater*, 871 F.3d at 1187.

Nor can Defendants identify any prejudice, harm, or injustice warranting judicial estoppel. Defendants' professed concern for the Bankruptcy Court, *see* Mot. 24–25, is a red herring since "the bankruptcy court retains broad discretion to reopen a closed case on a motion of the debtor or another party in interest 'to administer' an asset that had not previously been scheduled." *Slater*, 871 F.3d at 1186–87 (quoting 11 U.S.C. § 350(b)). In addition, Defendants are not (and do not suggest they are) creditors of American Sugar. Although Defendants half-heartedly appeal to creditors' interests, *see* Mot. 24–25, Defendants disregard the fact that all parties in interest to American Sugar's Chapter 11 proceedings agreed not only that American

34

Sugar reserved any rights it had to any tort causes of action, but also that the creditors would waive judicial estoppel and other defenses.  Defendants' judicial estoppel arguments must therefore be rejected.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied.

Dated: October 16, 2020

Respectfully submitted,

Miguel A. Estrada (*pro hac vice*)
Audi K. Syarief (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., NW
Washington, DC 20036-5306
Telephone: (202) 955-8257
Facsimile:  (202) 530-9616
mestrada@gibsondunn.com
asyarief@gibsondunn.com

Andrea E. Neuman (*pro hac vice*)
Rahim Moloo (*pro hac vice*)
Casey Kyung-Se Lee (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
Telephone: (212) 351-3883
Facsimile:  (212) 351-5303
aneuman@gibsondunn.com
rmoloo@gibsondunn.com
clee@gibsondunn.com

*David S. Mandel*
David S. Mandel
FBN 38040
MANDEL & MANDEL LLP
169 East Flagler Street, Suite 1224
Miami, FL 33131
Telephone: (305) 374-7771
dsm@mandel.law

*Counsel for Plaintiff North American Sugar
Industries Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 16, 2020, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record.

<u>*David S. Mandel*</u>