**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.:  20-cv-22471-GAYLES/Otazo-Reyes**

NORTH AMERICAN SUGAR INDUSTRIES INC.,

      Plaintiff,

v.

XINJIANG GOLDWIND SCIENCE & TECHNOLOGY
CO., LTD., GOLDWIND INTERNATIONAL
HOLDINGS (HK) LTD., DSV AIR & SEA INC.,
BBC CHARTERING USA, LLC, and
BBC CHARTERING SINGAPORE PTE LTD.,

      Defendants.

_____/

**<u>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................... iii

INTRODUCTION ..................................................................................... 1

ARGUMENT ............................................................................................ 2

I.     Plaintiff Lacks Article III Standing ................................................ 2

II.    Plaintiff's Decision Not to Disclose in Its Recent Bankruptcy Proceedings the
Alleged Rights It Asserts Here Bars This Action ................................ 8

     A.     Plaintiff Lacks Standing to Bring this Action Due to Its Lack of
Sufficient Disclosures in Its Bankruptcy Case ...................... 9

               i.     *Defendants Challenge "Constitutional Standing," Not
"Bankruptcy Standing"* ...................................... 9

               ii.     *Plaintiff's Bankruptcy Estate Is the Real Party in Interest* ...... 10

               iii.     *Categorical Reservations of Rights Are Insufficient to Vest
Plaintiff with Title to the Well-Known, Allegedly Valuable Certified
Claim and Related Loss Claims* ............................. 10

               iv.     *Plaintiff's Windfall if the Complaint Is Not Dismissed Would
Be at the Expense of the Integrity of the Bankruptcy Court and
Bankruptcy Process* ......................................... 11

     B.     The Debtors Did Not Disclose the Certified Claim or the HBA-
Related Claims to the Bankruptcy Court and Thus Are Judicially
Estopped From Pursuing Them Here .................................. 12

               i.     *Plaintiff Took a Position in Its Bankruptcy Proceeding That Is
Inconsistent with Its Claims Here* ............................ 12

               ii.     *Plaintiff's Lack of Disclosure Makes a Mockery of the Judicial
System* ..................................................... 13

III.     Plaintiff Fails to State a Claim for Trafficking in the "Confiscated Property" ......... 14

## <u>TABLE OF CONTENTS – Continued</u>

<u>Page</u>

IV.     The Act Bars a Title III Cause of Action When a Plaintiff Also Brings an
        Action Under Any Provision of Law Other Than Title III ................................................18

CONCLUSION....................................................................................................................20

CERTIFICATE OF SERVICE ........................................................................................22

## **TABLE OF AUTHORITIES**

<u>**Page(s)**</u>

**Cases**

*Adras v. Nelson*,
  917 F.2d 1552 (11th Cir. 1990) ......................................................................................19

*Banco Nacional de Cuba v. Sabbatino*,
  376 U.S. 398 (1964)..........................................................................................................6

*Barger v. City of Cartersville, Ga.*,
  348 F.3d 1289 (11th Cir. 2003) ......................................................................................10

*Brown v. Brock*,
  169 F. App'x 579 (11th Cir. 2006) ...................................................................................8

*Connecticut Nat'l Bank v. Germain*,
  503 U.S. 249 (1992)........................................................................................................18

*Conroy v. Delta Air Lines, Inc.*,
  No. 07-61890, 2008 WL 1994830 (S.D. Fla. May 8, 2008)..............................................8

*Cueto Iglesias v. Pernod Ricard*,
  No. 20-cv-20157 (S.D. Fla. Aug. 17, 2020) ................................................................3, 4

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006)..........................................................................................................9

*Diamond v. Charles*,
  476 U.S. 54 (1986)..........................................................................................................10

*Forsyth v. NHC Place/Anniston, LLC, Inc.*,
  No. 1:18-CV-00663, 2018 WL 4909953 (N.D. Ala. Oct. 10, 2018) ............................. 19

*Garcia-Bengochea v. Carnival Corp.*,
  No. 1:19-CV-21725, 2020 WL 4590825 (S.D. Fla. July 9, 2020)...................................20

*Glen v. Am. Airlines, Inc.*,
  No. 20-cv-482-A, 2020 WL 4464665 (N.D. Tex. Aug. 3, 2020) .............................2, 6, 17

**<u>TABLE OF AUTHORITIES - Continued</u>**

<u>**Page(s)**</u>

*Glen v. Club Mediterranee, S.A.*,
    450 F.3d 1251 (11th Cir. 2006) ...............................................................................5, 6, 7

*Glen v. Club Mediterranee S.A.*,
    365 F. Supp. 2d 1263 (S.D. Fla. 2005) .......................................................................7, 14

*Gonzalez v. Amazon.com, Inc.*,
    No. 19-23988-CIV, 2020 WL 2323032 (S.D. Fla. May 11, 2020)...................................15

*Griffin v. Verizon Comm'ns Inc.*,
    746 F. App'x 873 (11th Cir. 2018) ..................................................................................8

*Havana Docks Corp. v. Carnival Corp.*,
    No. 19-cv-21724, 2020 WL 5517590 (S.D. Fla. Sept. 14, 2020) ............................. *passim*

*Havana Docks Corp. v. MSC Cruises SA Co.*,
    No. 19-cv-23588, 2020 WL 5367318 (S.D. Fla. Sept. 8, 2020) .............................3, 16, 17

*Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*,
    --- F. Supp. 3d ---, 2020 WL 5217218 (S.D. Fla. Sept. 1, 2020).......................................3

*Henderson v. Franklin*,
    782 F. App'x 866 (11th Cir. 2019) ...............................................................................13

*In re Ampace Corp.*,
    279 B.R. 145 (Bankr. D. Del. 2002) ..............................................................................11

*In re Bay Circle Properties, LLC*,
    955 F.3d 874 (11th Cir. 2020) .......................................................................................10

*In re Bridgeport Holdings, Inc.*,
    326 B.R. 312 (Bankr. D. Del. 2005) ..............................................................................11

*In re Chapman*,
    166 U.S. 661 (1897)......................................................................................................17

**TABLE OF AUTHORITIES - Continued**

**Page(s)**

*In re Echeverria*,
    No. 6:18-BK-07478, 2020 WL 2844520 (Bankr. M.D. Fla. May 29, 2020)....................12

*In re Kmart Corp.*,
    310 B.R. 107 (Bankr. N.D. Ill. 2004) .............................................................11

*In re Lett*,
    632 F.3d 1216 (11th Cir. 2011) ....................................................................12

*In re O'Dowd*,
    233 F.3d 197 (3d Cir. 2000)........................................................................10

*In re Pen Holdings, Inc.*,
    316 B.R. 495 (Bankr. M.D. Tenn. 2004) ........................................................11

*In re Shek*,
    947 F.3d 770 (11th Cir. 2020) ....................................................................20

*In re Tenn-Fla Part*ners,
    170 B.R. 946 (Bankr. W.D. Tenn. 1994)........................................................12

*In re Think3, Inc.*,
    529 B.R. 147 (Bankr. W.D. Tex. 2015)..........................................................11

*In re Vann*,
    67 F.3d 277 (11th Cir. 1995) ......................................................................19

*Konowaloff v. Metropolitan Museum of Art*,
    702 F.3d 140 (2d Cir. 2012)......................................................................5, 6

*Lincoln Beneficial Life Co. v. AEI Life., LLC*,
    800 F.3d 99 (3d Cir. 2015)...........................................................................9

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)....................................................................................3

**TABLE OF AUTHORITIES - Continued**

<u>Page(s)</u>

*Miller v. Gizmodo Media Grp., LLC*,
    No. 18-24227, 2019 WL 1790248 (S.D. Fla. Apr. 24, 2019)............................................20

*Mobility Sys. & Equip. Co. v. United States*,
    51 Fed. Cl. 233 (2001) ...............................................................................................9

*Muransky v. Godiva Chocolatier, Inc.*,
    --- F.3d ---, 2020 WL 6305084 (11th Cir. Oct. 28, 2020) ........................................ *passim*

*Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*,
    781 F.3d 1245 (11th Cir. 2015) ...............................................................................4

*Parker v. Wendy's Int'l, Inc.*,
    365 F.3d 1268 (11th Cir. 2004) ...............................................................................9

*Slater v. United States Steel Corp.*,
    871 F.3d 1174 (11th Cir. 2017) ...............................................................10, 12, 14

*Smith v. Atl. Springs Condo. Ass'n, Inc.*,
    No. 0:15-CV-61155, 2015 WL 7428745 (S.D. Fla. Nov. 23, 2015) ...................................8

*Smith v. Haynes & Haynes P.C.*,
    940 F.3d 635 (11th Cir. 2019) ...............................................................................9, 13

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)...............................................................................3, 4, 5, 6

*Talenti v. Clinton*,
    102 F.3d 573 (D.C. Cir. 1996) ...............................................................................7

*Thole v. U.S. Bank N.A.*,
    140 S. Ct. 1615 (2020)...............................................................................3, 4, 5

*Trichell v. Midland Credit Mgmt., Inc.*,
    964 F.3d 990 (11th Cir. 2020) ...............................................................................3, 4, 6

**<u>TABLE OF AUTHORITIES - Continued</u>**

<u>Page(s)</u>

*Trupei v. United States*,
    304 F. App'x 776 (11th Cir. 2008) ..................................................................19

*United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*,
    484 U.S. 365 (1988)........................................................................................13

*United Student Aid Funds, Inc. v. Espinos*a,
    559 U.S. 260 (2010)........................................................................................12

*Vreugdenhill v. Navistar Int'l Transp. Corp.*,
    950 F.2d 524 (8th Cir. 1991) .........................................................................9

*Warth v. Seldin*,
    422 U.S. 490 (1975)........................................................................................4

*Zack v. Tucker*,
    704 F.3d 917 (11th Cir. 2013) .......................................................................17

**Statutes**

11 U.S.C. § 541............................................................................................9, 13

11 U.S.C. § 554..............................................................................................13

11 U.S.C. § 1123............................................................................................13

11 U.S.C. § 1123(b)........................................................................................13

11 U.S.C. § 1141............................................................................................13

11 U.S.C. § 1141(b)........................................................................................13

11 U.S.C. § 1141(c)........................................................................................13

22 U.S.C. § 6023(13)................................................................................16, 17

22 U.S.C. § 6023(13)(A)................................................................................16

**TABLE OF AUTHORITIES - Continued**

**Page(s)**

22 U.S.C. § 6081 ........................................................................................................5

22 U.S.C. § 6081(6) ...................................................................................................7

22 U.S.C. § 6081(6)(B) ............................................................................................17

22 U.S.C. § 6081(11) ................................................................................................17

22 U.S.C. § 6082(a)(1)(A) .........................................................................14, 15, 16, 18

22 U.S.C. § 6082(a)(1)(A)(i)(I) ................................................................................16

22 U.S.C. § 6082(a)(1)(A)(III) .................................................................................15

22 U.S.C. § 6082(a)(3)(A) ........................................................................................15

22 U.S.C. § 6082(a)(3)(B) ........................................................................................15

22 U.S.C. § 6082(f) ........................................................................................2, 18, 19

22 U.S.C. § 6082(f)(1)(A) .............................................................................18, 19, 20

22 U.S.C. § 6082(f)(1)(B) .............................................................................18, 19, 20

22 U.S.C. § 6083(a)(1) ..............................................................................................16

**Rules**

Fed. R. Evid. 201 .......................................................................................................8

**Other Authorities**

U.S. Dep't of Justice, Completed Programs – Cuba, *available at*
https://www.justice.gov/fcsc/claims-against-cuba (last visited Oct. 26, 2020) ...............................5

Defendants Goldwind International Holdings (HK) Ltd. ("Goldwind International"), DSV Air & Sea Inc. ("DSV US"), BBC Chartering USA, LLC and BBC Chartering Singapore PTE Ltd. (together "BBC" and, collectively, "Defendants") file this Reply in Support of their Motion to Dismiss ("MTD," ECF No. 54) the Complaint filed by Plaintiff North American Sugar Industries Inc. ("Plaintiff").

## **INTRODUCTION**

In their Motion, Defendants established that Plaintiff lacks standing and otherwise fails to state a claim under the Helms-Burton Act (the "HBA" or "Act"). Nothing in Plaintiff's Opposition ("Opp.," ECF No. 67) refutes these arguments, and the Complaint should be dismissed.

***First***, Plaintiff lacks Article III standing because Defendants' alleged use of Puerto Carupano in 2018-2019 caused Plaintiff ***no harm*** beyond any harm that Plaintiff allegedly sustained when Cuba confiscated its property in 1960. The Foreign Claims Settlement Commission (the "FCSC") addressed that harm by certifying the value of Plaintiff's confiscated properties ***as a claim against Cuba only*** (the "Certified Claim"). Enacted decades later, the Act purported to create ***both*** a harm that did not pre-exist the statute ***and*** a remedy for that purported harm. The Supreme Court has made clear, however, that a statute cannot by itself confer standing for an injury that did not previously exist, and the en banc Eleventh Circuit forcefully applied that principle just weeks ago. *Muransky v. Godiva Chocolatier, Inc.*, --- F.3d ---, 2020 WL 6305084, at *1 (11th Cir. Oct. 28, 2020) (en banc) (holding that a plaintiff has no standing where he suffered no concrete harm or a material risk of harm stemming from an alleged statutory violation).

***Second***, Plaintiff also lacks standing and is otherwise barred from pursuing these claims due to the disclosures it made and, more pointedly, chose not to make in its recent federal bankruptcy proceedings. In its Opposition, Plaintiff argues simultaneously (and paradoxically) that its omission of the Certified Claim and HBA-related claims in those bankruptcy proceedings was either excused ***or*** was voluntarily accepted by participating creditors. But Plaintiff fails to point to a single fact in

the judicially noticeable bankruptcy record that supports its contention that it retains these causes of action following its exit from its bankruptcy case.

      **Third**, Plaintiff admits that it has not alleged facts showing that Defendants trafficked in the "Confiscated Property," as defined in the Complaint.  Compl. ¶ 64.  Nonetheless, Plaintiff argues that by alleging Defendants trafficked in one portion of the confiscated property (i.e., Puerto Carupano), the Complaint states a claim for trafficking in **all** of Plaintiff's confiscated properties – regardless of whether Defendants actually trafficked in them.  That is not so.  Because the Complaint fails to allege facts that Defendants trafficked in the Confiscated Property, it fails to state a claim for relief and should be dismissed.

      **Finally**, the Act's plain text bars Plaintiff from pursuing **both** a Title III and a common law action on the basis of the same facts.  *See* 22 U.S.C. § 6082(f).  For claims arising from Defendants' alleged trafficking in confiscated property, the Act requires Plaintiff to elect whether to seek remedies under (a) Title III or (b) common law.  It is that simple.  Plaintiff's interpretation of the Act is that it only prohibits both claims from being filed in **separate** lawsuits.  At best, this interpretation would require the Court to ignore a separate subpart of the relevant provision, which Plaintiff fails to address it in its Opposition and which the Court patently should not do.  For this reason as well, the Complaint should be dismissed.

## ARGUMENT

### I.  Plaintiff Lacks Article III Standing

      Plaintiff misleadingly asserts that "this District's courts have repeatedly and unanimously held" that Helms-Burton plaintiffs have Article III standing.  Opp., 1, 11–12, 14–15.  The **actual** status is that only three judges in two districts have ruled on this issue: Judge John H. McBryde of the Northern District of Texas in *Glen v. American Airlines*;[1] Judge Kathleen M. Williams of this

---

[1]     *Glen v. Am. Airlines, Inc.*, No. 20-cv-482-A, 2020 WL 4464665 (N.D. Tex. Aug. 3, 2020) ("*Glen*").

District in *Cueto Iglesias v. Pernod Ricard*;[2] and Judge Beth Bloom of this District in essentially identical rulings in three companion cases.[3]  Judge McBryde held that the plaintiff **lacks** standing; Judges Williams and Bloom held that the plaintiffs **have** standing.  The former is correct.

The Eleventh Circuit's en banc decision in *Muransky* reinforces that Plaintiff's invocation of a statutory violation is insufficient to show that it was injured in fact. That decision begins:

> In *Spokeo, Inc. v. Robins*, the Supreme Court took on a standing question that had bedeviled litigants, scholars, and lower courts – whether pleading that a statutory requirement was violated is enough to establish standing, even if the plaintiff suffered no injury from the alleged violation. The answer was a resounding no: a party does not have standing to sue when it pleads only the bare violation of a statute.

*Muransky*, 2020 WL 6305084, at *1.  The defendant in *Muransky* (Godiva) violated a federal statute (FACTA) that forbids merchants from printing certain information on a customer's credit card receipt. "Because of the size of the putative class, Godiva faced a startling liability of more than $342 million," based on statutory damage figures.  *Id.* at *1–2.  The parties agreed on a settlement, which the district court approved.  *Id.* at *2–3.  On appeal, the Eleventh Circuit vacated the settlement and instructed the district court to dismiss the case for lack of subject matter jurisdiction, holding that the plaintiff lacked standing because he alleged a "bare violation of [the] statute," *id.* at *1, but no "concrete harm . . . stemming from the violation."  *Id.* at *15; *see also id.* at *5 ("Congress can certainly create new legal entitlements," but it cannot "authorize suit in the absence of harm.").

Both *Cueto* and the *Havana Docks* rulings run afoul of this principle. *Cueto* does not discuss or even **reference** the controlling Supreme Court or Eleventh Circuit cases[4] on standing (instead

---

[2]     Order on Mot. to Dismiss, *Cueto Iglesias v. Pernod Ricard,* No. 20-cv-20157 (S.D. Fla. Aug. 17, 2020), ECF No. 55 ("*Cueto*").
[3]     These cases involve the same plaintiff, the same property, and essentially identical allegations of trafficking: *Havana Docks Corp. v. Carnival Corp.*, No. 19-cv-21724, 2020 WL 5517590 (S.D. Fla. Sept. 14, 2020) ("*Carnival*"); *Havana Docks Corp. v. MSC Cruises SA Co.*, No. 19-cv-23588, 2020 WL 5367318 (S.D. Fla. Sept. 8, 2020) ("*MSC*"); and *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, --- F. Supp. 3d ---, 2020 WL 5217218 (S.D. Fla. Sept. 1, 2020) ("*Norwegian*") (jointly, "*Havana Docks* rulings").

[4]     *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016); *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020); *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990 (11th Cir. 2020).

observing that plaintiffs established standing simply by alleging the elements of a Helms-Burton trafficking claim), and particularly the well-established principle that violation of a statute does not, by itself, create standing.  *E.g.*, *Spokeo*, 136 S. Ct. at 1548–49.  Plaintiff relies heavily on the standing discussion repeated nearly verbatim in each of the *Havana Docks* rulings.  Plaintiff cites *Carnival*, for example, twenty times in the section of its Opposition on standing.  Opp. 11–21.  The analysis in *Carnival* is flawed.  Though *Carnival* (unlike *Cueto*) discussed and quoted from the applicable cases – including the principle "that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing," *Carnival Corp.*, 2020 WL 5517590, at *7 n.3 (quoting *Spokeo*, 136 S. Ct. at 1547–48, among other cases) – it failed to apply that principle in wrongly concluding that the plaintiff alleged an injury, ***independent of the statutory claim of "trafficking*****,**" fairly traceable to the cruise lines' use of the dock.

According to *Carnival*, plaintiff was injured in two ways: "(1) the wrongful confiscation of property by foreign governments; and (2) the subsequent unjust enrichment and economic exploitation of that property by foreign investors at the expense of the rightful owners."  *Carnival Corp.*, 2020 WL 5517590, at *7.  But the first harm – Cuba's "wrongful confiscation of property" in 1960 – is not traceable to the cruise lines' use of the dock nearly sixty years later.  And the second alleged harm – the cruise lines' "economic exploitation" of the dock – is ***not*** a harm that ***pre-existed*** or is independent of the trafficking claim created by the Act.  That is clear for several reasons.

To begin, Plaintiff concedes, and the cases confirm, that a newly-created statutory claim must address a "pre-existing" injury.  Opp. 17.[5]  The only injury conceivably traceable to the cruise

---

[5]       Plaintiff cites *Warth v. Seldin*, 422 U.S. 490, 500 (1975) and *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1251 (11th Cir. 2015), Opp. 17, for the proposition that an injury must ***pre-exist*** the statutory cause of action.  *Warth* and *Palm Beach* strayed beyond that, however, in stating that "[t]he actual or threatened injury required by Art. III may exist *solely* by virtue of statutes creating legal rights, the invasion of which creates standing." *Warth*, 422 U.S. at 500 (internal quotations omitted, italics added); *Palm Beach*, 781 F.3d at 1251 (same).  These statements in *Warth* and *Palm Beach* are no longer correct after the Supreme Court's and the Eleventh Circuit's more recent decisions in *Spokeo* (2016), *Thole* (2020), *Trichell* (2020), and *Muransky* (2020), which make clear that "Article III standing requires a concrete injury even in the context of a statutory violation." *Trichell*, 964 F.3d at 997 (quoting

lines that *Carnival* identified – commercial use of the dock without plaintiff's authorization – was **not** an injury until Congress purported to define that injury in creating the trafficking claim.  Absent such a statutory claim, a former owner of property confiscated by a foreign government sustains **no** injury and has no valid claim against a person that uses or benefits from the property **after** the confiscation.  *E.g., Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251 (11th Cir. 2006) ("*Club Med*"); *Konowaloff v. Metropolitan Museum of Art*, 702 F.3d 140 (2d Cir. 2012) ("*Konowaloff*").

In *Club Med*, the Eleventh Circuit held that plaintiffs, whose land Cuba confiscated in 1960, had no claim for trespass or unjust enrichment against Club Med, which operated a hotel later built on that land, because the confiscation left plaintiffs without any ownership (or other) interest in the land.  450 F.3d at 1254.  The court **rejected** plaintiffs' argument, based on the Congressional findings in § 6081 of the Act – on which Plaintiff relies (Opp. 13, 17) – "that the expropriations committed by the Cuban government failed to extinguish the ownership rights of those who owned the properties prior to the takings."  *Id.* at 1255.  *Carnival*, also relying on § 6081, ran afoul of this holding in the *Havana Docks* rulings, concluding incorrectly that (a) plaintiff has a "property interest" in the dock, and (b) a third person's later use of the dock caused plaintiff harm independent of a cause of action under the Act.  *Carnival Corp.*, 2020 WL 5517590, at *7.

The **only** pre-existing injury that the plaintiff in those cases sustained regarding the Havana dock, and that Plaintiff sustained in this case regarding Puerto Carupano, is the injury on which their FCSC-certified claims (issued respectively in 1971 and 1969) was based – that is, Cuba's confiscation of those properties in 1960.  Neither the cruise lines' use of the Havana dock in 2017-2019, nor Defendants' one or two alleged uses of Puerto Carupano in 2018-2019, affected those FCSC claims or changed the claim-holders' positions.  *See* U.S. Dep't of Justice, Completed

---

*Spokeo*, 136 S. Ct. at 1549); *see also Muransky*, 2020 WL 6305084, at *9–10 (noting the same and rejecting the argument that violation of a statute's "substantive," as opposed to "procedural," terms by itself can confer standing); *Thole*, 140 S. Ct. at 1620 (quoting *Spokeo*, 136 S. Ct. at 1549) (internal quotations omitted) ("This Court has rejected the argument that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.").

Programs – Cuba, *available at* https://www.justice.gov/fcsc/claims-against-cuba (last visited Oct. 26, 2020) (stating that holders of such claims may recover on them if and when U.S. and Cuban governments agree on compensation for such claim holders).[6]

Plaintiff argues that, even if Plaintiff did not retain **ownership** of Puerto Carupano after its confiscation, it has a "property interest" in it, which Defendants injured by their alleged use of the port. Opp. 14. But post-confiscation, Plaintiff lacks **any** kind of interest in Puerto Carupano by which it could exclude persons from using it, as *Club Med* held on analogous facts. *See also Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 414-15 (1964) (holding that expropriation extinguishes all pre-existing property rights). The post-confiscation "property interest" Plaintiff claims to have thus did not exist until Congress purported to create it through the Act.

Plaintiff tries to distinguish *Glen*, which held that the plaintiff lacked standing, on the same basis that *Carnival* purportedly, and incorrectly, distinguished it. Plaintiff points to the statement in *Glen* that "the plaintiff *admitted* that neither the Cuban government's confiscation of the properties nor the <u>hotels'</u> operations constituted injuries in fact." Opp. 15 (italics in original) (underscoring added) (quoting *Carnival Corp.*, 2020 WL 5517590, at *8). That admission was not the basis for the *Glen* Court's holding and is not meaningful because Glen sued neither Cuba nor the **hotels**; he sued **American Airlines**. Both Plaintiff and *Carnival* omitted the next sentence in *Glen*: "Instead, plaintiff argues that his injury is based entirely on defendant's [American Airlines'] alleged violation of the substantive rights given to plaintiff by the Act." *Glen*, 2020 WL 4464665, at *2. That is not sufficient to confer standing, as the *Glen* court correctly held. *Id.* (citation omitted).

*Carnival* quotes a truncated statement from the *Club Med* district court decision – that "the injury to a plaintiff whose property was expropriated was a lack of compensation" – to support its

---

[6]     *See also Trichell*, 964 F.3d at 997 (quoting *Spokeo*, 136 S. Ct. at 1549) (finding a plaintiff does not allege a pre-existing injury if the alleged injury does not bear a "close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts"); *Konowaloff*, 702 F.3d at 144 (finding descendant of owner of Cézanne painting expropriated by the Bolshevik regime, whether legally or not, retained no property interest in the painting and therefore had no claim against a museum that later acquired and displayed the painting).

erroneous conclusion that the cruise lines' use of the Havana dock constituted "sufficient concrete harm" to the plaintiff. *Carnival Corp.*, 2020 WL 5517590, at *8 (quoting *Glen v. Club Mediterranee S.A.*, 365 F. Supp. 2d 1263, 1272 (S.D. Fla. 2005), which in turn cited *Talenti v. Clinton*, 102 F.3d 573, 578 (D.C. Cir. 1996)). Plaintiff in this case repeats that argument. Opp. 15. But the lack of compensation referred to by the district court in *Club Med* and in *Talenti* is compensation for the ***initial confiscation by a government***, not compensation from a later user of the confiscated property. *See Club Mediterranee S.A.*, 365 F. Supp. 2d at 1272 (citing *Talenti*); *Talenti*, 102 F.3d at 578 ("Talenti cannot demonstrate that congressional notification will cause ***the Italian government*** to compensate him ***for the expropriations***" (emphasis added)). Thus, there is no injury, and no viable claim, independent from the newly-created Helms-Burton claim, based on a third-person's use of property confiscated by a foreign government.

Plaintiff's lack of standing should be unsurprising given that the Act did not create a new ***remedy*** for a ***pre-existing harm***, but rather invented a supposed injury in an effort to shape policy toward Cuba by means of a dubious private cause of action. *See* 22 U.S.C. § 6081(6) (noting among Congress's findings that "'trafficking' in confiscated property provides badly needed financial benefit . . . to the current Cuban Government and thus *undermines the foreign policy of the United States* . . . to bring democratic institutions to Cuba *through the pressure of a general economic embargo*" (italics added)). Whatever Congress's findings or intent may have been, "congressional judgment only goes so far, and does not relieve the judiciary of our constitutional duty to independently determine whether the plaintiff has suffered a concrete injury." *Muransky*, 2020 WL 6305084, at *6.[7] Thus, Plaintiff lacks standing, and this action must be dismissed.

---

[7]     The statute's absurd damages provision further illustrates that the Act did not aim to remedy an ***actual***, let alone a ***pre-existing***, harm. That provision, Plaintiff asserts, would enable it to recover triple the value of ***all*** of its confiscated property, which the FCSC in 1969 valued at more than $97 million (plus future interest), Opp. 2–3, 21–22, rather than any actual harm Plaintiff sustained from the two shipments at issue in this case or even the much smaller value of the port (the only property that Defendants allegedly used). Taken at face value, the damages provision as interpreted by Plaintiff would mean a hot dog vendor on Puerto Carupano would be liable to Plaintiff for the amount sought here. What pre-existing injury to Plaintiff, independent of Title III, did the vendor cause Plaintiff that would expose the vendor to such astronomic liability to Plaintiff?

II.     **Plaintiff's Decision Not to Disclose in Its Recent Bankruptcy
        <u>Proceedings the Alleged Rights It Asserts Here Bars This Action</u>**

In its Opposition, Plaintiff does not contest its failure to disclose in its bankruptcy case the causes of action it now pursues here, but instead asks the Court to look past its non-disclosure by contending that such a determination at this stage would be "premature."  Opp. 3.  This Court can (and, based on the undisputed record, should), however, find that Plaintiff has no standing to pursue claims that – pursuant to the Bankruptcy Code – belong to its estate.  Moreover, having denied the existence of these claims in its bankruptcy case, Plaintiff is estopped from pursuing them now.[8]

As an initial matter, and contrary to Plaintiff's suggestion otherwise,[9] courts in this Circuit take judicial notice of the content of federal judicial filings, including bankruptcy records.[10]  *Griffin v. Verizon Comm'ns Inc.*, 746 F. App'x 873, 876 (11th Cir. 2018) (finding that "documents submitted . . . from the public dockets of federal judicial proceedings . . . are not subject to reasonable dispute" such that a district court does not err when it takes judicial notice of them); *Smith v. Atl. Springs Condo. Ass'n, Inc*., No. 0:15-CV-61155, 2015 WL 7428745, at *3 n.3 (S.D. Fla. Nov. 23, 2015) (citing Fed. R. Evid. 201) (taking "judicial notice of the fact that Plaintiff claim[ed] the property at issue as an investment property in multiple filings before the bankruptcy court"); *Conroy v. Delta Air Lines, Inc.*, No. 07-61890, 2008 WL 1994830, *1 (S.D. Fla. May 8, 2008) (citation omitted) (considering bankruptcy confirmation on a motion to dismiss).  The Court should follow this precedent and take judicial notice of such filings at this stage, which is particularly appropriate given that Plaintiff ***does not challenge*** the veracity of these filings.  *See id*.

---

[8]     The same result is reached under precedent from the Eleventh Circuit, where Plaintiff has chosen to pursue this case, or the Third Circuit, where Plaintiff's bankruptcy case was venued.  *See*  Mot. 17 n.11.

[9]     Plaintiff points to a single Eleventh Circuit case, decided pre-*Griffin*, where the court declined to take judicial notice.  Opp. 28 (citing *Brown v. Brock*, 169 F. App'x 579, 582 (11th Cir. 2006)).

[10]    Defendants' reliance on *Griffin* is not misplaced.  The Eleventh Circuit's analysis in *Griffin* did not hinge on which party referenced the materials or whether plaintiff's claims were based on prior judicial proceedings.  746 F. App'x at 876.  Rather, the Eleventh Circuit relied on precedent and the Federal Rules of Evidence to conclude that the district court properly took judicial notice of documents in the dockets of other federal cases.  *Id.*  Applying that reasoning here, the Court should do the same.

A.  Plaintiff Lacks Standing to Bring This Action Due to
     Its Lack of Sufficient Disclosures in Its Bankruptcy Case

Defendants challenge Plaintiff's Article III standing and this Court's subject matter jurisdiction on the ground that Plaintiff's denials in bankruptcy of the existence of the Certified Claim and related claims[11] left title to those assets with their bankruptcy estates.  *See Lincoln Beneficial Life Co. v. AEI Life., LLC,* 800 F.3d 99, 105 (3d Cir. 2015) (noting "a factual attack [under Rule 12(b)(1)] concerns 'the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites'").  And contrary to Plaintiff's argument, this is not an affirmative defense; the initial burden to establish Article III standing rests with Plaintiff.  *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 342 n.3 (2006).  Because Plaintiff indisputably omitted these assets from its bankruptcy disclosures, the Complaint must be dismissed.

i.  *Defendants Challenge "Constitutional Standing," Not "Bankruptcy Standing"*

Plaintiff inaccurately casts Defendants' arguments under the misnomer "bankruptcy standing."  Opp. 30.  That term describes the legal effect of Bankruptcy Code Section 544, which concerns only prudential standing and is irrelevant here.  Defendants challenge Plaintiff's **constitutional** standing, which instead has its basis in Section 541 of the Bankruptcy Code.  As a matter of law, by operation of Bankruptcy Code Section 541, Plaintiff's bankruptcy estate became vested with title to the Certified Claim and any causes of action under the Act when Plaintiff sought relief under Chapter 11.  *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004).  "Failure to list an interest on a bankruptcy schedule leaves that interest in the bankruptcy estate."  *Id.* (citing *Mobility Sys. & Equip. Co. v. United States*, 51 Fed. Cl. 233, 236 (2001)); *Vreugdenhill v. Navistar Int'l Transp. Corp.*, 950 F.2d 524, 525–26 (8th Cir. 1991).[12]  Because Plaintiff failed to

---

[11]    *Smith v. Haynes & Haynes P.C.*, 940 F.3d 635, 643–44 (11th Cir. 2019) (noting an omission is considered to be a denial of the existence of a claim).

[12]    Plaintiff's effort to carve out from the Bankruptcy Code's stricture events that occurred post-petition is unavailing.  The Certified Claim was certified by the FCSC over fifty years ago, and thus, it was well-known and liquidated at the time of the bankruptcy petition.  Moreover, the Act's suspension was lifted prior to confirmation of the reorganization plan.  Therefore, regardless of when the conduct allegedly occurred,

9

list the Certified Claim and HBA-related claims on its bankruptcy schedules, these interests remain with the bankruptcy estate, and Plaintiff does not own the Certified Claim or the right to recover losses under the Act.  Thus, Plaintiff lacks constitutional standing to pursue the claims before this Court.

ii.   *Plaintiff's Bankruptcy Estate Is the Real Party in Interest*

Plaintiff also argues, without support, that Defendants have no basis to raise objections that Plaintiff's creditors purportedly voluntarily relinquished.  Opp. 30.  Plaintiff is wrong.  The "determination of the identity of the party who can properly assert the damage claims [omitted from bankruptcy schedules and disclosures] begins with Federal Rule of Civil Procedure 17(a)," which states that "[e]very action shall be prosecuted in the name of the real party in interest."  *Barger v. City of Cartersville, Ga.,* 348 F.3d 1289, 1292 (11th Cir. 2003) (citations omitted) (holding the trustee's standing on behalf of the estate was exclusive).[13]  Where the prospective claim belongs to the estate, the estate "is the true injured party."  *In re O'Dowd*, 233 F.3d at 204.  And, "[i]n the absence of the [party with standing] in that capacity, there is no case."  *In re Bay Circle Properties, LLC*, 955 F.3d 874, 878 (11th Cir. 2020) (citing *Diamond v. Charles*, 476 U.S. 54, 64 (1986)).  This Court determines who is the "true injured party" for purposes of this action, and does not defer to others' (i.e., creditors') actions or inactions in earlier bankruptcy proceedings on that core issue.

iii.   *Categorical Reservations of Rights Are
Insufficient to Vest Plaintiff with Title to the Well-Known,
Allegedly Valuable Certified Claim and Related Loss Claims*

Plaintiff briefly argues that the reorganization plan generically reserved a right to pursue actions "in . . . tort."  Opp. 31.  Such a categorical word like "tort" in a reorganization plan's

---

Plaintiff's Certified Claim and any claims arising from it belong to the estate.  *See In re O'Dowd,* 233 F.3d 197, 202 (3d Cir. 2000) (citation omitted) (finding claims rooted in pre-bankruptcy past are property of the estate).

[13]     The Eleventh Circuit has specifically reaffirmed this portion of the *Barger* decision.  *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1185 n.10 (11th Cir. 2017) ("We do not overrule these cases entirely. Specifically, our decision today has no effect on … the portions of *Barger* addressing standing, estoppel, and the application of judicial estoppel to the debtor's claim for injunctive relief, 348 F.3d at 1292–93, 1297.").

reservation of rights provision does not restore to a debtor title to valuable, well-known but undisclosed and unvalued assets, and a debtor ***may not*** later pursue those claims for its sole benefit.[14]  Categorical reservations preserve litigation rights only when (1) the claims are of an identifiable type which would make more specific identification too onerous, *see, e.g.*, *In re Ampace Corp.*, 279 B.R. 145, 155 (Bankr. D. Del. 2002) (finding categorical reservation sufficient for numerous avoidance actions where identification would be onerous), and (2) the debtor discloses the category and "the potential effect of the pursuit of those causes of action."[15]  *In re Bridgeport Holdin*gs, *Inc.,* 326 B.R. at 327 (distinguishing failure to specifically identify knowable, existing non-bankruptcy claims).  To hold otherwise would allow debtors to hide assets that should have been made available for distribution.  *Cf. In re Pen Holdings, Inc.*, 316 B.R. 495, 504 (Bankr. M.D. Tenn. 2004) (noting sufficiency of reservation depends on whether the words used "allow creditors to identify and evaluate the assets potentially available for distribution").

    iv.  *Plaintiff's Windfall if the Complaint Is Not Dismissed Would Be at the Expense of the Integrity of the Bankruptcy Court and Bankruptcy Process*

Plaintiff's failure to disclose to the Bankruptcy Court the Certified Claim and HBA-related claims that it is now pursuing, if Plaintiff were allowed to proceed, would also result in an undeserved windfall that established bankruptcy law prevents.  This windfall was recently described by another Florida federal court as follows:

> Debtors cannot pursue the claims that remain property of the estate. Nor would it be fair to allow the Debtors to secret these undisclosed claims, sue Defendants, and then, if successful, keep any recovery that rightfully first should go to pay Debtors' creditors. Debtors cannot get the benefits of a bankruptcy discharge and cherry pick assets, like the claims in this adversary proceeding, they would like to retain. Part of the "bargain"

---

[14]    *In re Bridgeport Holdings, Inc.,* 326 B.R. 312, 328 (Bankr. D. Del. 2005) (noting categorical reservation sufficed only to preserve avoidance claims "for pursuit by the Liquidating Trustee for the benefit of general unsecured creditors").

[15]    The cases relied on by Plaintiff are in accord.  The court in *In re Kmart Corp.* held that a blanket reservation that included specifically defined terms and carve outs for avoidance actions was sufficient to preserve the right to pursue the identified claims for the benefit of the estate.  310 B.R. 107, 115-16 (Bankr. N.D. Ill. 2004).  Likewise, in *In re Think3, Inc*., the court held that a liquidating trust, for the benefit of the estate, succeeded to the estate's rights pursuant to a plan reservation provision that identified both the type of action and specifically named the defendant.  529 B.R. 147, 202 (Bankr. W.D. Tex. 2015).

> in filing bankruptcy is relinquishing your right to pursue pre-petition claims like those asserted in this adversary proceeding. The adversary proceeding will be dismissed with prejudice due to the Plaintiffs' lack of standing.[16]

*In re Echeverria*, No. 6:18-BK-07478, 2020 WL 2844520, at *3 (Bankr. M.D. Fla. May 29, 2020).

Plaintiff should not be allowed to profit here, after making its "no assets" representations to the Bankruptcy Court, its creditors, and any others that might have wished to bid for Plaintiff's assets.

B. **The Debtors Did Not Disclose the Certified Claim or the HBA-Related Claims to the Bankruptcy Court and Thus <u>Are Judicially Estopped From Pursuing Them Here</u>**

Plaintiff's claims are also barred by judicial estoppel.  In its Opposition, Plaintiff ***does not contest*** that it omitted the Certified Claim and its HBA-related claims from all of the filings that creditors and the Bankruptcy Court relied upon in allowing Plaintiff to exit the bankruptcy proceeding.  *See* Opp. 7–8.  Plaintiff also ***does not contest*** that when a party fails to make a full disclosure, as is its affirmative duty, courts regularly bar such non-disclosed claims.  *Slater*, 871 F.3d at 1180 (recognizing courts "apply judicial estoppel when . . . the plaintiff (1) took a position under oath in the bankruptcy proceeding that was inconsistent with plaintiff's pursuit of the civil lawsuit and (2) intended to make a mockery of the judicial system").  These prongs are met here.

i. *Plaintiff Took a Position in Its Bankruptcy Proceeding That Is Inconsistent with Its Claims Here*

Plaintiff argues that the first prong is not met with a single statement: "Defendants merely attempt to interpret portions of [Plaintiff's] bankruptcy filings to argue there might be such an inconsistency when in fact there was none."  Opp. 41.  But, according to the Eleventh Circuit,

---

[16]       Here, Plaintiff breached its duty to the Bankruptcy Court.  *In re Tenn-Fla Part*ners, 170 B.R. 946, 965 (Bankr. W.D. Tenn. 1994) ("[D]ebtors in possession are fiduciaries to both the bankruptcy court and to any parties in interest.").  "[T]he Code makes plain that bankruptcy courts have the authority—indeed, the obligation—to direct a debtor to conform his plan to the requirements of [the Bankruptcy Code]."  *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277 (2010).  Even if creditors in impaired classes (or indeed, even if the investing public) were unaware and failed to appear in Plaintiff's bankruptcy case, they "should presume that the bankruptcy court will complete its statutorily mandated duties."  *In re Lett*, 632 F.3d 1216, 1229 (11th Cir. 2011).  But Plaintiff's insufficient disclosures prevented the Bankruptcy Court from considering Plaintiff's assets in making the findings required of it, and the creditors that acquired Plaintiff through the reorganization plan did not pay the value of the omitted assets to subordinate creditors.

Courts consider the omission of a legal claim from a bankruptcy asset schedule to be a denial that the claim exists. And a complaint in district court seeking damages on the same claim is considered an assertion that the claim does indeed exist. By failing to disclose a pending district court claim to the bankruptcy court, a plaintiff is thus deemed to be taking inconsistent positions. And that inconsistency can satisfy the first prong of the judicial estoppel test.

*Smith*, 940 F.3d at 643–44 (citations omitted).[17] Here, despite plentiful opportunities, Plaintiff did not disclose the Certified Claim or any HBA-related claims as assets in any disclosure made to the Bankruptcy Court. *See* Mot. 16–22. Nor did the boilerplate disclosure referenced in Plaintiff's Opposition suffice. Opp. 31.[18]

The starkly inconsistent positions between (1) the (non-)disclosures to the Bankruptcy Court and (2) the claims being pursued here amply "satisfies the first prong of the judicial estoppel test." *Smith*, 940 F.3d at 644.

    ii.  *Plaintiff's Lack of Disclosure Makes a Mockery of the Judicial System*

Plaintiff's non-disclosure of the Certified Claim and the HBA-related claims also risks a mockery of the judicial system and on its face amounts to "bad faith." *Henderson*, 782 F. App'x at 871 (citations omitted). "When the plaintiff's inconsistent statement comes in the form of an omission in bankruptcy disclosures" the court may consider in assessing bad faith such factors as "plaintiff's level of sophistication," "whether and under what circumstances the plaintiff corrected the disclosures," and "whether the trustee or creditors were aware of the civil lawsuit or claims

---

[17]   *See also Henderson v. Franklin*, 782 F. App'x 866, 871 (11th Cir. 2019) ("Step one is satisfied when the plaintiff fails to disclose a claim against a third party in a bankruptcy proceeding (regardless of chapter) and then pursues that claim in court.")

[18]   While Bankruptcy Code Section 1123(b) allows for reservation of litigation rights to an estate representative and Section 1141(b) allows a plan to provide for a debtor's retention of assets, Plaintiff's boilerplate references do not preserve its standing to pursue undisclosed claims for its own benefit or allow it to retain unscheduled assets. Such a conclusion would render Bankruptcy Code Sections 541 and 554 meaningless. *Cf. United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) (explaining that statutory construction is holistic endeavor that requires ascertaining the "meaning[] [that] produces a substantive effect that is compatible with the rest of the [bankruptcy] law"). Section 1123(b) allows for retention of claims for post-confirmation pursuit by a representative for the benefit of the estate – not the debtor. 11 U.S.C. § 1123. And Section 1141(b) must be read in conjunction with Section 1141(c), which provides that only "property dealt with by the plan is free and clear of all claims and interests of [the estate's constituents]." *Id.* § 1141. The now-alleged-to-exist property and related claims were not "dealt with by the plan" because Plaintiff swore at the time that it had no such property.

before the plaintiff amended the disclosures." *Slater*, 871 F.3d at 1185.

Applied here, these factors support a finding of bad faith. Plaintiff does not dispute that the Hexion Debtors (as defined in the Motion) were owned pre-bankruptcy by sophisticated investors, were represented by well-qualified counsel, and benefitted from the advice of experienced restructuring advisors. Mot. 24. Given this, the circumstances of non-disclosure demonstrate bad faith. This is especially so because the suspension of Title III's private right of action was lifted *during the pendency of the bankruptcy case*, and yet there were no amendments made to at the very least address the Certified Claim that serves as the basis of Plaintiff's lawsuit. Plaintiff would receive an unjustified windfall if it were permitted to profit after its "no assets" and "no value" representations misled the Bankruptcy Court, its creditors, and any member of the public that might have wished to bid for Plaintiff's assets. Plaintiff's actions are the quintessential preconditions for application of estoppel, which provides yet an additional ground for dismissal.

III.     **Plaintiff Fails to State a Claim for Trafficking in the "Confiscated Property"**

Plaintiff does not dispute that the Complaint fails to allege that Defendants trafficked in *each* of the different properties identified in the Certified Claim, or that Plaintiff seeks to hold Defendants liable for trafficking in *all* such properties. Instead, Plaintiff contends that its allegations that Defendants trafficked in *one* of the properties identified in the Certified Claim is sufficient to state a Title III claim for trafficking in *all* of Plaintiff's property seized by the Cuban government. The Complaint should be dismissed because it does not allege facts that Defendants trafficked in each of the properties for which it seeks relief.

Title III provides that "any person that . . . traffics *in property* which was confiscated by the Cuban Government . . . shall be liable to any United States national who owns the claim to *such property*." 22 U.S.C. § 6082(a)(1)(A) (emphasis added). Defendants may be liable under Title III only if they "traffic[ked] in . . . *such property*." *Club Mediterranee S.A.*, 365 F. Supp. 2d at 1269.

"Such property" clearly refers to the "traffic[ked] in property" referenced in the first clause. [19] *Id.* ("Title III permits any U.S. national 'who owns a claim to such [confiscated] property for money damages' to sue those who traffic in such property."). Plaintiff must, therefore, allege that Defendants "traffic[ked] in . . . such property" for which it seeks to hold Defendants liable.[20]

Throughout its Complaint, Plaintiff alleges that the "property" for which it seeks to hold Defendants liable for trafficking in is the "Confiscated Property"—defined in the Complaint as *all* of the property confiscated by the Cuban government and to which Plaintiff owns a certified claim. *E.g.*, Compl. ¶¶ 64, 193–97, 211–15, 225–29. The properties listed in the Certified Claim are separate and individual properties; and Plaintiff agrees. Opp. 21 ("[N]othing in the Helms-Burton Act places the burden on American Sugar to plead (let alone prove) that Defendants trafficked *in every individual piece of property* listed in the Certified Claim." (emphasis added)). While Plaintiff alleges that Defendants trafficked in Puerto Carupano, *see, e.g.*, *id*. ¶¶ 198–203, 216–17, 230–33, the Complaint is bereft of allegations that Defendants trafficked in any of the other properties.

Each of Plaintiff's arguments begs the fundamental question (answered by 22 U.S.C. § 6082(a)(1)(A), as explained above) of *what is the property* that Plaintiff must allege Defendants trafficked in. Plaintiff side-steps this question and, instead, points to the definition of "traffics," contending that a person "traffic[s] in confiscated property, not in specific property interests." *See*

---

[19]     The phrase "*such* national" also found in Section 6082 has already been interpreted in this manner. *Gonzalez v. Amazon.com, Inc.*, No. 19-23988-CIV, 2020 WL 2323032, at *2 (S.D. Fla. May 11, 2020) (emphasis added) (interpreting the phrase "such national" in the provision of Title III that states "[i]n the case of property confiscated before March 12, 1996, a United States national may not bring an action under this section on a claim to the confiscated property unless such national acquires ownership of the claim before March 12, 1996" as "plainly refer[ring] to the 'United States national' who may or may not bring an action under the Helms-Burton Act"). Similarly, "such property" refers specifically to the property that Defendants must have allegedly trafficked in to be liable under the Act.

[20]     The language throughout Title III makes clear that a defendant is only liable for the property that it trafficked in. *See, e.g.*, 22 U.S.C. § 6082(a)(1)(A)(III) ("the fair market value of *that property*" (emphasis added)); *id*. § 6082(a)(3)(A) ("[a]ny person that traffics in confiscated property for which liability is incurred under paragraph (1) shall, if a United States national owns a claim with respect to *that property* which was certified by the Foreign Claims Settlement Commission . . . be liable for damages" (emphasis added)); *id*. § 6082(a)(3)(B) ("[i]f the claimant [provides notice to a person] . . . and that person . . . *traffics in the confiscated property that is the subject of the action*, then that person shall be liable to that claimant for damages" (emphasis added)).

Opp. 21 (citing 22 U.S.C. § 6023(13)(A)).  The definition of "traffics," however, identifies only the actions that amount to "traffic[king]"; it says nothing of what constitutes the "confiscated property." 22 U.S.C. § 6023(13).  The definition of "traffics" does not mean, as Plaintiff implies, that by allegedly trafficking in *one* "confiscated property" a defendant can be liable for trafficking in *all* of Plaintiff's confiscated property.  The plain language of Title III states that a defendant is liable only for the property in which it allegedly trafficked. *Id.* § 6082(a)(1)(A).[21]

Remarkably, despite ignoring this crucial provision in Title III, Plaintiff argues that Defendants "'ignore[] the explicit language of' Title III of the Helms-Burton Act."  Opp. 21 (quoting *MSC Cruises SA Co.*, 2020 WL 5367318, at *17).  Plaintiff cites to the *MSC Cruises* case for support.  But the confiscated property at issue in *MSC Cruises* was listed in the Complaint and in a FCSC certified claim as six line items, which were all related to one centralized property: the Port of Havana, Cuba. *See* Am. Compl. ¶¶ 7, 12, *MSC Cruises SA Co.*, 2020 WL 5367318, ECF No. 56; *id*. at Ex. 1, at 6–7, ECF No. 56-1.  The "Confiscated Property" at issue here includes distinct properties unrelated to Puerto Capuano, located in at least four Cuban provinces.  Compl. Ex. 1.  In denying the motion to dismiss, the court in *MSC Cruises* did not analyze the Title III language creating a private right of action or what properties a plaintiff must allege defendants trafficked in to state a claim. *See MSC Cruises SA Co.*, 2020 WL 5367318, at *17 (quoting 22 U.S.C. § 6023(13)(A)).  The lack of analysis of Title III is critical because it is Title III that prescribes a private right of action and delineates the limits of liability. *See* 22 U.S.C. § 6082(a)(1)(A).

More fundamentally, adopting Plaintiff's argument – that simply alleging Defendants trafficked in one property makes them liable for trafficking in all of Plaintiff's confiscated

---

[21]   Plaintiff's reliance on the Certified Claim is similarly misguided. Plaintiff argues that by virtue of having a certified claim, Defendants are liable for trafficking in all properties in that Certified Claim— regardless of whether the Defendants trafficked in them. Opp. 21. A certified claim serves only as "proof of ownership of an interest in property," and the value of each of those confiscated properties. 22 U.S.C. §§ 6082(a)(1)(A)(i)(I), 6083(a)(1). It does not, however, identify who, if anyone, trafficked in those confiscated properties or who may be liable for such trafficking.

properties – would lead to absurd results.  *See Zack v. Tucker*, 704 F.3d 917, 925 (11th Cir. 2013) (citing and quoting *In re Chapman*, 166 U.S. 661, 667 (1897) ("[N]othing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion.").  Applying Plaintiff's logic, had Plaintiff alleged that Defendants trafficked only in one "work animal," identified and valued in the Certified Claim at $130.55 (Compl. Ex. 1), then Defendants would still be liable for the total value of all properties in the Certified Claim, namely, $97.37 million, regardless of whether Defendants actually trafficked in anything other than one work animal.  Plaintiff's argument is without support and contradicts the plain language of, and Congressional intent behind, Title III.[22]

To state a claim under Title III, Plaintiff must also allege facts showing that Defendants "knowingly and intentionally" trafficked in the property for which it seeks to hold them liable.  Plaintiff argues that it has satisfied the scienter requirement because Defendants had "constructive knowledge of Plaintiff's publicly available Certified Claim . . . ."  Opp. 22–24 (quoting *MSC Cruises SA Co.*, 2020 WL 5367318, at *3).  According to Plaintiff, "such notice suffices to meet the knowledge requirement under the [Helms-Burton] Act."  *Id.* 23.  Plaintiff does not dispute, however, that it has failed to allege that Defendants ***intentionally*** trafficked in the Confiscated Property.  *Glen*, 2020 WL 4464665, at *6 ("To commit trafficking under the Act, a person must know that the property was confiscated by the Cuban government and intend that such property be the subject of their commercial behavior.").  While persons may have "reason to know" that the properties identified in the Certified Claim were confiscated, Plaintiff has not alleged that Defendants "knowingly and intentionally . . . engag[ed] in commercial activity using or otherwise benefiting from" each of the properties itemized in the Certified Claim.  22 U.S.C. § 6023(13).

---

[22]    In enacting Title III, Congress sought to "protect the claims of United States nationals who had property wrongfully confiscated by the Cuban Government" by providing them "with a judicial remedy . . . that would deny traffickers any profits from economically exploiting Castro's wrongful seizures."  22 U.S.C. § 6081(6)(B), (11).  Title III is, therefore, based on the principle that those complicit in exploiting confiscated property should be held responsible.  But Plaintiff does not allege that Defendants profited or benefitted from the Confiscated Property.  Thus, holding Defendants liable for such conduct is not only incompatible with the plain language of Title III, but would also not serve the statute's purpose.

Plaintiff conflates knowledge of property being confiscated by the Cuban government with knowingly and intentionally trafficking in confiscated property.  To state a claim under Title III, the Complaint must plead facts showing the latter.  *Id*. § 6082(a)(1)(A).  It has failed to do so.

In short, a Title III cause of action can only be stated against Defendants for properties they allegedly trafficked in.  Alleging Defendants trafficked in Puerto Carupano does not state a claim for relief under Title III for all of the Confiscated Property.  The Complaint should be dismissed.

### IV.    The Act Bars a Title III Cause of Action When a Plaintiff Also Brings an Action Under Any Provision of Law Other Than Title III

The Act's plain text bars Plaintiff from bringing both a Title III claim and common law claim for conspiracy when both arise out of the same facts.  Plaintiff concedes that Section 6082(f) of the Act precludes bringing both claims in separate lawsuits, but contends that this Section permits a plaintiff to bring one action under Title III and the common law even when both arise out of the same core facts.  In making this argument, Plaintiff ignores Section 6082(f)'s language.

Where, as here, "the words of a statute are unambiguous, . . . 'judicial inquiry is complete'" upon examination of what the statute says.  *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992).  The Act, here, plainly prohibits a plaintiff who sues under Title III from bringing a common law conspiracy claim, 22 U.S.C. § 6082(f)(1)(A); and conversely, it prohibits a plaintiff who brings a common law conspiracy action that arises out of a claim otherwise actionable under the Act from bringing an action under Title III.  *See id.* § 6082(f)(1)(B).  Ignoring subpart (B) and relying exclusively on subpart (A)'s reference to "any other civil action," Plaintiff argues that the Act only prohibits a plaintiff from bringing two separate civil actions.  Not so.  The two full subparts of the Act at issue, titled "***Election of Remedies***," states as follows:

> (A) any United States national that brings an action under this section may not bring any other civil action or proceeding under the common law, Federal law, or the law of any of the several States, the District of Columbia, or any commonwealth, territory, or possession of the United States, that seeks monetary or nonmonetary compensation by reason of the same subject matter; ***and***

> (B) ***any person who brings, under*** the common law or ***any provision of law other than***

18

**this section, a civil action** or proceeding for monetary or nonmonetary compensation **arising out of a claim for which an action would otherwise be cognizable under this section may not bring an action under this section on that claim**.

22 U.S.C. § 6082(f) (emphasis added).  The interpretation that flows naturally from the phrase "any other civil action" in subpart (A) is that any and all actions are barred – not just "separate" actions.[23]

*See, e.g.*, *Adras v. Nelson*, 917 F.2d 1552, 1557 n.4 (11th Cir. 1990) (interpreting the Federal Tort Claims Act's text that the remedy against the United States provided under that law is exclusive of "any other civil action or proceeding" to mean that "an action against the United States is the *sole* remedy for those injured by negligent and wrongful acts of government employees and all actions against the employees are precluded" (emphasis in original)); *see also Trupei v. United States*, 304 F. App'x 776, 782 (11th Cir. 2008) (finding that plaintiff failed to state a claim against any of the non-United States defendants under the FTCA because the FTCA provides that its remedy against the United States is "exclusive of any other civil action or proceeding").

Moreover, the plain text of subpart (B) – the portion of the Act Plaintiff does not quote – does not contain the phrase "any other civil action," found in subpart (A).  In subpart (B), Congress expressly bars "**an action** under [Title III]" – not another action – when a person brings a civil action under any provision of law other than Title III that arises out of a claim otherwise actionable under the Act.  *Id.* § 6082(f)(1)(B) (emphasis added).  When "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion."  *In re*

---

[23]   Plaintiff summarily contends that Defendants' example of how courts within the Eleventh Circuit have enforced a similar election of remedies provision is inapposite.  Not so.  Defendants agree that the Court need not look beyond "what Congress actually said in the Helms-Burton Act" regarding election of remedies because that text is unambiguous.  But should the Court find the Act ambiguous in this respect, Defendants' analogy to the FTCA and Alabama Age Discrimination in Employment Act ("AADEA") does show how courts interpret similarly worded statutes.  Namely, when read as a whole, the AADEA's applicable language reflects an intent to create an alternative remedy, not just the avoidance of redundant adjudications.  *See Forsyth v. NHC Place/Anniston, LLC, Inc.*, No. 1:18-CV-00663, 2018 WL 4909953, at *3 (N.D. Ala. Oct. 10, 2018) (finding that the AADEA bars a plaintiff from bringing claims under the AADEA and its federal equivalent in the same action based on a "reading [of] the [AADEA] as a whole").  Defendants accurately note in their Motion that several courts have strictly enforced election of remedies provisions, as the court did in *Forsyth*.  Here, the Court should similarly find that, like the AADEA, the Act as a whole denotes Congress' intent to create an alternative remedy.  *Id.*

*Vann*, 67 F.3d 277, 281 (11th Cir. 1995) (citation omitted); *see also Garcia-Bengochea v. Carnival Corp.*, No. 1:19-CV-21725, 2020 WL 4590825, at \*4 n.7 (S.D. Fla. July 9, 2020) (dismissing Title III case on the basis that defendant's interpretation of the Act's cut-off date was "supported by the surrounding statutory context").  To extent the Court finds that Congress chose to restrict subpart (A) to bar only separate actions by including the phrase "any other civil action," the exclusion of that phrase in subpart (B) demonstrates that Congress did not intend to so restrict subpart (B). [24]

Thus, in sum, subpart (A) prohibits Plaintiff, which has brought an action under Title from bringing its civil conspiracy claim.  Alternatively, subpart (B) prohibits Plaintiff, which has brought an action under the common law for civil conspiracy that arises out of a claim for which an action would otherwise be cognizable under the Act, from bringing an action under Title III on that same claim.[25]  Regardless of which subpart the Court applies, the result is the same.  Plaintiff's Complaint should be dismissed because Plaintiff brought a Title III and a common law conspiracy claim based on the same facts, which the Act expressly prohibits.

## CONCLUSION

For the foregoing reasons, the Court should enter an Order granting the Motion and dismissing the Complaint with prejudice.

---

[24]     If Plaintiff's interpretation of subpart (A)'s language is right, subpart (A) does not bar this action for Title III and civil conspiracy claims, but subpart (B) does.  The Court should not interpret these subparts in such a way that renders them incompatible and contradictory of one another.  *See In re Shek*, 947 F.3d 770, 777 (11th Cir. 2020) (citation omitted) ("We must interpret statutes 'harmoniously,' reconciling separate sections so that they are compatible and not contradictory.")

[25]     Plaintiff concedes that it "relies [at least] in part on its allegations supporting its Helms-Burton Act claims" in alleging its conspiracy claim against Defendants.  Opp. 27.  That Plaintiff also alleges details concerning a purported scheme to use the port of Miami does not take away from the fact that "[w]hile conspiracy allegations may be pled to connect someone to an actionable tort committed by another, *where the substantive tort is already plead against the parties* . . . the conspiracy claim will be dismissed as duplicative."  *Miller v. Gizmodo Media Grp., LLC*, No. 18-24227, 2019 WL 1790248, at \*12 (S.D. Fla. Apr. 24, 2019), *reconsideration denied*, 2019 WL 5864176 (S.D. Fla. June 5, 2019) (emphasis in original) (citation omitted).  Since Plaintiff's civil conspiracy claim alleges nothing more than an agreement among Defendants to violate Title III, the duplicative nature of Plaintiff's civil conspiracy count alone serves as an independent basis for its dismissal.  *See id.*

Dated: November 12, 2020.

Respectfully submitted,

Pedro A. Freyre
Florida Bar No.: 192140
Email:  pedro.freyre@akerman.com
Naim S. Surgeon
Florida Bar No.: 101682
Email:  naim.surgeon@akerman.com
AKERMAN LLP
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, Florida 33131
Telephone: (305) 374-5600
Facsimile:  (305) 349-4654

Martin Domb
Admitted *pro hac vice*
Email: martin.domb@akerman.com
AKERMAN LLP
520 Madison Ave.
20th Floor
New York, New York 10022
Telephone: (212) 880-3880
Facsimile: (212) 880-8965

By:  */s/ Pedro A. Freyre*

*Attorneys for Defendants*
*BBC Chartering USA, LLC and*
*BBC Chartering Singapore Pte Ltd.*

HOGAN LOVELLS US LLP
600 Brickell Avenue
Suite 2700
Miami, Florida  33131
Telephone:      (305) 459-6500
Facsimile:      (305) 459-6550

By:      */s/ Allen P. Pegg*
        Allen P. Pegg
        Fla. Bar No. 597821
        allen.pegg@hoganlovells.com
        Richard C. Lorenzo
        Fla. Bar No. 071412
        richard.lorenzo@hoganlovells.com
        Reginald Cuyler Jr.
        Fla. Bar No. 114062
        reginald.cuyler@hoganlovells.com

        *Counsel for Goldwind International*
        *Holdings (HK) Ltd.*

By: */s/ Robert M. Brochin*
Robert M. Brochin
Florida Bar No. 0319661
bobby.brochin@morganlewis.com
Matthew Papkin
Florida Bar No. 106565
matthew.papkin@morganlewis.com
Sarah J. Cohen
Florida Bar No. 1010683
sarah.cohen@morganlewis.com
Morgan, Lewis & Bockius LLP
200 South Biscayne Boulevard
Suite 5300
Miami, Florida  33131-2339
Telephone:  305.415.3000
Facsimile:  305.415.3001

John M. Vassos (admitted *pro hac vice*)
john.vassos@morganlewis.com
101 Park Avenue
New York, NY 10178
Telephone:  212.309.6000
Facsimile:  212.309.6002

Carl A. Valenstein (admitted *pro hac vice*)
carl.valenstein@morganlewis.com
One Federal Street
Boston, MA 02110
Telephone:  617.341.7700
Facsimile:  617.341.7701

*Counsel for Defendant*
*DSV AIR & SEA, INC.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2020, the foregoing was filed with the Clerk of Court using CM/ECF, which will serve a Notice of Electronic Filing on all counsel of record.

By:  */s/ Allen P. Pegg*

22