UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 20-cv-22471-GAYLES/OTAZO-REYES

**NORTH AMERICAN SUGAR INDUSTRIES INC.,**

    **Plaintiff,**

v.

**XINJIANG GOLDWIND SCIENCE & TECHNOLOGY CO., LTD., et al.,**

    **Defendants.**

_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendants' Motion to Dismiss Complaint (the "Motion") [ECF No. 54]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons set forth below, the Motion shall be granted in part.

### BACKGROUND

This action is one of several that United States nationals, including Plaintiff North American Sugar Industries Inc., have filed following the Trump Administration's activation of Title III of the Cuban Liberty and Democratic Solidarity Act of 1996, 22 U.S.C. § 6021, *et seq.* (the "Act") on May 2, 2019. In each of these actions, the plaintiffs seek compensation under the Act from defendants who have profited from using property in Cuba that plaintiffs owned before the Cuban revolution. Here, Defendants Goldwind International Holding (HK) Ltd. ("Goldwind International"), Xinjiang Goldwind Science & Technology Co., Ltd. ("Goldwind Science")[1], DSV Air & Sea Inc. ("DSV"), BBC Chartering USA, LLC ("BBC USA"), and BBC Chartering

---

[1] When Goldwind International, DSV, BBC USA, and BBC Singapore filed the Motion, Plaintiff had not served Goldwind Science with the Complaint. On June 4, 2021, following service, Goldwind Science filed a notice that it joined in the Motion. [ECF No. 108].

1

Singapore PTE LTD ("BBC Singapore") (collectively the "Defendants") have moved to dismiss arguing Plaintiff lacks standing and fails to state a claim.

## I. Plaintiff's Claim to Property Confiscated by the Cuban Government

For the fifty years leading up to the Cuban revolution, Plaintiff owned and operated a large sugar production and refining enterprise in Cuba. [ECF No. 1 ¶ 19]. Plaintiff's assets in Cuba included land, crops, farm buildings, power-generation systems, a railroad, and commercial shipping ports including Puerto Carupano (collectively the "Confiscated Property"). *Id.* ¶¶ 2, 63, & 65. On July 20, 1960, the Cuban government expropriated the Confiscated Property, and Plaintiff stopped its operations in Cuba. *Id.* at ¶¶ 69–70.

In 1964, Congress established the Cuba Claims Program under which the United States Foreign Claims Settlement Commission ("FCSC") would determine the validity and amount of claims by United States nationals against the Cuban government for losses resulting from the expropriation of their property. 22 U.S.C. § 1643b(a). On March 26, 1969, FCSC certified that Plaintiff suffered losses in the amount of $97,373,414.72 resulting from the Cuban government's expropriation of the Confiscated Property (the "Certified Claim"). [ECF No. 1-1 at 21]. Of the $97 million Certified Claim, FCSC valued Plaintiff's loss of Puerto Carupano at $2,228,000.00. *Id* at 14.

## II. Congress Passes the Act

In 1996, Congress passed the Act, in part, to deter trafficking in property wrongly confiscated by the Cuban government. 22 U.S.C. § 6081. To achieve this purpose, Congress established "a new statutory remedy available (if not suspended) to 'United States nationals who were the victims of these confiscations . . . [to] deny traffickers any profits from economically exploiting Castro's wrongful seizures.'" *Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251, 1255

(11th Cir. 2006) (quoting 22 U.S.C. § 6081(11)). Under the Act, "any person that . . . traffics in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national who owns the claim to such property for money damages . . . ." 22 U.S.C. § 6082(a)(1)(A). Claims certified by the FCSC are presumed to be "the amount for which a person is liable." 22 U.S.C. § 6082(a)(2).

The Act includes a provision which grants the President the ability to suspend the right to bring a private action under it for successive six-month periods. 22 U.S.C. § 6085(c). From its enactment in 1996 until 2019, every President suspended the Act's private action provision. On May 2, 2019, President Trump allowed the suspension to expire and opened the door for this action.

### III. The Herradura Wind Farm Project

The Cuban government is constructing a large-scale wind power project (the "Project") located in the Cuban province of Las Tunas, about 15 miles from Puerto Carupano. [ECF No. 1 ¶ 82].[2] The Project will house 54 wind turbines and is expected to significantly increase Cuba's renewable energy capacity. *Id.* at ¶ 85. Equipment for the Project is imported through Puerto Carupano. *Id.* at ¶ 82.

Goldwind International contracted with Cuba's Ministry of Energy and Mining to supply the Project with wind turbines and other equipment. *Id.* at ¶ 88. Goldwind International and Goldwind Science worked with shipping carriers DSV, BBC USA, and BBC Singapore to transport equipment to Cuba for the Project. *Id.* at ¶ 103. Specifically, Plaintiff contends that in late 2018 and early 2019, Defendants coordinated two shipments of equipment for use in the

---

[2] Plaintiff does not allege that the Project is located on the Confiscated Property.

Project that were delivered and unloaded at Puerto Carupano.³ *Id.* at ¶¶ 104–88. Plaintiff also alleges—without any additional detail—that multiple other shipments of equipment from Goldwind Science and Goldwind International arrived at Puerto Carupano for use in the Project. *Id.* at ¶ 184.

### IV. The Bankruptcy Proceeding

In their Motion, Defendants allege that on April 1, 2019, Plaintiff, Plaintiff's parent companies, and thirteen additional co-debtors (collectively, the "Hexion Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Proceeding"). [ECF No. 54].⁴ According to Defendants, Plaintiff did not mention the Certified Claim or any Act related claims in its filings for the Bankruptcy Proceeding. *Id.* On June 25, 2019, the bankruptcy court confirmed the Hexion Debtors' Reorganization Plan, which became effective on July 1, 2019.

### V. This Action

On June 15, 2020, Plaintiff filed this action against Defendants for violations of the Act (Counts 1-3) and for conspiracy under Florida law (Count IV). [ECF No. 1]. Plaintiff alleges that Defendants trafficked in and benefited from the Confiscated Property by supplying and/or coordinating the shipment of equipment that they knew or had reason to know would be unloaded at Puerto Carupano without Plaintiff's authorization. *Id.* at ¶¶ 103, 204, 218, & 234.

Defendants now jointly move to dismiss the Complaint, alleging (1) Plaintiff lacks Article III standing; (2) Plaintiff's failure to disclose its Certified Claim and its Act-related claims in the

---

³ Plaintiff alleges that Defendants hid their travel from United States Authorities at the Miami Seaport to circumvent Cuban sanction regulations. *See* [ECF No. 1, ¶¶ 120-22, 128-130, 136, 144, & n. 24].
⁴ Defendants attached pleadings from the Bankruptcy Proceeding to their Motion. [ECF Nos. 54-2—54-18].

Bankruptcy Proceeding bar this action; and (3) Plaintiff fails to state a claim. [ECF No. 54].[5] As set forth below, the Court finds that Plaintiff has adequately alleged its Article III standing to bring this action. However, because the Court finds that the Complaint is a shotgun pleading, it does not address whether Plaintiff has adequately alleged the elements of its claims or whether the Bankruptcy Proceeding has any impact on this litigation.

## LEGAL STANDARD

A motion to dismiss for lack of subject matter jurisdiction brought pursuant to Federal Rule of Civil Procedure 12(b)(1) may present either a facial or a factual challenge to the complaint. *See McElmurray v. Consol. Gov't*, 501 F.3d 1244, 1251 (11th Cir. 2007). In a facial challenge, a court is required only to determine if the plaintiff has "sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1251 (internal quotation omitted). By contrast, a factual attack "challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered." *Id.* Defendants' Motion launches a facial attack on Plaintiffs' standing.

## DISCUSSION

**I. Standing**

"Article III of the Constitution limits federal courts to deciding 'Cases' or 'Controversies.'" *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (en banc) (citing U.S. Const. art. III, § 2). The doctrines of standing, ripeness, and mootness govern whether an action presents an actual case or controversy. *Id.* At issue here is the doctrine of standing.

Standing "is a threshold question that must be explored at the outset of any case." *Corbett v. Transp. Sec. Admin*, 930 F.3d 1225, 1232 (11th Cir. 2019). It is not a "mere pleading requirement[]

---

[5] Defendants have also filed separate motions to dismiss for lack of personal jurisdiction. *See* [ECF Nos. 48, 52, 53, & 107].

but rather an indispensable part of the plaintiff's case . . . ." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To establish Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (*citing Lujan*, 504 U.S. at 560–61). "In plainer language, the plaintiff needs to show that the defendant harmed him, and that a court decision can either eliminate the harm or compensate for it." *Muranksy*, 979 F.3d at 924.

### A. Injury-In-Fact

Injury in fact is "the '[f]irst and foremost' of standing's three elements." *Spokeo*, 136 S. Ct. at 1547 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). To demonstrate an injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). "At the pleading stage of a case, 'general factual allegations of injury' can suffice." *Muranksy*, 979 F.3d at 924 (quoting *Lujan*, 504 U.S. at 561).

#### 1. Legally Protected Interest

"No legally cognizable injury arises unless an interest is protected by statute or otherwise." *Havana Docks Corp. v. MSC Cruises SA Co.*, 484 F. Supp. 3d 1177, 1191 (S.D. Fla. 2020) (quoting *Cox Cable Commc'ns, Inc. v. United States*, 992 F.2d 1178, 1182 (11th Cir. 1993)).[6] "That interest must consist of obtaining compensation for, or preventing, the violation of a legally protected right." *Id.* (internal citations and quotations omitted). Here, Plaintiff's legally protected interest

---

[6] In September 2020, United States District Judge Beth Bloom issued orders finding Plaintiff Havana Docks Corporation had standing in three related Helms Burton Act cases in this district filed against cruise ship operators docking in Cuba. *Havana Docks Corp. v. MSC Cruises SA Co.*, 484 F. Supp. 3d 1177 (S.D. Fla. 2020); *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 484 F. Supp. 3d 1215 (S.D. Fla. 2020); *Havana Docks Corp. v. Carnival Corp.*, No. 19-CIV-21724, 2020 WL 5517590 (S.D. Fla. Sept. 14, 2020) (the "*Havana Docks* cases"). The Court cites to the *Havana Docks v. MSC Cruises* order, but the holdings in all the *Havana Docks* cases are the same.

arises from the Act, under which "trafficking in confiscated property is an invasion of a legally protected interest—i.e. a statutorily constructed property interest in the Subject Property, which conveys a *right* to prevent third-party use of the same." *Id.* (emphasis in original).[7]

### 2.  Concrete

Though Plaintiff has alleged an invasion of a legally protected interest, it must still allege that it has suffered a concrete injury. *Salcedo v. Hanna*, 936 F.3d 1162, 1167 (11th Cir. 2019).[8] A concrete injury is "real" and not "abstract." *Spokeo*, 136 S. Ct. at 1548; *see also Muransky*, 979 F.3d at 925 ("A lot of ink has been spilled to explain what concrete means, but the best word may also be the simplest–'real.'") (quoting *Spokeo*, 136 S. Ct. at 1548).

"The Supreme Court has explained that "[c]entral to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms.'" *Glen v. American Airlines, Inc.*, No. 20-10903, 2021 WL 3285307, at *2 (5th Cir. Aug. 2, 2021). Here, Plaintiff alleges that it was harmed when Defendants used Puerto Carupano for their own profit and without authorization from, or "a speck of compensation" to, Plaintiff. [ECF No. 1 ¶¶ 1, 7, 11]. This harm "bears a close relationship to unjust enrichment, which has indisputable common-law roots." *Glen*, 2021 WL 3285307, at *2. Indeed, Congress passed the Act, in part, because it found the remedies for "unjust enrichment from the use of wrongfully confiscated property . . . by private entities at the expense of the rightful owners of the property" to be ineffective. 22 U.S.C. § 6081(8). *See Havana Docks*, 484 F. Supp. 3d at 1192 (finding a

---

[7] While the act of state doctrine generally requires courts to assume the validity of a foreign sovereign's public actions on its own soil, such as the Cuban government's expropriation of property, "the Act reverses that assumption by abrogating the act-of-state doctrine in cases such as this." *Glen v. American Airlines, Inc.*, No. 20-10903, 2021 WL 3285307, at * 3 (5th Cir. Aug. 2, 2021).
[8] Plaintiff's injury must also be particularized and actual or imminent. *See Spokeo*, 136 S. Ct. at 1547. It is undisputed, and the Court agrees, that Plaintiff's alleged injury is particularized and actual.

concrete injury where the plaintiff "allege[d] that [defendant] profited from its use of the Subject Property at [plaintiff's] expense."). Accordingly, the Court finds that Plaintiff has alleged a concrete harm.

### B.  Traceability

To have standing, Plaintiff must also show that its injuries are "fairly traceable" to Defendants' use of Puerto Carupano. *Spokeo*, 136 S. Ct. at 1547. "To show traceability, a plaintiff must allege that his injury is 'connect[ed] with the conduct about which he complains.'" *Glen*, 2021 WL 3285307 (quoting *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018)). Plaintiff alleges that Defendants profited from their use of Puerto Carupano without compensating Plaintiff. *See* [ECF No. 1 ¶¶ 1, 7, 11]. Accordingly, like in *Glen* and the *Havana Docks* cases, "there exists a direct causal link between a claimant's injury from the Cuban Government's expropriation of their property and a subsequent trafficker's unjust enrichment from its use of that confiscated property." *Havana Docks*, 484 F. Supp. 3d at 1230. Therefore, the Court finds Plaintiff has adequately alleged traceability.[9]

### C.  Redressability

"The element of redressability requires that 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Hollywood Mobile Estates, Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1266 (11th Cir. 2011) (quoting *Lujan*, 504 U.S. at 561)). The parties do not dispute, and the Court agrees, that the element of redressability is properly alleged here. Accordingly, Plaintiff has sufficiently established, at this stage of the litigation, that

---

[9] While Plaintiff has adequately alleged traceability, the Court notes that Defendants raise legitimate merits-based arguments regarding the purported amount of Plaintiff's damages. Relying exclusively on the Act, Plaintiff alleges that its harm should be valued at the full amount of its Certified Claim. Yet the Complaint details only two shipments made by Defendants and that Defendants only touched Puerto Carupano—not all the Confiscated Property. However, this dispute over the amount of Plaintiff's actual damages does not affect Plaintiff's standing.

it has standing, and the Motion shall be denied on this ground.

**II.     Bankruptcy Proceeding**

Defendants argue that Plaintiff's failure to disclose its Certified Claim or Act-related claims in the Bankruptcy Proceeding bars this action. The Court finds that it is premature to address these issues.

First, Defendants allege that Plaintiff is judicially estopped from bringing this action because it did not disclose the Certified Claim or Act-related claims in the Bankruptcy Proceeding. "[A] district court may apply judicial estoppel when a two-part test is satisfied: the plaintiff (1) took a position under oath in the bankruptcy proceeding that was inconsistent with the plaintiff's pursuit of the civil lawsuit and (2) intended to make a mockery of the judicial system." *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1180 (11th Cir. 2021). To make this determination, the Court must "consider all the facts and circumstances in determining whether the plaintiff acted with the intent to make a mockery of the judicial system." *Id.* Even if the Court were to take judicial notice at this juncture of Plaintiff's bankruptcy filings,[10] it cannot resolve the fact-intensive inquiry into Plaintiff's intent on a motion to dismiss. Indeed, as an affirmative defense, judicial estoppel is best addressed following discovery on a motion for summary judgment. *See Allen v. Senior Home Care*, No. 14-81408, 2015 WL 1097408 at * 2 (S.D. Fla. Mar. 11, 2015) (holding that the court could not rule on the defendant's affirmative defense of judicial estoppel at the motion to dismiss stage).

---

[10] Defendants ask the Court to take judicial notice of some of the documents filed in the Bankruptcy Proceeding. The Court declines to do so at this stage of the litigation. *See Brown v. Brock*, 169 F. App'x 579, 582 (11th Cir. 2006) ("As a general rule, a court in one case will not take judicial notice of its own records in another and distinct case even between the same parties, unless the prior proceedings are introduced into evidence.") (quoting *Concordia v. Bendekovic*, 693 F.2d 1073, 1076 (11th Cir. 1982)); *Allen v. Senior Home Care,* No. 14-81408, 2015 WL 1097408 at *2 (S.D. Fla. Mar. 11, 2015) (declining to take judicial notice of a plaintiff's prior bankruptcy proceeding records on a motion to dismiss).

Second, Defendants argue that Plaintiff failed to properly reserve its right to bring this action in the Reorganization Plan and that, therefore, Plaintiff has no standing.[11] In particular, in the reply in support of their Motion, Defendants argue that Plaintiff's failure to reserve its rights stripped Plaintiff of its constitutional standing to bring this action. Defendants' argument, however, conflates constitutional and prudential standing.

Prudential standing does not relate to the Court's constitutional power to adjudicate a case. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014). Rather, it encompasses "three broad principles: the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Id.* at 126 (internal quotations and citations omitted).

As set forth in detail above, Plaintiff has adequately alleged standing under Article III of the constitution to bring these claims. *See infra* § I. Plaintiff's ability to bring these cases post-confirmation of the Reorganization Plan, however, relates to prudential standing. Indeed, Defendants challenge Plaintiff's ability to raise legal rights that might now belong to the bankruptcy estate. *See e.g. In re Godon, Inc.*, 275 B.R. 555, 565 (E.D. Ca. 2002) (referring to the authority that creditors acquire to recover property for the benefit of the estate under § 1123(b)(3)(B) as "statutory standing.").[12] But issues of prudential standing do not implication the Court's jurisdiction. *Id.* When prudential standing is at issue, "the question is whether Plaintiffs

---

[11] Pursuant to 11 U.S.C. § 1123(b)(3), a reorganization plan may provide for the debtor to reserve their rights with respect to designated claims or causes of action.

[12] Defendants' reliance on *In re Bay Circle Properties, LLC*, 955 F.3d 874 (11th Cir. 2020) is misplaced. *In re Bay Circle* dealt with an appeal of a bankruptcy court's order by an individual who never owned the property at issue on appeal. As a result, the Eleventh Circuit held that the appellee had not suffered the requisite injury in fact to establish standing to bring the appeal. Here, as detailed above, Plaintiff has alleged an injury-in-fact.

have a valid cause of action, and 'the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction.'" *Newton v. Duke Energy* Florida*, LLC*, 895 F.3d 1270, 1274 n.6 (11th Cir. 2018) (quoting *Lexmark,* 572 U.S. at 134 S. Ct. at 1387 n.4). Therefore, a determination of whether Plaintiff properly reserved its claims in the Reorganization Plan is best resolved at summary judgment. Accordingly, the Motion to dismiss on this ground shall be denied without prejudice.

### III.   Shotgun Pleading

Though Plaintiff has adequately alleged Article III standing, the Complaint must be dismissed as a shotgun pleading.

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as shotgun pleadings." *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015)*.* (internal quotation marks omitted). The Eleventh Circuit generally considers a complaint to be a shotgun pleading if it: (1) "contain[s] multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint," *id.* at 1321; (2) is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," *id.* at 1321–22; (3) fails to "separate[e] into a different count each cause of action or claim for relief," *id.* at 1322–23; or (4) "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against," *id.* at 1323. Shotgun pleadings "fail to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests . . . [and] waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on

appellate court dockets, and undermine the public's respect for the courts." *Arrington v. Green*, 757 F. App'x 796, 797 (11th Cir. 2018) (internal quotations and citations omitted).

Here, the Complaint improperly incorporates all the factual allegations into each count, without properly tying each of those factual allegations to the claims raised. *See Innova Inv. Grp., LLC v. Village of Key Biscayne*, No. 19-CIV-22540, 2020 WL 6781821, at *5 (S.D. Fla. Nov. 18, 2020). In addition, each count adopts the allegations of all preceding counts. *Weiland*, 792 F.3d at 1321. As a result of these pleading deficiencies, the Court is unable to ascertain which facts support which claims and whether Plaintiff has stated any claims upon which relief can be granted. Therefore, the Complaint shall be dismissed without prejudice.

## Conclusion

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss Complaint, [ECF No. 54], is **GRANTED in PART**. The Complaint is dismissed without prejudice.

2. Defendants' Motions to Dismiss for Lack of Personal Jurisdiction, [ECF Nos. 48, 52, 53, & 107], are **DENIED as MOOT** as there is no longer an operative complaint. Defendants may refile their respective motions based on lack of personal jurisdiction, supplemented by the facts obtained during jurisdictional discovery, upon the filing of an amended complaint.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 24th day of August, 2021.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE