UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-22471-CIV-GAYLES/OTAZO-REYES

NORTH AMERICAN SUGAR INDUSTRIES, INC.,

    Plaintiff,

v.

XINJIANG GOLDWIND SCIENCE & TECHNOLOGY
CO., LTD., GOLDWIND INTERNATIONAL
HOLDINGS (HK) LTD., DSV AIR & SEA INC.,
BBC CHARTERING USA, LLC, and
BBC CHARTERING SINGAPORE PTE LTD.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Defendant BBC Chartering USA, LLC's ("BBC USA") Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction (hereafter, "BBC USA's Motion to Dismiss") [D.E. 197]; Defendant BBC Chartering Singapore PTE Ltd.'s ("BBC Singapore") Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction (hereafter, "BBC Singapore's Motion to Dismiss") [D.E. 198]; Defendant DSV Air & Sea Inc.'s ("DSV US") Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction (hereafter, "DSV US' Motion to Dismiss") [D.E. 201]; and Defendants Xinjiang Goldwind Science & Technology Co., Ltd. ("Goldwind Science") and Goldwind International Holdings (HK) Ltd.'s ("Goldwind International") (Goldwind Science and Goldwind International, together, "Goldwind" or "Goldwind Defendants") Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction (hereafter, "Goldwind's Motion to Dismiss") [D.E. 202, filed under seal] (collectively, "Motions to Dismiss for Lack of Personal Jurisdiction").  These matters were referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Darrin P. Gayles, United

States District Judge [D.E. 251]. The undersigned held a hearing on these matters on June 21, 2022 (hereafter, "Hearing"). For the reasons stated below, the undersigned respectfully recommends that the Motions to Dismiss for Lack of Personal Jurisdiction be GRANTED.

## PROCEDURAL AND FACTUAL BACKGROUND

On June 15, 2020, Plaintiff North American Sugar Industries, Inc. ("Plaintiff") commenced this action against Defendants BBC USA, BBC Singapore (BBC USA and BBC Singapore, together, "BBC Defendants"), DSV US, and the Goldwind Defendants (BBC Defendants, DSV US, and Goldwind Defendants, together, "Defendants"), asserting claims for violations of the Cuban Liberty and Democratic Solidarity Act of 1996, 22 U.S.C. §§ 6021–6091 (hereafter, "Helms-Burton Act"). See Compl. [D.E. 1].

Defendants moved to dismiss the Complaint for lack of personal jurisdiction, see Motions to Dismiss [D.E. 48, 52, 53, 107], and failure to state a claim, see Joint Motion to Dismiss [D.E. 54]. Thereafter, Plaintiff sought leave to conduct jurisdictional discovery on personal jurisdiction as to all Defendants. See Motions for Jurisdictional Discovery [D.E. 59, 120]. The Court granted these Motions for Jurisdictional Discovery, see Paperless Orders [D.E. 80, 122], as well as several extensions of the deadline by which to complete the jurisdictional discovery, see Paperless Orders [D.E. 125, 143, 144, 155, 184]. On August 24, 2021, the Court granted in part Defendants' Joint Motion to Dismiss [D.E. 54] and denied as moot their Motions to Dismiss for lack of personal jurisdiction [D.E. 48, 52, 53, 107]. See Order [D.E. 145].

On November 1, 2021, after the conclusion of jurisdictional discovery, Plaintiff filed its First Amended Complaint (hereafter, "Amended Complaint") [D.E. 189]. Therein, Plaintiff, a New Jersey corporation formerly known as the Cuban-American Sugar Company, alleges that Defendants trafficked in Plaintiff's property, which was confiscated by the Cuban government

between 1959 and 1960, and are therefore liable to Plaintiff under Title III of the Helms-Burton Act, 22 U.S.C. §§ 6081–6085 (hereafter, "Title III"). Id. ¶¶ 1, 17. Plaintiff's property consists of a Cuban port called Puerto Carupano ("the Property"). Id. ¶¶ 2, 4. According to Plaintiff, Defendants conspired to transport wind turbine blades from Tianjin, China to Carupano, Cuba aboard the *Jade* and *Moonstone* ships, which made stops at the Port of Miami. Id. ¶¶ 4–5. The blade cargoes were eventually unloaded at the Property and were to be used in the Herradura Wind Farm Project by the Cuban company Empresa Importadora-Exportadora de Objetivos Electro-Energéticos ("Energoimport"). Id. The alleged scheme is described by Plaintiff as follows:

➤ In 2013, Goldwind Science, a corporation organized and existing under the laws of China and with its principal place of business in China, contracted with Energoimport to supply Energoimport with wind turbine blades via the Property. In 2018, Goldwind Science secured insurance and other documentation for the blade cargoes aboard the *Jade* and *Moonstone*; and entered into an agreement with a non-party blade manufacturer (hereafter, "Blade Supply Agreement") that ultimately governed the preparation and delivery of the cargoes.

➤ Goldwind International, a corporation organized and existing under the laws of Hong Kong and with its principal place of business in China, negotiated and signed the contract with Energoimport on behalf of Goldwind Science (hereafter, "Wind Farm Agreement") and thereafter facilitated the *Jade* and *Moonstone* voyages.

➤ DSV US, a corporation organized and existing under the laws of Delaware and with its principal place of business in New Jersey, provided transportation and logistical services to facilitate the *Jade* and *Moonstone* voyages, which involved analyzing United States regulatory requirements and trade laws and executing filings with United States customs authorities. DSV US' affiliate, non-party DSV Air & Sea A/S ("DSV Denmark"), functioned as the Non-Vessel Operating Common Carrier ("NVOCC") for both shipments.

➤ BBC USA, a company organized and existing under the laws of Texas and with its principal place of business in Bellaire (Houston), Texas, assisted with logistical and compliance issues for the *Jade*'s and *Moonstone*'s stops in Miami and provided logistical support at the Property. BBC USA also signed a charter agreement on behalf of its affiliate, non-party BBC Chartering Carriers GmbH & Co. KG ("BBC Carriers"), to transport an unrelated shipment of cargo aboard the *Moonstone* for BBC Carriers' client, McDermott, located in Port Arthur, Texas. BBC USA was involved in concealing from McDermott and United States authorities the *Moonstone*'s stop in Cuba before the ship proceeded to Port Arthur.

3

> ➢ BBC Singapore, a corporation organized and existing under the laws of the Republic of Singapore and with its principal place of business in Singapore, chartered and supported the *Jade* and *Moonstone* ships pursuant to a chartering agreement with DSV Denmark (hereafter, "DSV-BBC Chartering Agreement"); participated in discussions about the ships' regulatory compliance; corresponded with port agents located in the Port of Miami about the *Jade*'s stop to help facilitate the *Moonstone*'s subsequent stop; and also participated in concealing from McDermott and United States authorities the *Moonstone*'s stop in Cuba. The BBC Defendants' affiliate, non-party BBC Carriers, functioned as the Vessel Operating Common Carrier ("VOCC") for both shipments.

See Am. Compl. [D.E. 189]. Based on these allegations, Plaintiff asserts individual claims for trafficking in confiscated property in violation of 22 U.S.C. § 6082 against each of the five Defendants (Counts I–V), and a claim for civil conspiracy under Florida law against all of the Defendants (Count VI). Id. ¶¶ 135–94. Plaintiff seeks to recover from Defendants the money damages allowed by Title III, 22 U.S.C. §§ 6082(a), plus interest and attorneys' fees and costs. Id.

On December 6, 2021, Defendants filed the instant Motions to Dismiss for Lack of Personal Jurisdiction [D.E. 197–98, 201, 202].[1] In support of their argument that this Court lacks personal jurisdiction over them, Defendants have proffered: the Declaration of BBC USA's President Per Petersen ("Petersen") (hereafter, "Peterson Declaration") [D.E. 199]; the Declaration of BBC Singapore's Managing Director Lars Schoennemann ("Schoennemann") (hereafter, "Schoennemann Declaration") [D.E. 200]; the Declaration of DSV US' Director of Quality & Compliance Kenneth Witkowski ("Witkowski") (hereafter, "Witkowski Declaration") [D.E. 201-1]; the Declaration of Goldwind Science's Legal Director Li Guoliang ("Li") (hereafter, "Li Declaration") [D.E. 202-1, filed under seal]; and the Declaration of Goldwind International's Chief

---

[1] On December 22, 2021, Defendants also filed four motions to dismiss the Amended Complaint for failure to state a claim [D.E. 214–17]. These motions have not been referred to the undersigned and remain pending before the Court.

Financial Officer Zhu Hui ("Zhu") (hereafter, "Zhu Declaration") [D.E. 202-2, filed under seal].[2]

On January 14, 2022, Plaintiff filed its Consolidated Opposition to Defendants' Motions to Dismiss for Lack of Personal Jurisdiction (hereafter, "Response") [D.E. 218].[3] On February 18, 2022: BBC USA filed its Reply in Support of its Motion to Dismiss (hereafter, "BBC USA's Reply") [D.E. 238]; BBC Singapore filed its Reply in Support of its Motion to Dismiss (hereafter, "BBC Singapore's Reply") [D.E. 239]; the Goldwind Defendants filed their Reply in Support of their Motion to Dismiss (hereafter, "Goldwind's Reply") [D.E. 240, filed under seal]; and DSV US filed its Reply in Support of its Motion to Dismiss (hereafter, "DSV US' Reply") [D.E. 241].

After the Hearing on the Motions to Dismiss for Lack of Personal Jurisdiction, the parties filed post-hearing briefs. See Plaintiff's Post-Hearing Brief [D.E. 260]; BBC Defendants' Post-Hearing Brief [D.E. 262]; DSV US' Post-Hearing Brief [D.E. 263]; Goldwind's Post-Hearing Brief [D.E. 264].[4] On August 17, 2022, Defendants submitted a Notice of Supplemental Authority in Support of their Motions to Dismiss for Lack of Personal Jurisdiction [D.E. 275]; and on August 24, 2022, Plaintiff filed a Response to Defendants' Notice of Supplemental Authority [D.E. 276].

## APPLICABLE LAW

### 1. *Helms-Burton*

Title III of the Helms-Burton Act provides, in relevant part, as follows:

> [A]ny person that, after the end of the 3-month period beginning on the effective date of this subchapter, traffics in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national who owns the claim to such property for money damages [as set forth in subsections (i)–(ii).]

---

[2] On June 29, 2022, the undersigned denied without prejudice Plaintiff's Motion to Strike [D.E. 220] with respect to these declarations and indicated that they would be given the appropriate weight when deciding the Motions to Dismiss for Lack of Personal Jurisdiction. See Order [D.E. 258].
[3] Plaintiff also filed an unredacted version of its Response [D.E. 223, filed under seal].
[4] Plaintiff also filed an unredacted version of its post-hearing brief [D.E. 266, filed under seal].

5

22 U.S.C. § 6082(a)(1)(A).  Under Title III, "a person 'traffics' in confiscated property if that person knowingly and intentionally—(i) . . . uses . . . [the] confiscated property, (ii) engages in a commercial activity using or otherwise benefiting from [the] confiscated property, or (iii) causes, directs, participates in, or profits from, trafficking . . . by another person, or otherwise engages in trafficking . . . through another person, without the authorization of any United States national who holds a claim to the property."  Id. § 6023(13)(A).

### 2. *Personal Jurisdiction*

Rule 12(b)(2) of the Federal Rules of Civil Procedure governs motions to dismiss for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  Initially, the plaintiff must plead sufficient facts to establish a prima facie case in order to withstand such a motion to dismiss.  Virgin Health Corp. v. Virgin Enters. Ltd., 393 F. App'x 623, 625 (11th Cir. 2010).  If the defendant produces affidavits or other evidence that contradicts the plaintiff's prima facie case, the plaintiff must then offer affidavits or other competent proof and not just restate the facts in the complaint.  Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000).  All reasonable inferences should be construed in favor of the non-movant plaintiff.  PVC Windoors, Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802, 810 (11th Cir. 2010).

A two-part test is applied to determine whether a court has personal jurisdiction over a nonresident defendant.  Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11th Cir. 1990).  First, the court must consider whether the applicable state long-arm statute permits exercising personal jurisdiction over the defendant.  Id.  Florida's long-arm statute extends specific personal jurisdiction over nonresidents "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state", and "[c]ommitting a tortious act within this state."  Fla. Stat. § 48.193(1)(a)(1)&(2).  "Florida's long-arm statute is to be strictly construed."

Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996).

Once the state's long-arm statute is met, the court must then determine if there are sufficient "minimum contacts" to satisfy the Due Process Clause of the Fourteenth Amendment. Cable/Home, 902 F.2d at 855; Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). So long as the actor's efforts are "purposefully directed" to citizens of another state, physical presence is not necessary to establish "minimum contacts." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985). Nevertheless, the contacts with the forum state must not be merely "fortuitous" or "random." Id. at 475.

For a claim arising under federal law, a party may also seek to establish personal jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2) (hereafter, "Rule 4(k)(2)") if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction" and "exercising jurisdiction is consistent with the United States Constitution and laws." See Fed. R. Civ. P. 4(k)(2)(A)–(B). In conducting such constitutional analysis, "the Fifth Amendment applies because personal jurisdiction is based on a federal statute authorizing nationwide service of process, [and] the applicable forum for minimum contacts purposes is the United States, not the state in which the district court sits." SEC v. Marin, 982 F.3d 1341, 1349–50 (11th Cir. 2020) (quotation marks and citations omitted).

## THE PARTIES' ARGUMENTS

Plaintiff alleges that the Court has specific personal jurisdiction over DSV US pursuant to Fla. Stat. § 48.193(1)(a)(1). See Plaintiff's Post-Hearing Brief [D.E. 260 at 9]. Specifically, Plaintiff contends that DSV US has offices in Miami and Orlando; and that Plaintiff's trafficking claim "'aris[es]' from DSV [US'] business activities in Miami", thereby subjecting it to specific personal jurisdiction in this forum under the state's long-arm statute's business activity prong. Id.

at 13–14 (alteration in original).

Plaintiff also alleges that the Court has specific personal jurisdiction over all Defendants pursuant to Fla. Stat. § 48.193(1)(a)(2). Id. at 9. As to the Goldwind Defendants, Plaintiff argues that they affirmatively approved the *Jade*'s and *Moonstone*'s stops in Miami; and actively participated in acquiring insurance and other documentation to facilitate the ships' compliance with United States regulatory requirements. Id. at 10–11, 22–24. As to DSV US, Plaintiff argues that: DSV US "analyzed, agreed to, and facilitated the Miami stops", as evidenced by its Miami-based employee, Carol Scheid's ("Scheid"), participation in email correspondence regarding matters of customs compliance and Witkowski's regulatory analysis of the Miami stops; and DSV US prepared, filed, and furnished customs forms for the ships bearing its Miami office's address. Id. at 11–15. As to BBC Singapore, Plaintiff argues that it participated in securing legal approval of documentation for the ships, corresponded with Miami-based port agents about the *Jade*'s stop in Miami, and concealed the *Moonstone*'s stop in Cuba from McDermott and United States authorities. Id. at 15–19. As to BBC USA, Plaintiff argues that its employees reviewed and approved customs and port documentation for the ships' stops in Miami; and engaged in discussions about logistics at the Property and concealment of the *Moonstone*'s stop in Cuba. Id. at 19–22. In sum, Plaintiff argues that, in undertaking these activities, Defendants committed tortious acts within Florida, thereby subjecting themselves to specific personal jurisdiction in this forum under the state's long-arm statute's tortious act prong.

Alternatively, Plaintiff argues that BBC Singapore's and Goldwind's general contacts with the United States subject them to personal jurisdiction in the United States under Rule 4(k)(2); and that jurisdiction over all Defendants is otherwise proper via its conspiracy claim. Id. at 9, 18, 24.

Conversely, Defendants contend that this Court lacks personal jurisdiction over them

8

because they are non-resident defendants that did not take any actions in this forum with respect to the *Jade* and *Moonstone* shipments, including their stops in Miami. BBC USA argues that it "had no involvement at all" in the *Jade* voyage and "no involvement in the cargo on the *Moonstone* [that was] delivered to Cuba". See BBC USA's Motion to Dismiss [D.E. 197 at 6]. BBC Singapore argues that it "merely monitored the voyages after they left [China]" so that it could keep DSV Denmark apprised of their progress. See BBC Singapore's Motion to Dismiss [D.E. 198 at 6–7]. DSV US argues that it was "not a carrier for or a party to either of the two shipments at issue" and "did not take any actions in Florida or direct any activity at Florida that was related in any way to Plaintiff's claims". See DSV US' Motion to Dismiss [D.E. 201 at 7]. Finally, the Goldwind Defendants argue that they have no presence or contact with Florida, had no control over the decision to have the ships stop in the Port of Miami, and were otherwise uninvolved in the logistics of the *Jade* and *Moonstone* voyages. See Goldwind's Post-Hearing Brief [D.E. 264 at 3–8].

## DISCUSSION

The undersigned first addresses Plaintiff's contention that this Court has specific personal jurisdiction over Defendants with respect to Plaintiff's individual claims for trafficking under the Helms-Burton Act (Counts I–V) pursuant to the Florida long-arm statute and Rule 4(k)(2). The undersigned next addresses Plaintiff's contention that this Court may exercise personal jurisdiction over Defendants with respect to its civil conspiracy claim (Count VI) under Florida law. As discussed below, the undersigned concludes that this Court lacks personal jurisdiction over Defendants under any of Plaintiff's theories.

## I. INDIVIDUAL CLAIMS

### A. Specific Personal Jurisdiction

As noted above, Florida's long-arm statute extends specific personal jurisdiction over nonresidents for any cause of action arising from "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state" or "[c]ommitting a tortious act within this state." Fla. Stat. § 48.193(1)(a)(1)&(2). The undersigned first addresses Plaintiff's contention that this Court may exercise specific personal jurisdiction over DSV US under the business activity prong, pursuant to Fla. Stat. § 48.193(1)(a)(1), then turns to Plaintiff's contention that this Court may exercise specific personal jurisdiction over all Defendants under the tortious act prong, pursuant to Fla. Stat. § 48.193(1)(a)(2).

### 1. *Jurisdiction over DSV US pursuant to Fla. Stat. § 48.193(1)(a)(1).*

Plaintiff claims that this Court has specific personal jurisdiction over DSV US because it "operat[es], conduct[s], engag[es] in, or carr[ies] on a business or business venture in this state or [has] an office or agency in this state." Fla. Stat. § 48.193(1)(a)(1); Plaintiff's Post-Hearing Brief [D.E. 260 at 9]. "To establish that a [non-resident] defendant is conducting or carrying on a business for the purposes of Fla. Stat. § 48.193(1)(a)(1), the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." Melgarejo v. Pycsa Panama, S.A., 537 F. App'x 852, 860 (11th Cir. 2013) (quotation marks and citation omitted). Moreover, Florida's long-arm statute "requires that a plaintiff's claim 'aris[e] from' a non-resident defendant's Florida-based business operations", which in turn "requires a direct affiliation, nexus, or substantial connection to exist between the basis for the cause of action and the business activity." Id. (quotation marks and citation omitted).

DSV US counters Plaintiff's contention by arguing that, although it maintains offices in

10

Miami and Orlando, its business activity in Florida was not connected to the *Jade* and *Moonstone* shipments; and that any activity "tangentially related to the [s]hipments occurred *entirely outside of Florida* and did not involve" its Florida offices or employees. See DSV US' Motion to Dismiss [D.E. 201 at 15] (emphasis in original).   DSV US avers, in relevant part, that it was not the carrier for either shipment at issue; that it was not hired for any activity relating to either shipment; that it did not communicate with the Cuban client, Energoimport, about the delivery of blades from China to Cuba; that it did not plan or partake in the ships' routes, including their stops in Miami; and that none of its employees, including those based in Florida, were present when the ships docked in Miami or boarded the ships at any point during their voyages from China to Cuba.  See Witkowski Decl. [D.E. 201-1 ¶¶ 9–16, 22–25].  These averments support the conclusion that, "[w]hile [DSV US] has some Florida business connections, none of them were utilized in" the alleged trafficking. Saft Am., Inc. v. Jabil Cir. (Guangzhou), Ltd., No. 3:18-cv-446-J-32JBT, 2019 WL 4600401, at *6 (M.D. Fla. Sept. 23, 2019).  Thus, Plaintiff has failed to plead facts sufficient to establish a "direct affiliation, nexus, or substantial connection . . . between" DSV US' Florida-based business activity and Plaintiff's trafficking claim under the Helms-Burton Act.  Melgarejo, 537 F. App'x at 860.

Moreover, Plaintiff's reliance on: Scheid's email activity; spreadsheets prepared by non-parties containing the address of DSV US' Miami office, which address was removed on subsequent forms submitted to United States customs authorities; communications between DSV US employees based in New Jersey and Texas regarding an export license; and a compliance assessment rendered by Witkowski, who is based in New Jersey, are all insufficient to satisfy Plaintiff's burden of connecting DSV US' Florida-based business activity to the alleged trafficking.  Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd., 535 F. Supp. 3d 1299,

11

1305 (S.D. Fla. 2021), aff'd, 2022 WL 3330347 (11th Cir. Aug. 12, 2022) ("The Plaintiff fails to explain how its claim for unlawful trafficking in Cuba is related to Teck's activities in Florida".); see also Oviedo v. Ramirez, No. 21-cv-23750, 2022 WL 1641865, at *6 (S.D. Fla. May 24, 2022) ("Plaintiff fails to allege that [the] cause of action *arose out of* Sunflower's business transactions with the Florida-based companies, or that the cause of action arose out of Orchard's office in Florida.") (emphasis in original).

Therefore, Plaintiff has failed to establish that this Court has personal jurisdiction over DSV US based on the Florida long-arm statute's business activity prong.

### 2. *Jurisdiction over all Defendants pursuant to Fla. Stat. § 48.193(1)(a)(2).*

Plaintiff next argues that this Court has specific personal jurisdiction over all Defendants pursuant to Fla. Stat. § 48.193(1)(a)(2), which provides that "a nonresident is subject to personal jurisdiction in Florida for any cause of action arising from . . . committing a tortious act within Florida." Frida Kahlo Corp. v. Pinedo, No. 18-21826-Civ, 2021 WL 4147876, at *3 (S.D. Fla. Sept. 13, 2021) (quotation marks and citation omitted). "This long-arm jurisdiction even extends to defendants who committed their tortious acts outside the state if their acts 'cause injury in Florida.'" Id. (quoting Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1216 (11th Cir. 1999)). "Thus, a foreign defendant can commit a tortious act in Florida through telephonic, electronic, or written communications into Florida so long as the cause of action arises from these communications. However, the place of injury must be within Florida." Macrotrend Cap. Grp. Inc. v. Edwards, No. 18-cv-61327, 2019 WL 2106421, at *4 (S.D. Fla. Mar. 4, 2019) (quotation marks and citation omitted). Alternatively, if a "substantial aspect of the alleged tort" was committed in Florida, then the plaintiff need not have suffered his injury in Florida. Tavakoli v. Doronin, No. 18-21592-CIV, 2019 WL 1242669, at *8 (S.D. Fla. Mar. 18, 2019) (citing Williams

12

Elec. Co., Inc. v. Honeywell, Inc., 854 F.2d 389, 394 (11th Cir. 1988)).

Defendants argue that they did not commit a tortious act within Florida and that none of their actions outside of Florida caused injury in Florida. In response, Plaintiff contends that the Goldwind Defendants affirmatively approved and facilitated the Miami stops, including the acquisition of insurance for the shipments. See Plaintiff's Post-Hearing Brief [D.E. 260 at 10–11, 22–24]. Plaintiff further contends that DSV US' Scheid and Witkowski "analyzed, agreed to, and facilitated the Miami stops" and that DSV US was instrumental in the preparation and furnishment of customs forms in Miami when the *Jade* and *Moonstone* docked. Id. at 11–13. As for BBC Singapore, Plaintiff argues that it knew about the "planned U.S. stopover as early as March 2018", sought legal advice with respect to the export license and complying with United States trade laws, communicated with Port of Miami agents about takeaways from the *Jade*'s stop in Miami, and endeavored to "hide the [*Moonstone*'s] Cuba stop from U.S. entities". Id. at 15–19. Finally, Plaintiff contends that BBC USA also learned about the planned stops in March 2018, that its employees advised on the legality of the shipping plan and the substance of the customs filings, and that its Vice President was involved in discussions about logistics at the Property and in concealing the *Moonstone*'s Cuba stop from authorities. Id. at 19–22.

However, none of these purported actions resulted in an injury to Plaintiff *in Florida*. Even when construing all reasonable inferences in favor of Plaintiff, Plaintiff has not alleged that any of Defendants' conduct—from outside Florida—harmed it or others *in this state*. Posner, 178 F.3d at 1216 (acknowledging state court split regarding whether the defendant's presence in Florida is required under the long-arm statute's tortious act prong but indicating that both interpretations nevertheless require an injury to occur in Florida); see also CJS Sols. Grp., LLC v. Tokarz, No. 3:20-cv-65-MMH-JRK, 2021 WL 848159, at *9 (M.D. Fla. Mar. 5, 2021) ("[Notwithstanding this

13

split,] the Court is bound to follow firmly established [Eleventh Circuit] precedent, which interprets subsection [(1)(a)(2)] to apply to defendants committing tortious acts outside the state that cause injury in Florida.") (quotation marks and citations omitted). Though Plaintiff's Amended Complaint alleges that Defendants "engaged in unlawful trafficking" under the Helms-Burton Act, see Am. Compl. [D.E. 189 ¶¶ 135–94], these allegations are devoid of information regarding how this conduct came to injure Plaintiff, a New Jersey entity, in this forum.

Alternatively, Plaintiff argues that it need not have suffered an injury in Florida because Defendants committed a substantial aspect of the alleged tort in Florida, "meaning that those activities were essential to the success of the tort." See Response [D.E. 218 at 82] (citing Williams Elec., 854 F.2d at 394). However, the record does not support a finding that "a substantial aspect of [the] Helms-Burton Act violation" occurred in Florida. Id. at 83. Rather, the record reflects that neither the Goldwind Defendants nor BBC USA engaged in any Florida-based activities with respect to the alleged trafficking violation, much less any that were "essential to the success of the tort". Cf. Plaintiff's Post-Hearing Brief [D.E. 260 at 9–11, 19–24]. As for BBC Singapore, its few communications with Port of Miami agents about the *Jade*'s stop in Miami do not amount to a "substantial aspect" of the alleged trafficking violation; nor can it be said that these communications were "essential to the success of" the alleged trafficking in Cuba. Id. at 15–19. With respect to DSV US, the record likewise establishes that Scheid's sparse email activity from her office in Miami, coupled with DSV US' instruction to furnish certain customs forms in Miami upon the ships' arrival, do not amount to a "substantial aspect" of the alleged trafficking violation or constitute "activities that were essential to" its success. Id. at 11–15.

Therefore, Plaintiff has failed to establish that this Court has personal jurisdiction over Defendants based on the Florida long-arm statute's tortious act prong.

### B. Minimum Contacts

Despite Plaintiff's inability to satisfy the relevant prongs of the Florida long-arm statute, for the sake of completeness, the undersigned considers whether Defendants have sufficient "minimum contacts" with Florida to satisfy the Due Process Clause of the Fourteenth Amendment.

"In specific personal jurisdiction cases, [courts] apply the three-part due process test, which examines: (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1355 (11th Cir. 2013) (citing Burger King Corp., 471 U.S. at 472–75). To assess purposeful availment, courts consider whether the defendant's contacts with the forum state are related to the cause of action; involve an act by which the defendant purposefully availed himself of the privileges of doing business in the forum; and are such that the defendant would reasonably anticipate being haled into court in the forum. Id. at 1357. Moreover, where the defendant is alleged to have committed an intentional tort specifically aimed at a plaintiff who was injured in Florida, due process may also be satisfied under the "effects test" established by the Supreme Court in Calder v. Jones, 465 U.S. 783, 789–90 (1984). See also Louis Vuitton, 736 F.3d at 1357 ("The 'effects test' provides an additional means . . . of determining the appropriateness of personal jurisdiction—one that is based on a plaintiff's ties to the forum state and the harm suffered by the plaintiff.").

Here, Plaintiff cannot satisfy either test. Under the traditional minimum contacts analysis articulated in Louis Vuitton, the Goldwind Defendants and the BBC Defendants have not

purposefully availed themselves of the privilege of conducting any activities in Florida; and Plaintiff cannot establish that DSV US' contacts with Florida arise out of or relate to Plaintiff's cause of action.  Regarding the Goldwind Defendants, neither of them has an office or any employees in Florida or the United States.  See Goldwind's Post-Hearing Brief [D.E. 264 at 3]. Likewise, neither of the BBC Defendants are registered to do business in Florida; have any offices, employees, bank accounts, telephone numbers, mailing addresses, or registered agents in Florida; own or operate any ships; or, as noted above, have engaged in any Florida-based activities relating to Plaintiff's claim for trafficking.  See Petersen Decl. [D.E. 199 ¶¶ 5–8]; Schoennemann Decl. [D.E. 200 ¶¶ 5–8].  Finally, with respect to DSV US, its only Florida-based activity—that is, Scheid's sporadic email correspondence and DSV US' instruction to keep certain forms on hand in Miami—did not arise out of or relate to Plaintiff's ultimate claim of trafficking the Property. Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1025 (2021) ("The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'") (citation omitted).

Moreover, Plaintiff fails to satisfy the "effects test" articulated in Calder, which provides that jurisdiction over a defendant is proper when the "effects" of its out-of-state conduct—in this case, the intentional tort of trafficking—are felt in the forum.  Calder, 465 U.S. at 789–90.  As was the case under the Florida long-arm statute's tortious act prong, Plaintiff has not alleged that it experienced any injury in Florida, let alone that the "effects" of Defendants' conduct were felt in Florida.  Indeed, given that Plaintiff's claims hinge on the alleged trafficking that occurred in Cuba, Florida was neither the "focal point [of] the story [nor] of the harm suffered".  Id. at 789.

Hence, the due process "minimum contacts" requirement is not met for any of the Defendants.

### C. Rule 4(k)(2) Jurisdiction

Plaintiff argues, in the alternative, that the Goldwind Defendants and BBC Singapore are subject to this Court's personal jurisdiction pursuant to Rule 4(k)(2). As previously noted, Rule 4(k)(2) applies if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction" and "exercising jurisdiction is consistent with the United States Constitution and laws." See Fed. R. Civ. P. 4(k)(2)(A)–(B). "[T]he personal-jurisdiction analysis under the Fifth Amendment is the same as that under the Fourteenth [Amendment]", except the applicable forum is the United States. Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd., No. 21-12834, 2022 WL 3330347, at *2 (11th Cir. Aug. 12, 2022). However, "it is a rare occurrence when a court invokes jurisdiction under the rule." Sturmanskie LLC v. Picturemaxx Ag, No. 21-cv-21091, 2022 WL 3030451, at *9 (S.D. Fla. Jul. 5, 2022) (internal quotation marks omitted) (quoting Thompson v. Carnival Corp., 174 F. Supp. 3d 1327, 1337 (S.D. Fla. 2016)).

As noted above, there is no specific personal jurisdiction over the Goldwind Defendants or BBC Singapore under Florida's long-arm statute. Moreover, these Defendants have no presence in "any other forum where [they are] amenable to jurisdiction." Herederos, 535 F. Supp. 3d at 1306. However, Plaintiff has not established that the exercise of jurisdiction over the Goldwind Defendants and BBC Singapore would be consistent with the Constitution and the laws of the United States, as Rule 4(k)(2) requires. The Goldwind Defendants and BBC Singapore do not conduct business in the United States, see Schoennemann Decl. [D.E. 200 ¶¶ 5–7]; Goldwind's Post-Hearing Brief [D.E. 264 at 3]; nor are Plaintiff's allegations with respect to the Goldwind Defendants' direct or indirect ownership of U.S.-based entities, see Am. Compl. [D.E. 189 ¶¶ 18–19], sufficient to establish jurisdiction under Rule 4(k)(2). Herederos, 535 F. Supp. 3d at 1306 (finding similar allegations to be insufficient "because there is no alleged connection between [the

17

defendant] and the alleged subsidiaries"). Plaintiff's allegations about the Goldwind Defendants' limited patent, asset, and dispute resolution activities in the United States, as well as Goldwind International's purported maintenance of a Montana wind farm project, see Am. Compl. [D.E. 189 ¶¶ 18–19], are also insufficient to establish jurisdiction under Rule 4(k)(2), as none of these activities are "related to the unlawful trafficking [of] the [Property] in Cuba". Herederos, 535 F. Supp. 3d at 1307 (citing GolTV, Inc. v. Fox Sports Latin Am. Ltd., 277 F. Supp. 3d 1301, 1318 (S.D. Fla. 2017)); see also Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2000) ("We emphasize that a nonresident corporation's contacts with the forum that are unrelated to the litigation must be substantial in order to warrant the exercise of personal jurisdiction under Rule 4(k)(2)."). Finally, Plaintiff's allegations regarding Goldwind's and BBC Singapore's occasional functions as shipper or carrier for shipments to the United States, see Am. Compl. [D.E. 189 ¶¶ 18–19, 22], likewise do not establish jurisdiction under Rule 4(k)(2), given that these activities do not relate to the alleged trafficking of the Property in Cuba. Herederos, 535 F. Supp. 3d at 1307.

Therefore, Plaintiff has failed to establish that this Court has personal jurisdiction over the Goldwind Defendants and BBC Singapore pursuant to Rule 4(k)(2).

## II. CIVIL CONSPIRACY

Finally, Plaintiff argues that the Court may exercise personal jurisdiction over Defendants based on its civil conspiracy claim. See Response [D.E. 218 at 83]. "Under Florida law, a civil conspiracy must have as its object the commission of an underlying tort." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1281 (11th Cir. 2009). "Florida courts have held that the state's long-arm statute can support personal jurisdiction over any alleged conspirator where any other co-conspirator commits an act in Florida in furtherance of the conspiracy, even if the defendant over

whom personal jurisdiction is sought individually committed no act in, or had no relevant contact with, Florida." Id. at 1281–82.

Although Defendants have challenged the sufficiency of Count VI in their pending motions to dismiss for failure to state a claim [D.E. 214–17], the undersigned assumes without deciding its sufficiency strictly for purposes of this Report and Recommendation. The undersigned concludes that Plaintiff's civil conspiracy claim does not confer personal jurisdiction over Defendants because Plaintiff has not established that any Defendant committed a tortious act in Florida in furtherance of the alleged conspiracy to traffic the Property. Here, as under the tortious act prong of Florida's long-arm statute, a substantial part of Defendants' alleged tortious conduct did not occur in Florida, and Plaintiff does not otherwise allege that it has been harmed by Defendants' conduct in Florida. Thus, "the [Amended Complaint] does not allege viable facts from which the inference could reasonably be drawn that [Defendants were] part of a conspiracy either engineered in Florida or pursuant to which a tortious act in furtherance was committed in Florida." Mazer, 556 F.3d at 1283.

Accordingly, Plaintiff's conspiracy claim, even if viable, does not provide a basis to establish this Court's personal jurisdiction over Defendants.

**RECOMMENDATION**

In accordance with the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Defendants' Motions to Dismiss for Lack of Personal Jurisdiction [D.E. 197, 198, 201, 202] be GRANTED.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge. Failure to file timely objections may bar the parties from

attacking the factual findings contained herein on appeal.  See <u>Resolution Tr. Corp. v. Hallmark Builders, Inc.</u>, 996 F.2d 1144, 1149 (11th Cir. 1993).  Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  <u>See</u> 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers in Miami, Florida, on this <u>30th</u> day of August, 2022.

                                                                              _____
                                                                              ALICIA M. OTAZO-REYES
                                                                              UNITED STATES MAGISTRATE JUDGE


cc:   United States District Judge Darrin P. Gayles
       Counsel of Record