**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:20-cv-22471-GAYLES/SANCHEZ

NORTH AMERICAN SUGAR INDUSTRIES INC.,

    Plaintiff,

v.

XINJIANG GOLDWIND SCIENCE &
TECHNOLOGY CO., LTD., GOLDWIND
INTERNATIONAL HOLDINGS (HK) LTD.,
DSV AIR & SEA INC.,
BBC CHARTERING USA, LLC, and
BBC CHARTERING SINGAPORE PTE LTD.,

    Defendants.

**STIPULATED ORDER RE: DISCOVERY**
**OF ELECTRONICALLY STORED INFORMATION**

**1.    PURPOSE**

This Stipulated Order ("Order") will govern the discovery and use of electronically stored information ("ESI") in this case after the date of its entry as a supplement to the Federal Rules of Civil Procedure, the Scheduling Order entered by this Court on April 11, 2025, ECF No. 362, Judge Sanchez's Discovery Procedures, and any other applicable orders and rules. The parties each reserve the right to seek exceptions, amendments, or modifications to this Order from the Court for good cause shown.

**2.    COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.

**3.    E-DISCOVERY LIAISONS**

Each party will identify one or more E-discovery Liaisons who will be primarily

responsible for meeting and conferring concerning ESI. Each E-discovery Liaison will:

    a.    be knowledgeable about the party's e-discovery efforts;

    b.    be, or have reasonable access to those who are, familiar with the party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and

    c.    be, or have reasonable access to those who are, knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

Each party will notify the other of any change to its designated E-discovery Liaison(s).

**4.    LIMITATIONS AND NON-WAIVER.**

By establishing and complying with this Protocol, the Parties and their attorneys do not waive their rights to any protection or privilege, including the attorney-client privilege or the attorney work product doctrine. All Parties preserve their attorney-client privilege, protection under the attorney work product doctrine, and all other applicable privileges and protections. This Protocol does not contain or signify any intent to in any way waive or weaken these privileges and protections. All documents produced hereunder are fully protected and covered by any protective orders entered by the Court in this matter. This protection includes the non-waiver of privilege in materials produced under both Federal Rule of Evidence 502(d) and any protective order entered by the Court in this matter.

**5.    EXCHANGE OF ESI-RELATED INFORMATION**

Within 14 days of entry of this protocol, the parties agree to exchange in writing the information listed in items (a) through (d) below. The parties agree and understand that their respective responses are based on their knowledge and understanding as of the date of the response,

and each party agrees to amend or supplement its responses in a timely manner if it learns that in some material respect its response is incomplete or incorrect:

 a. A list of custodians (including current employees, former employees and any other individuals or companies) most likely to have discoverable information, including job title and a brief description of job responsibilities for each individual, and a general description of the devices and/or storage systems on which the custodian's ESI is located;

 b. A general description of any other systems for electronic communications and ESI storage ("non-custodial sources") that may contain discoverable information;

 c. A description of any potentially discoverable ESI that the party is aware of having been lost or destroyed;

 d. A description of any potentially discoverable ESI that the party contends is inaccessible or only of limited accessibility and, hence, not producible by that party without undue burden and/or expense, including:

  i. the reasons for the party's contention regarding inaccessibility; and

  ii. the proposed capture and retrieval process available (if any) for identification and/or recovery of the information deemed inaccessible (including cost estimates if readily available).

**6.** **MEET-AND-CONFER**

In connection with the service of requests for production, and subject to objections to same, the parties will meet and confer to discuss and attempt to reach an agreement on the appropriate scope and limitations of both preservation and production of ESI. The parties will discuss possible options for ensuring an efficient discovery process, such as the possible use of search terms or technology assisted review ("TAR"), the possible use of testing and sampling, relevant date ranges,

possible custodians that may have potentially discoverable information, any obstacles to accessing and producing ESI, information demonstrative of adequate quality controls, and the timing of productions.

**7.     ESI SEARCH**

In connection with the service of requests for production, and subject to objections to the same, the parties will discuss and attempt to reach an agreement on search methodologies with the goal of limiting the scope of review for production, minimizing the need for motion practice, and facilitating production in accordance with the deadlines set by the Court or agreed upon by the parties.  Agreement on a search methodology does not relieve a party of its obligations under the Federal Rules to conduct a reasonable search and produce all non-privileged, relevant and responsive documents of which it is aware.  In addition, certain types of data may not be amenable to search with terms or the application of TAR.  For example, see the section on Short Messages below.

    a.     <u>Search Terms</u>:

        1.     Prior to implementing search terms, the producing party will provide a list of proposed search terms to the requesting party and the parties will meet and confer regarding any additional terms proposed by the requesting party.  Once an initial list of terms is agreed upon, the producing party will provide a search term hit list or hit report after global de-duplication.  The list or report should include the number of documents that hit on each term, the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list (including families).  The parties will use the report to modify terms, if necessary.

        2.      If a party disputes a specific term as being overly broad or as returning an excessive number of non-responsive documents, the parties agree to share hit reports in connection with the proposed searches.

        3.      If the parties are unable to resolve disputes over search terms through the meet-and-confer process, the parties will submit the dispute to the Court in the form required by the Court.

    b.    <u>Technology-Assisted Review</u>: Prior to using predictive coding/technology-assisted review for the purpose of identifying or culling the documents to be reviewed or produced, the producing party will notify the opposing party with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies or alternatives.  This discussion will include:

        1.      Whether any culling measures were taken prior to the application of TAR. If key terms are used, then the protocol above would apply to that part of the process;

        2.      The vendor being used to manage the application of the technology;

        3.      The method(s) used to derive the seed or exemplar set;

        4.      The method for validating the computer decisions; and

        5.      The measures taken to check the quality of the computer decisions.

The party employing TAR agrees to a goal of 85% stabilization rate for its process, meaning that of a hundred random documents sampled from the reviewable set, 85% would be accurately coded by the computer.  If the 85% stabilization rate is not reasonably achievable, the parties agree to meet and confer to adjust this number.

    c.    <u>Generative AI Tools</u>. Prior to using any Generative AI tools to cull documents from a review population or to assist with determining which data is included in the discovery review

and production workflow, the parties agree to meet and confer. Topics that will be discussed include:

       1.       Whether any culling measures were taken prior to the application of Generative AI. If key terms are used, then the protocol above would apply to that part of the process;

       2.       The vendor being used to manage the application of the technology;

       3.       Discussion and possible disclosure of the components in the document population being indexed and searched by the Generative AI tool;

       4.       Whether any outside corpus or data was used to help train the Generative AI tool;

       5.       Discussion and possible disclosure of Prompts; and

       6.       The Validation methodology and guidelines.

**8.    SHORT MESSAGES**

a.      Text messages, and other short messages used by various chat message programs, should be treated differently for purposes of search and retrieval due to the nature of limited text and the shorthanded language that is commonly employed when the types of communication are used. Short messages should not be searched using search terms used for other forms of unstructured data or as part of the other Unstructured Data TAR process outlined above.

b.      Short messages should be produced by conversation in 24-hour increments, meaning a responsive message should be produced with the messages that come 12 hours before and 12 hours after the message was received or sent. If several messages in the same chain are responsive, then the window should be enlarged to include messages 12 hours before the first

responsive message and 12 hours after the last responsive message to give context to the conversation.

  c. Attachments, whether inline or attached via hyperlink, should be produced as close to how they have appeared in the original conversation, and pursuant to the section on Hyperlinked Attachments below.

  d. The parties recognize that technical limitations exist with regard to the retrieval, search, review and production of short messages and should readily meet and confer to come to an agreement before such messages are produced, including the possibility of using a separate set of search terms, if appropriate.

**9. HYPERLINKED ATTACHMENTS**

  a. The parties agree that hyperlinked attachments will be treated and produced in the same way that embedded attachments are produced, if technologically reasonable. For example, hyperlinked attachments should be connected to their parent document via their Beginning Attachment field and produced in sequence to their parent, meaning that the attachment will follow the parent document or email in bates numbering.

  b. To the extent possible, the version of the produced hyperlinked attachment will be the version closest to the email sent date of the parent email, or the date last modified of the parent document.

  c. If the parties have technological limitations to the automated collection, review and production of hyperlinked attachments (or become aware of such limitations during the pendency of the matter) the parties should meet and confer to come to a reasonable solution.

**10.     PRODUCTION FORMAT**

    a.     The parties agree that attending to issues relating to form of production at the outset of discovery facilitates the efficient and cost-effective conduct of discovery. This section includes technical specifications that the parties propose to govern the form of production of ESI in this litigation, absent other agreement by the parties. Among other things, the proposed technical specifications incorporate the directive of Fed. R. Civ. P. 34(b)(2)(E)(iii) and provide that a party need not produce ESI in more than one form, unless otherwise agreed to in limited circumstances (as contemplated in the technical specifications). The parties agree to produce documents in TIFF, native and/or paper or a combination thereof as set forth below.

    b.     For good cause, a requesting party may request the production of documents in a format other than as specified in this Protocol. The parties shall thereafter meet and confer, and the producing party shall not unreasonably deny such requests. The parties agree not to degrade the searchability of documents as part of the document production process. The parties also recognize that in some instances where documents have been produced in a form other than native, subsequent production of the same documents in native form may be warranted for certain purposes.

    c.     A producing party may deduplicate a production vertically (*i.e.*, within individual custodians) or horizontally (*i.e.,* across different custodians) provided that horizontal deduplication will necessitate the inclusion of information for custodians for which the documents have been deduplicated as specified herein.

    d.     Parties also may deduplicate stand-alone documents or entire document families using near-duplicate identification technology, provided, however, that only documents identified by such technology as 100% near-duplicates shall be deduplicated. For purposes of this paragraph,

100% near-duplicates are documents that have identical text content, embedded files, and attachments. 100% near-duplicates may have different MD5 or SHA-1 hash values.

      e.      The parties share a desire to ensure that ESI is produced in an acceptable, searchable format. The parties recognize that certain, limited ESI may not be amenable to the proposed technical specifications. The parties will meet and confer in good faith to reach agreement regarding these issues and the appropriate form of production, and will seek Court intervention if necessary.

      f.      Where multiple email messages are part of a single "thread," a party is only required to produce the most inclusive message and need not produce earlier, less inclusive email messages that are fully contained, including attachments, within the most inclusive email message. For the avoidance of doubt, only email messages for which the parent document and all attachments are contained in the more inclusive email message will be considered less inclusive email messages that need not be produced; if the later message contains different text (such as where the later message adds in-line comments to the body of the earlier message), or does not include an attachment that was part of the earlier message, the earlier message must be produced. Where an email thread is withheld from production under a claim of privilege, the party's privilege log should reflect only the most inclusive message.

      g.      <u>TIFF/Native File Format Production.</u> The Parties agree that all non-redacted versions of Excel spreadsheets (or similar spreadsheets created using a different software program) and PowerPoint presentations (or similar documents created using a different software program) will be produced in native format. All other documents will be produced as single-page TIFF images with corresponding multi-page text, or in native file format with slip-sheet if applicable, and necessary load files. Native files, along with corresponding metadata, will be preserved. TIFF

images will be of 300 dpi quality or better. The load files will include an image load file as well as a metadata (.dat) file with the metadata fields identified below on the document level to the extent available. In certain circumstances, variations to the production format specified in this Protocol may be necessary. In such circumstances, the Parties will meet and confer regarding the production format.

      h.      <u>Metadata.</u> No Party has an obligation to create or manually code fields that are not automatically generated by the processing of the ESI, that do not exist as part of the original metadata of the document, or that would be unduly burdensome or costly to obtain, except for the "Confidentiality Designation" metadata field listed in this paragraph. The Parties shall provide the following metadata fields associated with each document produced, to the extent they are reasonably available: Custodian (to include all custodians for the document, if the document was deduplicated as provided in paragraph c, above), File Path, Email Subject, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Time Zone, Filename, Author, Date Created, Date Modified, Hash Value (such as MD5 or SHA-1), File Size, File Extension, Bates Number Begin, Bates Number End, Confidentiality Designation, Attachment Range, Attachment Begin, Attachment End (or the equivalent thereof), and Group ID/Family ID.

      i.      <u>Native Files.</u> The Parties agree that documents will be produced in the format set forth above and that no Party may request or seek to compel the production of ESI in native format on a wholesale basis, except that spreadsheets and slide decks (e.g., PowerPoint) shall be produced in their native format and in the order that they were stored in the ordinary course of business, i.e., emails that attach spreadsheets should not be separated from each other and should be linked using the Attachment Range fields above. The native file should be named using the Bates number assigned to the file; however, this should not impact the <Filename> metadata field referenced in

the preceding paragraph. The extractable metadata and text should be produced in the same manner as other documents that originated in electronic form. Subsequent to the production of documents, however, the Requesting Party may request from the Producing Party that specific imaged files be produced in native format if the files are difficult to read in an imaged form. Such a request shall include the Bates numbers of requested native files.

        j.        <u>Structured Data.</u> To the extent possible and unless otherwise agreed by the Parties, all exports of structured data or reports from databases will be produced in .csv file, Excel file, or other delimited format. However, subsequent to the production of documents (or if exporting the data in a delimited format is not possible), if the Requesting Party seeks an alternate format for the production of structured data, the Parties will meet and confer regarding the existence of such alternative forms of production.

        k.        <u>Document Numbering.</u> Except as provided in paragraph (i) above ("Native Files"), each page of a produced document will have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. The Bates Number for each page of each document will be created so as to identify the Producing Party. In the case of materials redacted or deemed confidential, a redaction or confidentiality designation may be "burned" onto the document's image or otherwise may be indicated in some other manner, such as in metadata fields. In the case it is burned onto the document, the confidentiality designation shall be at a location that does not obliterate, conceal, or interfere with any information from the source document.

**11.   DISCOVERABILITY AND ADMISSIBILITY**

This Protocol does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI. Nothing in this Protocol shall be construed to affect

the admissibility of any document or data.  All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at any time.

      a.      This Protocol does not imply that discovery produced under the terms herein is properly discoverable, relevant, or admissible in this or in any other litigation.

      b.      Additionally, nothing in this Protocol shall be deemed to waive or limit any Party's right to object to the production of certain electronically stored information, or to move for an appropriate order on the ground that the sources are not reasonably accessible.

**12.   CONFIDENTIALITY, PRIVACY, AND SECURITY OF INFORMATION**

The Stipulated Protective Order, ECF No. 88, will govern the treatment of information warranting confidential treatment.

**13.   PRODUCTION TO ALL PARTIES**

The Parties agree that any document produced to any Party in response to discovery requests issued pursuant to Federal Rules of Civil Procedure 33, 34, 36 and issued in this litigation shall be produced to all Parties.  Consistent with Federal Rule of Civil Procedure 5(a)(1)(C), all discovery papers must be served on all Parties.

**14.   MODIFICATION**

To the extent compliance with this Protocol imposes an undue burden with respect to any procedure, source, or process, instruction, etc. ("practice or procedure") listed herein, the Parties shall promptly confer in an effort to resolve the issue.  Any practice or procedure set forth herein may be varied by agreement of the Parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of electronic data.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

Dated: July 24, 2025                                    Respectfully submitted by:

*/s/ Zachary A. Lipshultz*                              */s/ Allen P. Pegg*
Zachary A. Lipshultz                                    Richard C. Lorenzo
Florida Bar No. 123594                                  Fla. Bar No. 071412
zach@colson.com                                         richard.lorenzo@hoganlovells.com
**COLSON HICKS EIDSON, P.A**.                           Allen P. Pegg
255 Alhambra Circle, Penthouse                          Fla. Bar No. 597821
Coral Gables, FL 33134                                  allen.pegg@hoganlovells.com
T: 305-476-7400                                         **HOGAN LOVELLS US LLP**
F: 305-476-7444                                         600 Brickell Avenue, Suite 2700
                                                        Miami, Florida 33131
William T. Reid, IV (*pro hac vice*)                    305-459-6500 – Telephone
wreid@reidcollins.com                                   305-459-6550 – Facsimile
Craig A. Boneau (*pro hac vice*)
cboneau@reidcollins.com                                 *Attorneys for Defendants*
Ryan M. Goldstein (*pro hac vice*)                      *Xinjiang Goldwind Science & Technology*
rgoldstein@reidcollins.com                              *Co., Ltd. and Goldwind International*
Scott D. Saldaña (*pro hac vice*)                       *Holdings (HK) Ltd.*
ssaldana@reidcollins.com
Robert J. LaCroix (*pro hac vice*)
rlacroix@reidcollins.com
Aaron A. Brown (*pro hac vice*)
abrown@reidcollins.com
Julia Di Fiore Byrne (*pro hac vice*)
jbyrne@reidcollins.com
**REID COLLINS & TSAI LLP**
1301 S. Capital of Texas Hwy, C-300
Austin, Texas 78746
T: 512-647-6100

*Attorneys for Plaintiff*
*North American Sugar Industries Inc.*

/s/ *Lorayne Perez*
Pedro A. Freyre
Fla. Bar No. 192140
pedro.freyre@akerman.com
Christopher S. Carver
Fla. Bar No. 993580
christopher.carver@akerman.com
Lorayne Perez
Fla. Bar No. 085265
Lorayne.perez@akerman.com
**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, Florida 33131
305-374-5600 – Telephone
305-349-4654 – Facsimile

Martin Domb (admitted *pro hac vice*)
martin.domb@akerman.com
**AKERMAN LLP**
1251 Avenue of the Americas, 37th Floor
New York, NY 10020
212-880-3800 – Telephone
212-880-8965 – Facsimile

*Attorneys for BBC Chartering USA, LLC and BBC Chartering Singapore Pte Ltd.*

/s/ *Elizabeth G. McIntosh*
Elizabeth G. McIntosh
Fla. Bar No. 1011555
egmcintosh@venable.com
**VENABLE LLP**
801 Brickell Avenue Suite 1500
Miami, FL 33131
305-349-2300 – Telephone
305-349-2310 – Facsimile

Jessie F. Beeber (admitted *pro hac vice*)
jbeeber@venable.com
Patrick J. Boyle (admitted *pro hac vice*)
pboyle@venable.com
Benjamin S. Paull (admitted *pro hac vice*)
bspaull@venable.com
**VENABLE LLP**
151 West 42nd Street New York, NY 10036
212-307-5500 – Telephone
212-307-5598 – Facsimile

*Attorneys for DSV Air & Sea Inc.*

**SO ORDERED:**

Date: August 4, 2025

_____
EDUARDO I. SANCHEZ
UNITED STATES MAGISTRATE JUDGE

cc: Darrin P. Gayles
    Counsel of record